Ira S. Lipsius (IL 5704)
SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP
14 Penn Plaza, Suite 500
New York, NY 10122
Telephone No.: (212) 563-1710
*Attorneys for Jeffrey Levitin, Esq., Individually and*
*As Trustee of the Ellman Savings Irrevocable Trust*

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | |
| Plaintiff, | **CIVIL ACTION NO.** **7:08-cv-10046- SCR** |
| vs. | |
| ELLMAN SAVINGS IRREOCABLE TRUST, JEFFREY LEVITIN, ISRAEL KUGIELSKY, CHAIM RUBIN and JOHN DOES 1-10, | |
| Defendants. | |
| -------------------------------------------------- | |
| | **CIVIL ACTION NO.** **3:10-cv-1458** |
| JEFFREY LEVITIN, ESQ., as Trustee of the Ellman Savings Irrevocable Trust, | |
| Plaintiff, | |
| vs. | |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | |
| Defendant. | |

**DEFENDANTS JEFFREY LEVITIN AND ELLMAN SAVINGS
IRREVOCABLE TRUST'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO AMEND THE ANSWER WITH COUNTER-
CLAIM**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………..ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTS AND PROCEDURAL HISTORY ........................................................................ 1

ARGUMENT...................................................................................................................... 6

    I.    DEFENDANTS SHOULD BE GRANTED LEAVE TO AMEND THE COUNTER-CLAIM TO PROVIDE GREATER SPECIFICTY ..................................................... 6

CONCLUSION................................................................................................................... 7

## **TABLE OF AUTHORITIES**

**Cases**

*Celgene Corp. v. Teva Pharmaceuticals USA, Inc.*, 2008 WL 5100576 (D.N.J.) .......................... 7

*Foman v. Davis*. 371 U.S. 178,182 (1962) ................................................................................... 6

*Osteotech, Inc. v. Regeneration Technologies, Inc.*, 2008 WL 2036795 (D.N.J.) ......................... 7

*Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000). ....................................................................... 6

**PRELIMINARY STATEMENT**

Defendants Jeffrey Levitin and Ellman Savings Irrevocable Trust respectfully submit this memorandum of law in support of their motion to amend the answer with counter-claim to provide greater specificity of the alleged fraud and bad faith committed by American General.

The Federal Rules require that leave to amend a pleading be granted freely where it does not prejudice the opposing party. Defendants seek to amend at this juncture, before substantial discovery is completed and at a point when American General is not prejudiced by the amended response.

Movants seek to add with specific description, American General's practice of keeping policies in force, within which American General has identified inconsistencies concerning the insured's financial condition and all of the other "red flags" that are present in this action. If proven true at trial, it would prove that American General issued the Ellman policy without any intention of honoring it and is using the actuarially insignificant portions of the application to avoid paying the benefits and instead keep all the premiums paid. American General pretended to issue a policy when in fact it did so for the sole purpose of deceiving the trust out of premium payments without actually providing anything in return. There can be no greater display of insurance company fraud or bad faith.

**FACTS AND PROCEDURAL HISTORY**

On March 14, 2006, American General issued Flexible Premium Adjustable Life Policy UM 0030862L (the "Policy") to Ellman Savings Irrevocable Trust insuring the life of Irving Ellman in the amount of $10 million (Counter-claim ¶ 250).  Jeffery Levitin is the trustee of the Ellman Savings Irrevocable Trust (Counter-claim ¶ 248).

Irving Ellman passed away on May 23, 2008 (Counter-claim ¶ 251). The Ellman Savings Irrevocable Trust, which is the beneficiary of the Policy, placed a claim for benefits which still has not been paid (Counter-claim ¶¶ 254-257).

American General filed an action to rescind the policy and keep the premiums while the Trust sued for the policy benefits and alleges that American General committed fraud and bad faith. The two actions were consolidated into this action. After American General's motion to dismiss the fraud claim was denied without prejudice, the Trust now moves to amend the complaint to allege fraud against American General with greater specificity.

The Trust alleges that at the time American General issued the Ellman policy it had no intention of ever honoring the death benefit. Instead, it issued the policy with the intention that the policy would lapse for failure to pay premium. (Counter-claim ¶258) In the case of the Ellman policy, since the policy did not lapse prior to the benefits becoming due, American General falsely claims that it would not have issued the policy had it known of the insured's true financial condition. (Counter-claim ¶¶ 262-263). In fact, despite American General's contentions, American General knew or should have known the insured's true financial condition prior to the issuance of the policy or shortly thereafter. In fact, contrary to American General's contention here, when pricing the policy, American General did not use the financial condition of the insured as an element of its actuarial practice. (Counter-claim ¶ 269). Although American General claims that it never would have issued the Ellman policy had it known Ellman's true financial condition, it really issued the policy without regard to Ellman's financial condition and only issued the policy in order to induce the Trust to pay premiums for coverage American General never intended on providing to anyone. (Counter-claim ¶ 269). American General's underwriters were able to issue the policies despite the fact that they knew or should have known

that the financial condition of the insured was questionable because the financial condition of the insured did not alter the risk assumed by American General. The financial condition of Ellman did not increase or decrease his life expectancy. (Counter-claim ¶ 263).

The Trust seeks to present further allegations that the Ellman policy was issued solely to collect and keep premiums for which no benefit would ever accrue by the fact that American General investigated the following policies and determined that the policies contained the same or similar conditions as in Ellman which would allow American General to rescind:

| Insured | Policy # | Effective Date | Face Amount | Target Premium |
|---|---|---|---|---|
| Buchsbaum, Lily | UM0023807L | 1/9/2006 | $10,000,000 | $698,800 |
| Deblasio, Lena | UM0030860L | 1/6/2006 | $1,000,000 | $35,450 |
| Deblasio, Lena | UM0030800L | 1/6/2006 | $1,000,000 | $35,450 |
| Deblasio, Lena | UM0030857L | 1/6/2006 | $1,000,000 | $35,450 |
| Deblasio, Lena | UM0030799L | 1/6/2006 | $2,000,000 | $70,900 |
| Deblasio, Lena | UM0030678L | 10/28/2005 | $1,000,000 | $35,450 |
| Deblasio, Lena | UM0023613L | 12/2/2005 | $1,000,000 | $35,450 |
| Deblasio, Lena | UM0023614L | 12/2/2005 | $1,500,000 | $53,175 |
| Deblasio, Lena | UM0030676L | 11/2/2005 | $1,000,000 | $35,450 |
| Deblasio, Lena | UM0030677L | 10/28/2005 | $1,000,000 | $35,450 |
| Deblasio, Lena | UM0030679L | 10/28/2005 | $2,000,000 | $70,900 |
| Deblasio, Lena | UM0030680L | 10/28/2005 | $1,500,000 | $53,175 |
| Deblasio, Lena | UM0030681L | 10/28/2005 | $1,000,000 | $35,450 |
| Klein, Tsvi | UM0030932L | 4/7/2006 | $3,000,000 | $203,370 |
| Liebowitz, Judith | UM0023812L | 5/4/2006 | $8,000,000 | $355,280 |
| Liebowitz, Judith | UM0030861L | 3/2/2006 | $10,000,000 | $444,100 |
| Perlstein, Sarah | UM0023658L | 1/5/2006 | $1,500,000 | $128,970 |
| Perlstein, Sarah | UM0023657L | 1/5/2006 | $3,500,000 | $300,930 |
| Rozencweig, Olga | UM0030865L | 3/28/2006 | $5,000,000 | $310,600 |
| Rozencweig, Olga | UM0030929L | 3/28/2006 | $5,000,000 | $310,600 |
| Winkler, Manasse | UM0030856L | 2/8/2006 | $1,000,000 | $107,570 |
| Winkler, Manasse | UM0023672L | 2/8/2006 | $1,000,000 | $107,570 |
| Wolpin, Edith | UM0023758L | 3/24/2006 | $4,000,000 | $309,640 |
| Wolpin, Edith | UM0023760L | 3/24/2006 | $3,000,000 | $232,230 |

(Proposed Amended Counter-claim)

3

Instead of rescinding the policies, however, American General chooses to keep the policies in force with the intent to collect premiums, keep the premiums and never pay any benefit. Presently, American General collects over $4 million per year in premiums on these policies but like Ellman, never intends on providing any coverage. (Proposed Amended Counter-claim).

The Trust also discovered emails that demonstrate that as soon as the policy was issued American General identified the Ellman Policy as a STOLI policy and then made an affirmative decision to keep the Policy, notwithstanding that the policy was STOLI. Specifically, the amended counter claim adds the following allegations:

1. With regard to the Ellman policy, American General knew it was STOLI/IOLI and did not care. American General issued the policy on March 14, 2006. That same month, American General audited a series of policies and concluded that the Ellman policy was among those that were likely STOLI/IOLI policies.

2. On November 17, 2006, Denise Bell wrote to Scott Busalacchi asking, "will the company be pursuing any further investigation on the "yes" ones?"

3. On November 17, 2006, Mr. Busalacchi replied that no further action will be taken because the audit was "just an effort to estimate the total how much IOLI business we may have."

4. American General's feigned outrage against STOLI/IOLI is a performance enacted in order to not pay the claim.

American General has thus committed fraud upon the Trust in inducing it to purchase a policy of insurance and paying premiums upon such policy without the intent of providing any

4

coverage. American General, through this scheme, has also denied the Ellman claim for benefits in bad faith.

On May 5, 2010, American General moved to dismiss the counter-claim. On June 7, 2010, the Trust filed its opposition and a cross-motion to amend the counter-claim to add specificity to the fraud allegations. The Trust seeks to add references to specific policies that American General has investigated for financial representations, determined that the financial condition of the insured does not meet its financial underwriting guidelines but continue to collect premiums upon the policies, nonetheless. On July 7, 2010, the court denied American General's motion to dismiss and ordered the Trust to move before Judge Bongiovanni to assert the added allegations.

**ARGUMENT**

I.    **DEFENDANTS SHOULD BE GRANTED LEAVE TO AMEND THE COUNTER-CLAIM TO PROVIDE GREATER SPECIFICTY**

Defendants should be granted leave to amend the counter-claim. *Rule 15(a) of the F.R.C.P.* provides that leave to amend a pleading "shall be freely given when justice so requires." In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant wishing to amend, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, ... the leave sought should, as the rules require, be 'freely given.' *Foman v. Davis*. 371 U.S. 178,182 (1962).

Generally, when a defendant moves to dismiss based on failure to state a claim, a plaintiff can amend the complaint once as a matter of course without leave of the court. Fed.R.Civ.P. 15(a). After amending once[1] or after an answer has been filed, the plaintiff may amend only with leave of the court or the written consent of the opposing party, but "leave shall be freely given when justice so requires." Rule 15(a); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000).

Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency. *Id*.

Here, the amended counter-claim includes a list of other policies that American General has investigated. The investigation revealed that the same factors which American General claims here are grounds for rescission exist in those policies. Yet, American General does not seek to rescind those policies, and instead continues to collect premiums in the hopes the policies

---

[1] Defendants amended their answer once.

6

lapse. If they do not lapse, American General will then do what it did here; deny the benefits and seek to rescind the policy and keep all the premiums.

There has been no undue delay, bad faith or dilatory motive on the part of the Trust, nor has there been a repeated failure to cure deficiencies by previously allowed amendments; the proposed amendments will not unduly prejudice American General as discovery is only in the beginning stages and the Trust is simply adding allegations to causes of action already present, the amended response will not significantly delay the resolution of this proceeding and are not clearly futile. *Celgene Corp. v. Teva Pharmaceuticals USA, Inc.*, 2008 WL 5100576 (D.N.J.); *Osteotech, Inc. v. Regeneration Technologies, Inc.*, 2008 WL 2036795 (D.N.J.).

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that this Court grant the Trust's cross-motion to amend the counter-claim and for such other relief as this Court may deem just and proper.

Dated: East Brunswick, New Jersey
July 28, 2010

        SCHINDEL, FARMAN, LIPSIUS,
        GARDNER & RABINOVICH LLP
        Attorneys for Defendants
        Ellman Savings Irrevocable Trust and
        Jeffrey Levitin

By: _____
     Ira S. Lipsius
     4 Cornwall Drive, Suite 101
     East Brunswick, NJ 08816
     732-390-0166
     File No.: 4206.0002