UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ELLMAN SAVINGS IRREVOCABLE TRUST, et al.,<br><br>Defendants. | Civil Action No. 08-5364 (MLC)<br><br><br>MEMORANDUM OPINION |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon motion by Defendants Ellman Savings Irrevocable Trust and Jeffrey Levitin (collectively, "Defendants"), seeking an Order permitting them to amend their Counterclaim to assert with greater specificity their claims of fraud and bad faith against American General Life Insurance Company ("Plaintiff"). Plaintiff opposes Defendants' motion to amend arguing that Defendants' proposed amended Counterclaim is futile. The Court has fully reviewed and considered all arguments made in support of and in opposition to Defendants' motion and considers Defendants' motion without oral argument pursuant to FED.R.CIV.P. 78. For the reasons stated more fully below, Defendants' motion to amend is granted in part and denied in part.

**I.     Background**

On July 28, 2010, Defendants filed the instant motion to amend in order to provide greater specificity in their Counterclaim of the alleged fraud and bad faith committed by Plaintiff. Relying on FED.R.CIV.P. 15(a), Defendants argue that they should be "freely given" leave to amend their Counterclaim because of the absence of undue delay, bad faith, dilatory motive or

repeated failure to cure deficiencies by amendments previously allowed.  Defendants also argue that leave to amend should be given because their proposed amendments will not unduly prejudice Plaintiff since fact discovery is still ongoing and Defendants simply seek to add allegations to causes of action that were included in their original Counterclaim.  Further, Defendants claim that their motion should be granted because their proposed amendments cure any alleged deficiencies contained in the original Counterclaim and, as a result, their motion is not futile.

With regard to the fraud claim, Defendants argue that, at the time Plaintiff issued Flexible Premium Adjustable Life Policy UM 0030862L (the "Policy" or the "Ellman Policy"), Plaintiff did not intend to honor it and are now using Mr. Ellman's actual financial condition and the fact that the Policy was purchased for a secondary market, known as the life settlement market, as a pretext to improperly deny Defendants' claim for benefits.  (Def. Reply Br. at 5, 8).  In this regard, Defendants contend that Plaintiff's assertion that it would not have issued the Policy if it had known of Mr. Ellman's true financial condition is false because Plaintiff did not use the financial condition of the insured as an element of its actuarial practice.  In support of this contention, Defendants allege various facts, including the following: (1) Plaintiff's underwriters ignored their underwriting guidelines and wrote high value policies, such as Ellman's, even when those polices were actuarially deficient based on the financial disclosures contained in the applications; (2) Plaintiff did not care about its insured's financial condition because same did not increase or decrease its insured's life expectancy; (3) Plaintiff was aware of and actively pursed the life settlement market as it created opportunities for Plaintiff to collect large premiums and increase its cash flow and market share; (4) Plaintiff was aware of the misrepresentations

2

contained in Ellman's application, but continued to accept the payment of premiums on the Policy with the intention that the Policy would lapse for failure to pay premiums; (5) Plaintiff investigated twenty-eight policies that contained the same conditions as those present in Ellman's Policy that would allow it to rescind same, but Plaintiff did not rescind the policies; instead, Plaintiff chose to keep collecting the premiums without ever intending to pay any benefits on the policies or return the premiums collected; (6) Plaintiff knew that the Policy was a STOLI/IOLI ("Stranger Originated Life Insurance/Investor Originated Life Insurance") policy as Plaintiff identified it as same in March 2006 but did not care; and (7) Plaintiff clearly did not care that the Policy was STOLI/IOLI because in November 2006 when an agent asked if Plaintiff was going to take any action with respect to the Policy, which had been identified as STOLI, Plaintiff, after discussing the matter with its legal department, responded that it would not take any action to rescind the Policy. (*See* Proposed Amended Complt. ¶¶ 277-287).

Based on the aforementioned facts, Defendants argue that Plaintiff committed fraud. Specifically, Defendants argue that Plaintiff induced Defendants to purchase the Policy and pay premiums on same without ever having any intent of providing coverage under the Policy. Further, Defendants claim that, as alleged, the above-referenced facts more than adequately set forth their claim of fraud. Therefore, Defendants request that their motion to amend be granted.

Defendants rely on the same set of facts to support their proposed amended bad faith claim. Specifically, Defendants argue that in light of Plaintiff's alleged scheme not to honor any claims made under the Policy or other policies with similar conditions as the Policy, Plaintiffs acted in bad faith when it denied benefits under the Policy. As such, Defendants contend that their bad faith claim is adequately pled and that their motion to amend should be granted.

3

Plaintiff opposes Defendants' motion, arguing that it should be denied on futility grounds because Defendants' fraud and bad faith allegations fail to raise Defendants' right to relief beyond the mere speculative level. In this regard, Plaintiff argues that Defendants' proposed fraud claim fails to meet the pleading requirements of FED.R.CIV.P. 8(a)(2) and 9(b). Similarly, Plaintiff argues that Defendants' proposed bad faith claim fails to state a claim for which relief can be granted because Defendants' claim for benefits is "fairly debatable," which means it fails as a matter of law and is futile. (Pl. Br. at 9 (quoting *Pickett v. Lloyd's*, 131 N.J. 457, 473 (1993)).

With respect to Defendants' fraud claim, Plaintiff argues that Defendants have not provided any factual support for their conclusions as to Plaintiff's fraudulent intent. Indeed, according to Plaintiff, the evidence relied upon by Defendants to establish that Plaintiff identified the Ellman Policy as STOLI and then made an affirmative decision to keep the Policy anyway, does nothing of the sort. Instead, Plaintiff argues that it merely establishes that Plaintiff identified several policies as being "suspect." (*Id*. at 7). Further, Plaintiff contends that it took action with respect to many policies that were issued based on similar misrepresentations as those made in the application at issue in this case. For example, Plaintiff notes that, in addition to numerous lawsuits filed in other jurisdictions, it brought four separate legal actions in this Court alone seeking recision of STOLI/IOLI policies. As a result, Plaintiff argues that the facts alleged by Defendants are "at least equally indicative of *lawful* conduct" on the part of Plaintiff in response to Defendants' own fraud and Plaintiff's conduct is "at least equally consistent with a lawful purpose as it could be with an unlawful purpose." (*Id*. at 8). For these reasons, Plaintiff

argues that Defendants proposed amended fraud claim fails as a matter of law under FED.R.CIV.P. 12(b)(6) and therefore would also be futile.

Similarly, Plaintiff argues that Defendants' proposed amended bad faith claim is futile. In this regard, Plaintiff argues that Defendants' proposed amended bad faith claim fails because under New Jersey law, a claim for bad faith must be dismissed if the claimant is not entitled to judgment as a matter of law with respect to the claim for benefits. Here, Plaintiff argues that its basis for denying Defendants' claim for benefits is at a minimum "fairly debatable" and, as such, Defendants cannot establish a right to summary judgment on its proposed amended bad faith claim. Indeed, Plaintiff contends that the fact that the Court denied Defendants' motion to dismiss the First Amended Complaint establishes that Plaintiff's claims against Defendants "were properly alleged and supported with specific factual allegations under *Fed. R. Civ. P.* 8 and 9" and thus also establishes that Plaintiff's basis for denying Defendants' claim for benefits is at least reasonably debatable. (*Id*. at 9)

Further, Plaintiff argues that to the extent Defendants' proposed amended bad faith claim is based on Plaintiff's alleged fraudulent intent at the time the parties were contracting for the Policy, the bad faith claim is futile because fraud in the inducement of a contract cannot support a cause of action for bad faith in connection with the denial of a claim. In this regard, Plaintiff contends that a claim that an insurer denied benefits in bad faith is contingent upon the insurer breaching the duty of good faith and fair dealing in the course of rendering a claim decision. Consequently, Plaintiff argues that Defendants' claim that it acted in bad faith when it denied their claim for benefits must fail because that claim is premised on the notion that Plaintiff "committed bad faith by virtue of its pre-contract intent not to honor a claim under the policy, if

5

and when presented" and such conduct does not give rise to a cause of action for bad faith claim denial (*Id*. at 10).

**II.     Analysis**

    **A.     Standard of Review**

According to FED.R.CIV.P. 15(a), leave to amend the pleadings is generally given freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). In the context of Defendants' motion to amend their Counterclaim, the only issue raised by Plaintiff is whether Defendants' proposed amendments are futile.[1] As such, that is the only issue addressed by the Court herein.

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.,*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). In determining whether an

---

[1]Plaintiff, in a single sentence, also mentions that Defendants were already permitted to amend their Counterclaim once and failed to cure the deficiencies contained therein. (Pl. Br. at 5). Plaintiff, however, does not provide any argument on this point. To the extent Plaintiff intended this passing reference to indicate that Defendants' motion should be denied for repeated failure to cure deficiencies by amendments previously allowed, the Court finds this argument to be without merit.

amendment is "insufficient on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard (*see Alvin*, 227 F.3d at 121) and considers only the pleading, exhibits attached to the pleading, matters of public record and undisputedly authentic documents if the party's claims are based upon same. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). When considering whether a pleading would survive a Rule 12(b)(6) motion, the Court must accept all facts alleged in the pleading as true and draw all reasonable inferences in favor of the party asserting them. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In other words, the facts alleged must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

While a pleading does not need to contain "detailed factual allegations," a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. In addition, although the Court must, in assessing a motion to dismiss, view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d

Cir. 2007). Further, in order to survive a Rule 12(b)(6) motion to dismiss, Defendants' fraud claim must be pled with particularity as required by FED.R.CIV.P. 9(b).

      B.      **Claim of Fraud**

Defendants assert that Plaintiff committed fraud when it issued and maintained the Ellman Policy, knowing that it was a STOLI policy, with the intent of collecting premiums on but never honoring a claim for benefits under same. In order to survive a Rule 12(b)(6) motion to dismiss, Defendants' proposed amended Counterclaim must contain enough factual matter to raise Defendants' right to relief above the speculative level and render its fraud claim plausible. *See Twombly*, 550 U.S. at 557-58. Moreover, it must set forth sufficient detail to meet the heightened pleading requirement of Rule 9(b), which requires the pleading to place the Plaintiff on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America,* 361 F.3d at 223-24.

The Court finds that Defendants' proposed amended fraud claim meets these standards. Specifically, Defendants' support their contention that Plaintiff committed the aforementioned fraud with the following allegations:

> 262. For years, American General sought to write high value policies to elderly individuals because fo the extremely high premiums associated with such policies. Besides generating a high cash flow, these elderly policies were extremely profitable for American General because often, the increasing life expectancy made it difficult for insureds to continue paying the high premiums until the benefits become due. When these policies lapsed for failure to pay premiums, American General would gain a windfall as the policies would expire and the insurer would be entitled to keep all the past paid premiums.

263. As a result, American General underwriters ignored the analysis of their own actuaries and underwriting guidelines and wrote high value policies even if such policies were actuarially deficient.

264. In the last few years, the investment institutions saw this phenomenon as a significant opportunity for expansion. The financial institutions, including those funded by AIG, American General's parent company, purchased these actuarially deficient elderly policies in volume and continued to pay premiums until the death benefits became due. Since these policies were written with the lapse rate in mind, and the policies were no longer lapsing, the investors saw tremendous profits while the life insurers began to suffer financially.

265. American General, counting on many of these high premium policies to lapse, was now forced to keep-up their end of the contract.

266. As a result, American General began to aggressively litigate elderly policies and hoped that post-issuance judicial underwriting would offset the failures of its pre-issuance insurance underwriting.

267. Even though American General cared not at all for the financial condition of the insured when the policy was written, as that information does not at all increase or decrease the likelihood of death, American General fraudulently began alleging that the financial information in applications were materially misrepresented as a pretext to rescind policies.

268. American General, at all times, was aware of the life settlement market and, in fact, for many years actively pursued the market.

269. Upon information and belief, American General pursued the market by ignoring its own underwriting guidelines concerning financial condition of the insured.

270. American General realized that catering to the lfie settlement market created opportunities for American General to collect colossal premiums and substantially increase its cash flow and market share.

271. With regard to the American General policy upon the life of Ellman, American General was actually aware of the alleged misrepresentations and yet American General continued to accept premium payments on the policy.

272. Upon information and belief, at the time American General issued the policy at issue, the financial condition of the insured was not material to its underwriting.

273. Upon information and belief, American General would have issued the Ellman policy even had it known of the alleged misrepresentations at the time of the application.

274. Ellman, the insured, was a New York resident.

275. The trustee of the Trust is a New York resident.

276. American General refuses to return the premiums paid to the Trust upon rescission of the policy.

277. At the time American General issued the Ellman policy it had no intention of ever honoring the death benefit. Instead, it issued the policy with the intention that the policy would lapse for failure to pay premium.

278. In the case of the Ellman policy, since the policy did not lapse prior to the benefits becoming due, American General falsely claims that it would not have issued the policy had it known of the insured's true financial condition.

279. In fact, despite American General's contentions, American General knew or should have known the insured's true financial condition prior to the issuance of the policy or shortly thereafter. In fact, contrary to American general's contention here, when pricing the policy, American General did not use the financial condition of the insured as an element of its actuarial practice.

y

280. Although American General claims that it never would have issued the Ellman policy had it known Ellman's true fiancial condition, it really issued the policy without regard to Ellman's financial condition and only issued the policy in order to induce the Trust to pay premiums for coverage American General never intended on providing to anyone.

281. American General's underwriters were able to issue the policies despite the fact that they knew or should have known that the financial condition of the insured was questionable because the financial condition of the insured did not alter the risk assumed by American General. The financial condition of Ellman did not increase or decrease his life expectancy.

282. Further evidence that the Ellman policy was issued solely to collect and keep premiums for which no benefit would ever accrue is the fact that American General investigated the following [28] policies and determined that the policies contained the same or similar conditions as in Ellman which would allow American General to rescind . . . .

283. Instead of rescinding the policies, however, American General chooses to keep the policies in force with the intent to collect premiums, keep the premiums and never pay any benefit. Presently, American General collects over $6 million per year in premiums on these policies but like Ellman, never intends on providing any coverage.

284. When Ellman's claim for benefits became due sooner than American General's underwriters predicted, American General used the representations made concerning Ellman's financial condition as a pretext to void the policy and keep the premiums even though it knew or should have known of Ellman's true financial condition.

285. With regard to the Ellman policy, American General knew it was IOLI and did not care. American General issued the policy on March 14, 2006. That same month, American General audited a series of policies and concluded that the Ellman policy was among those that were likely STOLI policies.

>286. On November 17, 2006, Denise Bell wrote to Scott Busalacchi asking, "will the company be pursuing any further investigation on the 'yes' ones?"
>
>287. On November 17, 2006, Mr. Busalacchi replied that no further action will be taken because the audit was "just an effort to estimate the total how much IOLI business we may have."
>
>288. American General's feigned outrage against STOLI is a performance enacted in order to not pay the claim.

(Def. Proposed Amended Counterclaim ¶¶ 262-288).  The Court finds that Defendants' allegations that Plaintiff:  (1) was aware of the misrepresentations contained in Ellman's application but continued to collect premiums under the Ellman Policy; (2) knew of Ellman's true financial condition prior to issuing the Policy; (3) continues to collect premiums on 28 other policies all of which have been investigated and contain the same or substantially similar conditions as those present in the Ellman Policy, even though those conditions would allow Plaintiff to rescind same; (4) knew in 2006 that the Ellman Policy was IOLI, but consciously chose not to take any action with respect to same; (5) refuses to pay benefits under the Policy now that a claim has been made; and (6) not only seeks to rescind the Policy but to also keep all premiums paid, raise Defendants' right to relief on their fraud claim above the speculative level.  Moreover, the Court finds that these allegations inject sufficient precision into Defendants' claim of fraud to put Plaintiff on notice of the exact misconduct with which it is charged as required by Rule 9(b).  As a result, the Court finds that Defendants' proposed amendments with respect to their claim of fraud are not futile.

### C. Claim of Bad Faith

"Under New Jersey law, to establish a claim for bad faith in the insurance context, a p[arty] must show two elements: (1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Ketzner v. John Hancock Mutual Life Ins. Co.*, 118 Fed. Appx. 594, (3d Cir. 2004) (quoting *Pickett*, 131 N.J. at 453-54). As such, "[t]o establish a bad faith claim, plaintiff must be able to establish, as a matter of law, a right to summary judgment on the substantive claim; if plaintiff cannot establish a right to summary judgment, the bad faith claim fails. In other words, if there are material issues of disputed fact which would preclude summary judgment as a matter of law, an insured cannot maintain a cause of action for bad faith." *Id*. (citations omitted).

Further, in the insurance context, a bad faith claim is premised on the insurer's failure to investigate an insured's claim for benefits. *Serra v. Berkshire Life Ins. Co. Of Am.*, Civil No. 07-1798 (AET), Memorandum and Order at 3 (D.N.J. 2007) (citing CJS INSURANCE § 1580 ("In applying the test for existence of bad faith against the insurance carrier, it is appropriate to determine whether the claim was properly investigated and whether the results of the investigation were subjected to reasonable evaluation and review")). Such a claim is not appropriately based on an insurer's failure to investigate an application. *Id*.

In support of their bad faith claim, Defendants rely on the same allegations quoted above in connection with their claim of fraud. The Court finds that these allegations fail to set forth a claim of bad faith and that Defendants' proposed amendments are therefore futile in this context. First, the Court finds that Defendants' allegations regarding Plaintiff's alleged fraud connected to

13

Defendants' procurement of the Policy (i.e., Plaintiff's issuance of a policy they never intended to honor), focus on conduct that took place long before Plaintiff investigated Defendants' claim for benefits and therefore are largely inapplicable to Defendants bad faith claim.  Second, the Court finds that the basis for Plaintiff's failure to pay the contested claim is "fairly debatable."

In this regard, the Court finds that while Defendants' allegations support Defendants' claim that Plaintiff issued the Policy without ever intending to pay a claim for benefits under same, the allegations are open to interpretation.  For example, the Court finds that the emails relied upon by Defendants to establish that Plaintiff knew that the Policy was IOLI and chose not to take action on it, also support Plaintiff's theory that it had merely identified the Policy as being suspect, not that it knew the Policy was IOLI but chose to take no action anyway.  Defendants' allegations simply do not permit the Court to determine that as a matter of law it is entitled to summary judgment on their bad faith claim.  Plaintiff's claim that it failed to pay benefits under the policy based on Defendants' fraudulent misrepresentations in the application is also reasonable.  As a result, the Court finds that Defendants' bad faith claim would not survive a motion to dismiss and is futile.

### III.  Conclusion

For the reasons stated above, Defendants' motion to amend its Counterclaim is granted in part and denied in part.  An appropriate Order follows.

Dated: December 17, 2010

                                                 s/  Tonianne J. Bongiovanni
                                      **HONORABLE TONIANNE J. BONGIOVANNI**
                                      **UNITED STATES MAGISTRATE JUDGE**