WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Robert P. Lesko
Karen D. Peck
200 Campus Drive
Florham Park, NJ 07932-0668
 (973) 624-0800 ph.
(973) 624-0799 fx.
Attorneys for plaintiff, American General
Life Insurance Company

|  |  |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY |
| Plaintiff, | Civil Action No: 3:08-cv-05364-MLC-TJB |
| vs. | **AMERICAN GENERAL LIFE INSURANCE COMPANY'S ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES** |
| ELLMAN SAVINGS IRREVOCABLE TRUST, JEFFREY LEVITIN, ISRAEL KUGIELSKY, CHAIM RUBIN, and JOHN DOES 1-10, | |
| Defendants. | |

TO:    Ira Lipsius, Esq.
       Schindel, Farman, Lipsius, Gardner & Rabinovich LLP
       14 Penn Plaza, Suite 500
       New York, New York 10122
       Attorneys for Defendants Ellman Savings Irrevocable Trust and Jeffrey Levitin


       PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil

Procedure and the Local Rules of Civil Procedure,  Plaintiff American General Life

Insurance Company ( "Plaintiff" and/or "American General"), responds to Defendants'

First Set of Interrogatories to Plaintiff as follows:

## GENERAL OBJECTIONS

1.      Plaintiff objects to these Interrogatories in their entirety as overly broad, unduly burdensome, vague, vexatious, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence.

2.      Plaintiff objects to each Interrogatory calling for an answer requiring "each", "every", "all", "any", or "each and every" persons, entities, documents, statements, facts or circumstances on the grounds that such Interrogatories are vague and ambiguous, overly broad, unduly burdensome, oppressive and vexatious, and that they seek information neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection, Plaintiff will construe these terms and phrases to request that Plaintiff use reasonable diligence to locate relevant information or documents, based on an examination of those files that reasonably may be expected to yield relevant information or documents, and inquire of those who may reasonably be expected to possess responsive information or documents.

3.      Plaintiff objects to all Interrogatories and requests for information regarding "each", "every", "all", "any", or "each and every" person(s), entity(ies), fact(s), circumstance(s), document(s), or statement(s) on the grounds that Plaintiff has not completed its investigation of facts relating to this action.  Discovery and Plaintiff's search for documents and related materials is ongoing.  Accordingly, Plaintiff reserves the right to rely on any facts, documents or other evidence that may develop or come to

Plaintiff's attention, subsequent thereto.  Plaintiff's responses are set forth herein without prejudice to its right to assert additional objections or supplemental responses should Plaintiff discover additional information or grounds for objections.   Additionally, Plaintiff reserves the right to supplement or amend these responses at any time prior to trial of this action.

4.     Plaintiff objects to each Interrogatory that seeks information with respect to documents or oral communications "relating to", "reflecting", "pertaining to", "concerning", "discussing", "referencing", or "referring to" certain facts or contentions on the grounds that these terms are vague and ambiguous, and do not describe the material sought with sufficient particularity.  Plaintiff further objects that requests using these terms are overly broad, unduly burdensome, oppressive and vexatious and that they seek information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

5.     Plaintiff objects to the Interrogatories to the extent they impose any duty or obligation upon Plaintiff in excess of those duties and obligations imposed by the applicable Rules of Court.

6.     Plaintiff objects to all Interrogatories to the extent they seek information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the self-examination or self-critical analysis privilege, or any other legal privilege or immunity.

7.     Plaintiff objects to all Interrogatories that seek information in the possession or control of other parties to this action.

8.     Plaintiff objects to these Interrogatories to the extent that they require the understanding of legal concepts, statutory construction and/or court roles, thus improperly seek a legal conclusion and/or legal reasoning which is not the appropriate subject matter of Interrogatories.

9.     Plaintiff objects to all Interrogatories to the extent that they require Plaintiff to detail its legal contentions and supporting facts on the ground that such request are premature at this stage of discovery.

10.     To the extent Plaintiff answers these Interrogatories; Plaintiff does not concede that the information requested is relevant to this action.   Plaintiff expressly reserves the right to object to further discover of the subject matter of any of these Interrogatories and the introduction into evidence of any answer or portion thereof, or of any document produced in response to these Interrogatories.

11.     Plaintiff reserves the right to challenge the competency, relevance, materiality and admissibility of information set forth herein in any subsequent proceeding or the trial of this or any other action and to object on those grounds to the use of these answers in any subsequent proceeding or the trial of this or any other action.

12.     Plaintiff objects to all Interrogatories to the extent they seek disclosure of confidential, commercial or business information.

13.     Plaintiff objects to defendants' improper reference to "AIG" insofar as there is no entity referred to as "AIG" that is a party or otherwise relevant to this action or any of the claims or defenses asserted herein.   Insofar as practical, American General has

assumed that all of defendants' references to "AIG" were inserted in error, and were actually intended to read "American General Life Insurance Company," and American General has responded to the requests on that basis.

The foregoing General Objections are hereby expressly incorporated in each of the following answers to Interrogatories, to the extent applicable, and are in addition to any specific objections made in any of the following answers.

## SPECIFIC OBJECTIONS AND ANSWERS TO INTERROGATORIES

1.      Identify any person or persons providing information necessary to complete these interrogatories and, as to each person so identified, state the number of the interrogatory or part thereof for which he or she provide (sic) information.

**Response:**

American General objects to this interrogatory on the grounds that it is overly broad and burdensome and seeks to impose discovery obligations upon American General beyond those provided in the Federal Rules of Civil Procedure.   American General further objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine.  American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.  American General further objects to this interrogatory on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving any objections, Sarah Locket Wickes, with the aid and assistance of counsel, helped to gather and provide information necessary to respond to these interrogatories.

2.      Identify each and every AIG employee, representative, agent, broker, independent contractor, and examiner (including by way of example, but without limitation to, underwriters, actuaries, investigators, medical examiners) involved with the investigation, pricing, approval, issuance or otherwise having any relation to the Ellman Policy.

**Response:**

American General objects to this interrogatory on the grounds and to the extent that it is vague and ambiguous because the term/phrase "involved with…or otherwise having any relation to the Ellman Policy," is subject to alternate and potentially conflicting interpretations, and is also, therefore, overly broad and unduly burdensome. American General further objects to this interrogatory on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.  American General further objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine.  American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.  American General objects to this interrogatory on the grounds that it seeks to impose upon American General the costs and other burden associated with distilling specific information from documents or other sources that are available to defendants at the same or lesser cost.

Subject to and without waiving any objections, American General refers defendants to the relevant, non-privileged portions of the Underwriting and Claims Files maintained by or on behalf of American General relevant to the Policy at issue, which may contain information responsive to this request.   American General also refers defendants to American General's initial disclosures previously produced herein. American General reserves the right to amend its response to this interrogatory in accordance with the Federal Rules of Civil Procedure and orders of the Court as additional information is discovered through the course of continuing discovery.

      3.      Identify the date(s):

           (i) AIG first believed that the application in connection with the Ellman Policy may contain false information; and

           (ii) AIG became aware of any Financial Misrepresentations in the application submitted in connection with the Ellman Policy.

**Response:**

American General objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine.  American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.

Subject to and without waiving any objections, American General responds that it first became aware of defendants' fraudulent misrepresentation in connection with the Ellman Policy during the investigation commenced following the receipt of the Trust's Proof of Death Claimant's Statement in May 2008.

      4.      Specify in detail the manner in which AIG claims that it was damaged as a result of the alleged fraud complained of in the complaint.

**Response:**

American General objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine.  American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.  American General further objects to this interrogatory on the grounds that it is premature insofar as it calls for the full and complete disclosure of all of American General's contentions relating to damages prior to the close of discovery.

Subject to and without waiving any objections, American General responds that it incurred damages in connection with the issuance and administration of the Ellman Policy, including, but not limited to, attorneys' fees, fees incurred pursuant to the

investigation, and commissions paid in connection with the Ellman Policy.  American General was also defrauded into accepting a risk that it would not have accepted if the true facts had been disclosed to it.  American General's additional damages will be detailed and quantified by experts.   As a result of the damages incurred, American General is entitled to, among other things:

a.  A declaration pursuant to 28 U.S.C. § 2201 that American General is entitled to keep all premiums paid under the Ellman Policy as offset against damages, costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Ellman Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Ellman Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Ellman Policy in their possession, custody and control for cancellation;

b.  A declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Ellman Policy, the Ellman Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Ellman Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Ellman Policy in their possession, custody and control for cancellation;

c.  An order requiring  defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Ellman Policy together with its cost of investigation, costs of suit and attorneys fees;

d.  Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit, and attorneys fees;

e.  Such other and further relief as may be available to American General which the Court deems to be equitable and just.

5.  How did AIG verify the information contained in any application submitted in connection with the Ellman Policy?  In responding, identify each and every action taken by AIG and identify any natural person taking each such action on behalf of AIG.

**Response:**

998258.1

American General objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome given its use of the term "verify" and because it does not specify the "information contained in any application" to which it is directed. American General further objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.

Subject to and without waiver of any objections, American General refers defendant to the underwriting and policy files pertaining to the subject policy that have already been produced by American General, which may contain information responsive to this request. American General further responds with the following information, which may be responsive to this request:

On or before November 9, 2005, when United States Central Agency Services Corporation ("USCAS") sent to American General a life insurance application purportedly executed by Irving Ellman and Rubin. The November 9 Application stated the reason for the proposed policy as "estate planning," meaning preservation of a purportedly sizeable estate from estate taxes. It also misrepresented Ellman's personal net worth as $15 million.

In the course of underwriting, American General received a Comprehensive Inspection Report including a telephone interview completed by Lab One, in which an individual claiming to be Ellman represented that he was retired from the real estate business. He represented his current unearned income as $643,000, and total net worth as $5,135,000.00. On November 29, 2005, Rubin forwarded a letter purportedly from Ellman to Rubin setting forth Ellman's balance sheet indicating net worth of $11,312,000.00.

American General requested confirmation of net worth from Ellman's accountant. On March 13, 2006, an individual claiming to be Larry Ellman called Lab One, and represented that he had been providing personal accounting services to Ellman for twenty years. The caller represented that Ellman had yearly gross income of $1,500,000.00 and net worth of $11,312,000.00.

On March 13, 2006, Ellman, Rubin, and Israel Kugielsky, as Trustee, executed a new insurance application identifying the Ellman Trust as the owner and sole beneficiary of the Ellman Policy. This application was purportedly executed in Lakewood, New Jersey.

In the March 13 application, Ellman, Kugielsky, Rubin, and the Trust specifically requested issuance of a policy with Base Coverage of $10,000,000.00. Each again represented that the policy was intended for "estate planning." In response to questions regarding Ellman's personal income and net worth, the March 13 application incorporates the values provided in the inspection report, namely $1,500,000 and $11,312,000, respectively. The March 13 application also stated that there was then no other pending or in force life insurance or annuity on the Ellman's life.

998258.1

In reliance upon the information provided to American General throughout the course of the underwriting process, American General issued the Policy and caused it to be delivered with an Issue Date of March 14, 2006. The Policy was issued using policy form number 04337, which was created and intended for use in the State of New Jersey. The Policy Schedule page indicates in all capital letters "THIS IS A NEW JERSEY POLICY." American General delivered the Ellman Policy to Rubin in New Jersey on or about March 16, 2006 for delivery to the Trust. Rubin delivered it to Kugielsky in New Jersey on March 22, 2006.

On January 16, 2007, Kugielsky renounced his appointment as Trustee and advised that Levitin would be his successor. Levitin accepted the assignment on January 23, 2007. Ellman died on May 21, 2008. Thereafter, Levitin executed a Proof of Death of Claimant's Statement on behalf of the Trust.

In a subsequent interview, Larry informed an investigator that Ellman was last employed from 1978 to 1994 by the New York State Department of Insurance, Liquidation Bureau, and was not in the real estate business as represented in the application. He estimated Ellman's personal income at $2,000.00 per month in state pension and social security benefits, with no stock, bonds, equity, or real estate at all. Ellman's total net worth is estimated at less than $25,000.00. Larry also admitted he is not an accountant and had never served as such for Ellman. Larry had no knowledge of any life insurance or trust until after Ellman's death. Thus, Larry could not have been the person who spoke with Lab One on the telephone and verified Ellman's income and net worth.

6.      Identify (including date, payee, amount and any relevant agreement and/or contract) any commissions paid by AIG relating to the Ellman Policy?

**Response:**

American General objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.

Subject to and without waiver of any objections, insurance producer Chaim Rubin received commissions as a result of the solicitation and procurement of the Ellman Policy. Further responding, American General refers defendant to the relevant non-privileged portions of the underwriting and claim files previously produced, as well as American General's initial disclosures, which documents contain additional information responsive to this interrogatory.

7.      For all commission identified in response to Interrogatory No. 6, state the efforts made by AIG to collect back or recover such commissions.

**Response:**

998258.1

American General object to this interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses asserted in this matter nor reasonably calculated to lead to the discovery of admissible evidence.  .

Subject to and without waiving any objections, American General responds that, in the present action, it demands, among other things, the return of commissions and other compensation that Chaim Rubin received in connection with the Ellman Policy.

8.      Identify every High Value Life Insurance Policy issued by AIG for the period 2002 to the present where the application (as attached to the policy) did not include any questions concerning income or net worth or, in response to any of the application's question(s) concerning income or net worth, (i) did not include a response; (ii) include a response of "none" or "zero" or "n/a" or "not applicable"; or (iii) included a reference to a document other than the policy application.

**<u>Response:</u>**

American General objects to this interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses asserted in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation.  American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information, and would also lead to unnecessary and disproportionate expenditure of judicial resources.

9.      Identify every High Value Life Insurance policy issued by AIG for the period 2002 to the present where the application (as attached to the policy) failed to indicate whether or not the insured had other policies of life insurance in force, including without limitation to, High Value Life Insurance policies where the application did not respond to any question(s) relating to an insured's (i) other insurance, (ii) existing insurance or (iii) pending insurance.

**<u>Response:</u>**

American General objects to this interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses asserted connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation.  American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require disproportionately time-consuming and expensive search

of American General's records in order to ascertain whether American General is in possession of any responsive information, and would also lead to unnecessary and disproportionate expenditure of judicial resources.

10.     Identify (by court, court docket number, caption, and title) every legal action commenced from 2002 to the present in which AIG is a party and which involves the rescission of, or action for declaratory judgment to void for any reason (including, without limitation, lack of insurance interest), a life insurance policy for a person equal to or greater than 75 years old and a face value of $1,000,000 or more.

**<u>Response:</u>**

American General objects to this interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses asserted in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information, and would also lead to unnecessary and disproportionate expenditure of judicial resources. American General further objects to this interrogatory on the grounds that it seeks to impose upon American General the costs and other burden associated with distilling specific information from documents or other sources that are available to defendants at the same or lesser cost.

11.     For the years 2002 to 2009, how did AIG verify (i) responses to questions relating to an applicant's other or existing life insurance and (ii) responses to questions about an applicant's financial status (including, without limitation to, responses relating to an applicant's net worth and/or income)? In responding, identify each and every procedure utilized by AIG (including, without limitation to, any written internal policies or procedures) to verify responses to financial questions in a policy application.

**<u>Response:</u>**

American General objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome due in part to its use of the term "verify." American General further objects to this interrogatory on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this

interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information, and would also lead to unnecessary and disproportionate expenditure of judicial resources.

12.    Identify all High Value Life Insurance policies issued by AIG from 2004 to the present where, prior to the death of the insured, AIG conducted an investigation into responses to financial questions contained in the policy or the application or any other document (e.g., Financial Questionnaire) submitted in connection with the policy.

**<u>Response:</u>**

American General objects to this interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this interrogatory on the grounds and to the extent that it calls for the disclosure of the information the disclosure of which would violate the attorney-client privilege and/or the attorney work product doctrine.

13.    For each year of the period 1995 to the present, state the number of High Value Life Insurance policies issued by AIG and state for each year the total value of such policies issued.

**<u>Response:</u>**

American General objects to this interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information.

998258.1

14.     State in detail each reason (including, without limitation to, any actuarial justification) that net worth of an insured is material to AIG's decision to issue a policy).

**Response:**

American General objects to this interrogatory on the grounds that it is overly broad, vague and ambiguous insofar as it is not limited to a specific policy, time period or factual circumstance.  American General further objects to this interrogatory on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

Subject to and without waiver of any objections, American General states that financial underwriting, meaning the examination of the economic elements of a particular case, including but not limited to income and net worth, is necessary to determine whether there exists an insurable interest as well as to determine whether there is a need for insurance, and if so, how much.  Financial underwriting is also necessary to determine whether the insurance requested bears a reasonable relationship to the loss that would occur in the event of the insured's death.  Without financial underwriting, there is a substantial risk of speculative intent, overinsurance, moral hazard, and other adverse risk characteristics potentially antithetic to American General's decision to accept the risk.

Further responding American General refers defendant to its initial disclosures and documents references therein, including but not limited to the relevant non-privileged portions of applicable underwriting guidelines in effect at the time the subject policy was issued, which documents may contain further information responsive to this request.

15.     State in detail each reason (including, without limitation to, any actuarial justification) that annual income of an insured is material to AIG's decision to issue a policy.

**Response:**

American General objects to this interrogatory on the grounds that it is overly broad, vague and ambiguous insofar as it is not limited to a specific policy, time period or factual circumstance.  American General further objects to this interrogatory on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

Subject to and without waiver of any objections, American General states that financial underwriting, meaning the examination of the economic elements of a particular case, including but not limited to income and net worth, is necessary to determine whether there exists an insurable interest as well as to determine whether there is a need for insurance, and if so, how much.  Financial underwriting is also necessary to determine whether the insurance requested bears a reasonable relationship to the loss that would

occur in the event of the insured's death.  Without financial underwriting, there is a substantial risk of speculative intent, overinsurance, moral hazard, and other adverse risk characteristics potentially antithetic to American General's decision to accept the risk.

Further responding American General refers defendant to its initial disclosures and documents references therein, including but not limited to the relevant non-privileged portions of applicable underwriting guidelines in effect at the time the subject policy was issued, which documents may contain further information responsive to this request.

16.     Identify any communications made internally at AIG or made between AIG and any agent, broker, premium finance company, or life settlement company since January 1, 2002 concerning insurable interest.

**Response:**

American General objects to this interrogatory on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.  American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require a disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information.  American General further objects to this interrogatory on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation.  American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.  American General further objects to this interrogatory on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

17.     State whether any bonuses are paid to any AIG employees based on premiums collected or scheduled to be collected and if so, identify the title of employees subject to such bonuses.

**Response:**

American General objects to this interrogatory on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.  American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require a disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is

in possession of any responsive information.  American General further objects to this interrogatory on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

## CERTIFICATION

**As to responses:**

Sarah Lockett Wickes, of full age, hereby certifies and says that I have been authorized to sign the foregoing answers to Interrogatories on behalf of American General Life Insurance Company, that I have read American General Life Insurance Company's Objections and Answers to Interrogatories, and know the contents thereof, and subscribe the same on behalf of  American General Life Insurance Company, that said answers were prepared with the assistance of representatives of American General Life Insurance Company in this action and with the advice and assistance of counsel, that subject to inadvertent or undiscovered errors all or portions of said answers are based upon the records and information still in existence, presently recollected and thus far discovered in the course of the preparation of these answers, that consequently, American General Life Insurance Company reserves the right to make changes in the answers if it appears at any time that omissions or errors have been made therein or that more specific information is available, and that, subject to the limitations set forth herein, the said answers are true to the best of my knowledge, information and belief.

_____

Sarah Locket Wickes
Claims Examiner

Dated:

**As to objections:**

> **WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
> Attorneys for Plaintiff
>
> _Karen D Peck_
>
> _____
>
> Karen D. Peck
>
> Dated:

998258.1