# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

200 Campus Drive, Florham Park, New Jersey 07932-0668   Tel: 973.624.0800   Fax: 973.624.0808
One Gateway Center, Suite 2600, Newark, New Jersey 07102

Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • West Palm Beach • White Plains
*Limited Liability Partnership of NY*

*Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

JAMES CRAWFORD ORR
WILLIAM J. RENA
THOMAS F. QUINN
BARBARA HERKINSON KELLY
CAROLYN F. O'CONNOR
KENNETH M. BROWN
DANIEL F. FLORES
KIRT W. KRAUSS
WILLIAM P. KRAUSS
MICHAEL J. NAUGHTON
JOSEPH A. GALLO
ROBERT A. BERNS
KELLY A. WATERS
BRIAN J. WHITEMAN
SUSAN KARLOVICH
MATTHEW S. MARRONE
KEVIN C. DONOVAN

JAMES S. JOHNSTON
JOSEPH J. HANLON
ROBERT J. RYBO
ROBERT J. SHERMAN
ROBERT T. GERNEDO
GEORGE KAHN
MAXWELL L. BILLEK
JOANNA PIOREK

OF COUNSEL
ROBERT C. NEFF, JR.
JOHN F. O'TOOLE
SUBA LIU
CHRISTOPHER W. MACLANAHAN
LINDA K. SMITH
TANYA HICCA
PAUL K. PARAY

KEITH O. VON GLAHN (1952-2007)

KURT R. DZUGAY
GINA CALABRIA
JOHN W. WILLIAMS
SHAUN S. McCONNOR
KEM M. CONNOR
PETER A. SWIFT
ERIC L. EVANS
GREGORY T. FOOTE
JULIE VON HOYDEN
BROOK W. McCOY, JR.
DANIEL E. ZEMSKY
G. TY NGUYEN
JESSICA BRENNAN
KATHERINE POTTER
MELISSA D. LANDAU

KAREN D. FECK
JOHN W. RENSHI
STEPHANIE RUTTO
JILLIAN ACKERMANN
LORES FERRAGINE
ANDREW E. BAIN
BRENDAN F. McCARTHY
CHARLES KIRLEY
PAUL J. MILEN
ANTHONY RAFA
AMRIT SAMPAT
ANTHONY J. DRAGONE
EMILY WEISSLITZ
JOHN P. CYRINE

www.wilsonelser.com

July 5, 2011

## Via ECF

Hon. Tonianne J. Bongiovanni, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

Dear Judge Bongiovanni:

> **Re:**   *American General Life Ins. Co. v. Ellman Savings Irrevocable Trust et al.*
> **Docket No. 08-cv-5364**
> **Our File No. 07478.00537**

As your Honor is aware, this firm represents plaintiff American General Life Insurance Company ("American General") in connection with this matter. We write in response to the defendants' June 24th request for leave to file a motion to compel discovery and for sanctions.

Defendants' request should be rejected because: (1) defendants have failed to even attempt to meet and confer regarding disputes before burdening the Court, let alone do so in good faith, and; (2) the discovery sought by defendants is so broad and burdensome as to vastly outweigh any potential and marginal probative value. Experience demonstrates that defendants' real goal in seeking the discovery is to establish leverage for settlement through *in terrorem* discovery tactics. Meanwhile, the subject discovery will needlessly burden the parties and the Court by unnecessarily protracting discovery and the litigation.

It should not be forgotten that this matter arose out of defendants' scheme and pattern of racketeering activity in furtherance of the business of an enterprise to wrongfully and unlawfully obtain issuance of life insurance policies and payment of life insurance death benefits from American General and other companies in contravention of state and federal statutes, common law and public policy, all to the detriment of American General, its shareholders, its

To: Hon. Tonianne J. Bongiovanni, U.S.M.J.
July 5, 2011
Page 2

policyholders, and the insurance-consuming public. American General commenced this action
seeking not only rescission of the Ellman Policy at issue, but also seeking compensatory and
treble damages for the fraud based upon the New Jersey Insurance Fraud Prevention Act and the
federal Racketeer Influenced and Corrupt Organizations Act (RICO). In fact, this action
involving the Ellman Policy is one of four similar cases commenced by American General
believed to involve the same common scheme and common participants.

Defendants have attempted to turn the tables on American General by asserting bare
allegations of fraud without any good faith basis, let alone evidentiary support. Defendants now
seek to disrupt the day-to-day business of the company by burdening its officers and employees
with overly broad and burdensome discovery obligations. Defendants' motivation for such
disruptive discovery was articulated by one of defendants' attorneys in a similar fraud action
brought by American General in the United States District Court for the Southern District of
New York. There, counsel noted for the court during a discovery conference:

> Look. I want to give two events that happened in the last six
> weeks. On Friday afternoon, I received a check from American
> General in settlement of a case for $1.7 million[1] as the result of the
> Court, a district court, ordering them to produce their applications.

(Exhibit A at 51:16-20). The Court should be particularly vigilant in this case to prevent such
obvious abuse of the discovery process by defendants.

## A.  **Defendants Have Failed to Meet and Confer**

Defendants have failed to make a good faith attempt to meet and confer regarding the
issues raised in their June 24th correspondence to the Court. Moreover, at no time has defense
counsel made any attempt to discuss any of the disputed subject matter either in person or by
telephone. Accordingly, counsel's June 24 letter came without notice or warning, and was a
complete surprise.

By letter dated June 7, 2011, defendants requested supplemental discovery responses to
their first set interrogatories and first notice to produce documents. [Exhibit B]. However, the
letter merely provides a serial list of requests and interrogatories without so much as:
distinguishing which among the list are interrogatories and which are document requests,
describing the subject matter of the discovery, attempting to clarify or narrow the requests or
otherwise proposing any sort of resolution or reasoning for their position. Thus, in American
General's response of June 17th, we requested that defendants provide a detailed correspondence
presenting their position *separately* with respect to *each* discovery request at issue.
Alternatively, *we offered to discuss each such request by telephone at a mutually acceptable time
and date*. [Exhibit C]. Defendants failed to respond to American General's requests to provide
support for their position and instead submitted their June 24th correspondence to the Court.

---

[1] Despite best efforts, including consultation with clients and other outside counsel allegedly involved in the
purported settlement, we have been unable to verify this statement.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

To: Hon. Tonianne J. Bongiovanni, U.S.M.J.
July 5, 2011
Page 3

        Similarly, defendants failed to meet and confer with respect to their requested witnesses.
Defendants' *thirteen* deposition notices exceed the limit of ten depositions set forth by the
Federal Rules of Civil Procedure. *See Fed. R. Civ. P.* 30(a)(2)(A)(i). Thus, by letter dated June
1, 2011, we requested that defendants consider limiting their deposition requests in order to
identify only those witnesses that truly possess knowledge relevant to the issues presented in this
action. [Exhibit D]. We advised that doing so would enable us to more quickly and efficiently
arrange for the depositions of appropriate witnesses. Moreover, insofar as the witnesses that
defendants identified do not appear to have played any role in the subject transaction, we
requested that defendants proffer a basis upon which each person's testimony could be
considered relevant to this matter. We further advised that American General intends to object to
producing any out-of-state witnesses in New Jersey, and that any such depositions will take place
in the jurisdiction where each witnesses lives and/or works. Defendants made no attempt to
narrow their witness list or to provide a basis for the relevancy of each person's testimony.[2]

**B.    American General Objections and Responses to the Trust's First and Second
        Notices to Produce Are Valid and Proper Because Defendants' Demands Are
        Disproportionately Broad, Burdensome and Harassing**

        Defendants' document requests are disproportionately broad and burdensome in that they
require American General to engage in a costly and time consuming search, and produce what
could be hundreds of thousands of pages of documents, relating to other lawsuits instituted by
American General, unrelated and irrelevant marketing/public relations activities, and other items,
some dating back ten years (*i.e.,* until 2001) on a nationwide basis.

        Such "fishing expeditions" fail to meet Rule 26's relevance threshold. Even if such
discovery was relevant, it would result in a disproportionate burden on American General and a
waste of judicial resources; thus, pursuant to Fed. R. Civ. P. 26(c), American General should not
be required to produce such discovery. Moreover, all documents relating to the subject Policy
have been preserved via American General's computer-generated AWD History system, in
which documents, e-mail messages and notes are maintained. American General has already
produced its entire file regarding the policy at issue, including the policy file and underwriting
file. Therefore, to the extent that defendants request documents relating to American General's
communications with reinsurers, other insurers, and various other sources, all of which are
unrelated to the policy or transaction at issue, such requests are unreasonable, overly broad and
improper.

        **1.    *Discovery Related to Policies Other than the Subject Policy Does Not Meet the
                Rule 26 Relevance Threshold***

        Those requested documents that are *not* related to the subject Policy do not meet the

_____
[2] Defendants did respond to American General's June 7th objection; however, their response only addressed
American General's objections to producing in New Jersey those requested witnesses who live and work out-of-
state. [Exhibit F].

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

1214360.1

To: Hon. Tonianne J. Bongiovanni, U.S.M.J.
July 5, 2011
Page 4

relevance threshold as set forth by Fed. R. Civ. P. 26. Pursuant to Rule 26, parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. *Fed. R. Civ. P.* 26(b)(1); *Padilla v. Price Toyota*, 2005 U.S. Dist. LEXIS 25720 (D.N.J. Oct. 28, 2005).

Despite the potentially broad scope of the rule, "to cast a wide net for discovery of information in the hopes that something of use may come back is the essence of a fishing expedition precluded by the rule of proportionality." *Prof'l Recovery Servs. v. GE Capital Corp.*, 2009 U.S. Dist. LEXIS 3889 (D.N.J. Jan. 15, 2009); *see also Robbins v. Camden City Bd. of Education,* 105 F.R.D. 49 (D.N.J. 1985) ("the Federal Rules of Civil Procedure...are concerned with preventing 'fishing expeditions,' discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests"); *Collens v. City of New York,* 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses"); *Tottenham v. Trans World Gaming Corp.,* 2002 U.S. Dist. LEXIS 11313, (S.D.N.Y. June 21, 2002) ("discovery … is not intended to be a fishing expedition . . . [and] requests cannot be based on pure speculation or conjecture."); *Messier v. Southbury Training School,* No. 3:94-CV-1706, 1998 WL 136170, at *6 (D. Conn. Jan. 30, 1998) (discovery "fishing expedition[s]" are "disfavored by courts") (citations omitted); 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2015, at 210 (2d ed. 1994) (courts faced with such requests should "assess the likelihood that the discovery actually will produce admissible evidence; [and] unless there is reasonable basis to predict that it will, discovery may be refused on that ground").

The discovery sought by defendants here does not meet the Rule 26 relevance threshold because it is not relevant to any party's claim or defense. The issues in the present case are (1) whether the Policy was obtained through material misrepresentations on the application for the Policy; and (2) whether the lack of insurable interest rendered the Policy void. Therefore, defendants' request for discovery concerning unrelated policies is nothing more than a fishing expedition. As explained in greater detail below, the discovery would not tend to prove or disprove that American General waived the requirement of insurable interest because: (1) insurable interest is not waivable on the part of the insurer; and (2) assuming *arguendo* that insurable interest is waivable, even if discovery were to reveal that American General waived the requirement of insurable interest in other cases, such waiver would have no bearing *on this case.* Similarly, even if American General waived financial underwriting requirements in connection with the underwriting and issuance of another policy, such waiver has no bearing on *this Policy.* As a result, defendants' discovery request does not meet the relevance threshold of Rule 26.

## 2. *Discovery of Other Policies is Not Relevant Because The Requirement of Insurable Interest is Not Waivable*

Defendants seek documents on policies unrelated to the subject Policy, presumably as part of a misguided attempt to illustrate American General's waiver of the requirement of insurable interest in connection with those policies. However, the documents sought by the

To: Hon. Tonianne J. Bongiovanni, U.S.M.J.
July 5, 2011
Page 5

above referenced requests are irrelevant because the requirement of insurable interest is not
waivable. A policy of insurance that lacks insurable interest is void as a matter of public policy.
This is a general axiom of insurance law. *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787,
798 (6th Cir. 2009). "Otherwise the contract is a mere wager, by which the party taking the
policy is directly interested in the early death of the assured. Such policies have a tendency to
create a desire for the event. They are, therefore, independently of any statute on the subject,
condemned, as being against public policy." *Warnock v. Davis*, 104 U.S. 774, 779 (1881). *See
also, Dunlap v. Great-West Life Assurance Co.*, 1995 U.S. Dist. LEXIS 6490 (D.N.C., March 30,
1995); *Chem v. New York Life Ins. Co.*, 1999 U.S. App. LEXIS 3101 (9th Cir., February 25,
1999); *Lowe v. Rennert*, 869 S.W.2d 199 (Mo. App. 1993); *Wood v. New York Life Ins. Co.*, 255
Ga. 300 (1985); *Beard v. The Amer. Agency Life Ins. Co.*, 314 Md. 235, 550 A.2d 677 (1988);
*Bell v. National Life & Accident Ins. Co.*, 41 Ala. App. 94 (1960); *Geisler v. Mut. Ben. Health &
Acci. Ass'n*, 163 Kan. 518 (1947); *Fowler v. The New York Indem. Co.*, 26 N.Y. 422, 423-424
(1863) (lack of insurable interest renders a policy a mere wager policy and therefore void as a
matter of statute as well as independently of the statute, at common law).

    Accordingly, New Jersey has a statutory requirement for insurable interest which
prohibits any person from procuring or causing to be procured insurance upon the life of another
unless the proceeds are payable to a person having an insurable interest in the insured when the
contract is issued. N.J.S.A. § 17B:24-1.1(b).[3]  Unless the owner of a life insurance policy falls
within the categories of persons enumerated in the statute, insurable interest arises only where
continuance of the insured's life is to the beneficiary's benefit, such as where the insured has an
obligation to provide care and assistance. *Sovereign Camp of Woodman of the World v. Muth*,
109 A. 853 (N.J. Ch. 1920); N.J.S.A. 17B:24-1.1(a)(2) (insurable interest exists where there is
expectation of pecuniary interest based upon continued life of the insured).

    Because a policy that lacks the requirement of insurable interest is void as against public
policy, an insurer cannot render the contract valid by consenting to a waiver of insurable interest.
As one leading insurance treatise has stated:

>           It is usually considered that the requirement of insurable interest is
>           absolute and is not excused by the fact that the claimant may have
>           acted in good faith or that the insurer had full knowledge of all the
>           circumstances.  Several leading courts have gone on record to the
>           effect that the doctrines of waiver and estoppel have no application
>           to such situations and cannot operate to excuse the lack of
>           insurable interest.

---

[3] New Jersey has a particularly strong public policy against insurance fraud.  In 1983, New Jersey's legislature
enacted the Fraud Act "to confront aggressively the problem of insurance fraud" by, among other things, facilitating
its detection and "requiring the restitution of fraudulently obtained insurance benefits" N.J.S.A. 17:33A-2.  The
Supreme Court of New Jersey has recognized that "[i]nsurance fraud is a problem of massive proportions that
currently results in substantial and unnecessary costs to the general public in the form of increased rates.  In fact,
approximately ten to fifteen percent of all insurance claims involve fraud." *Merin v. Maglaki*, 126 N.J. 430, 436
(1992).

*See* 4f-109f *Appleman on Insurance* Section 2122. Indeed, this very basic rule of law has been in effect for over 130 years, thus evidencing the soundness of the position. *See Agricultural Insurance Company of Watertown, New York v. Charles Montague*, 38 Mich. 548, 1878 Mich. Lexis 114 (Sup. Ct. 1878) (holding that the law requires "that a person shall have an insurable interest before he can insure: a policy issued when there is no such interest is void, and it is immaterial that it is taken in good faith and with full knowledge. The policy of the law does not admit of such insurance, however willing the parties may be to enter into it. The doctrine of waiver has obviously nothing to do with such a case").

Insurance trusts are among the categories of persons and entities with insurable interest enumerated in New Jersey's statute regarding insurable interest. Therefore, unless a trust has a pecuniary interest in the continued life of the insured, it has no insurable interest. *Chawla v. Transamerica Occidental Life Ins. Co.*, 2005 U.S. Dist. LEXIS 3473 (E.D. Va. Feb. 3, 2005) (reasoning that insurance trust benefited more from insured's death that his continued life and suffered no pecuniary loss as result of death) *aff'd in part and vacated in part*, 440 F.3d 639 (4th Cir. 2006). Here, the Trust did not have a pecuniary interest in the continued life of the insured; therefore, it lacked an insurable interest. Due to the lack of insurable interest, the subject Policy is void against public policy; and the requirement of insurable interest is not waivable.

### 3. *Discovery of Other Policies is Irrelevant Because Even if Waiver of Insurable Interest Requirement and/or Financial Underwriting Requirements Occurred as to unrelated Policies, Such Waiver would be Irrelevant to This Case*

Even assuming *arguendo* that the requirement can be waived – which it cannot – the documents sought by defendants are nevertheless irrelevant because American General's waiver of the requirement of insurable interest in another case (even if it has occurred, which American General contends it has not) does not preclude American General (by waiver or otherwise) from requiring an insurable interest in *this case*. The circumstances relating to issuance of every application are unique in each case. Thus, as a matter of law, even if American General "waived" the requirement of insurable interest for unrelated policies, that would not equate to a waiver in the case at hand. A party to a contract enjoys the right to waive or otherwise forgo certain rights without a blanket waiver of such rights in all circumstances. *See, e.g., Nat'l Steel Corp. v. NLRB*, 324 F.3d 928 (7th Cir. 2003) ("a party to collective bargaining waives its right to bargain over an issue only by clearly and unmistakably expressing its intent to do so. The failure to demand bargaining in the past, without more, does not amount to waiver if it does not unmistakably show that the union intended to permanently give up its right to bargain in the future"); *In re Parker*, 2004 Bankr. LEXIS 1128 (Bankr. S.D. Ala. Mar. 3, 2004)("a vendor's acceptance of one or more payments subsequent to the time specified in the agreement does not necessarily waive his right to object to the vendee's delinquency as to future payments, or preclude him from insisting on strict performance in the future"). Thus, "waiver" of the requirement of insurable interest in other cases -- even if it were a possibility, which it is not -- would be nevertheless be irrelevant to this case.

To: Hon. Tonianne J. Bongiovanni, U.S.M.J.
July 5, 2011
Page 7

    **4.**    *The Requested Discovery, Even If Relevant, Would Result in a Disproportionate Burden on American General and a Waste of Judicial Resources*

       Even if defendant's requested discovery meets Rule 26's relevance threshold, the requested discovery should still be denied under the provisions of Rule 26 because it would result in a disproportionate burden on American General and a waste of judicial resources.  A court may limit discovery under certain circumstances even if the information sought otherwise meets the Rule 26 relevance threshold. Fed. R. Civ. P. 26(c); *see also Cooper Health Sys. v. Virtua Health, Inc.*, 259 F.R.D. 208 (D.N.J. 2009) ("Fed. R. Civ. P.26(b)(2)(C)(iii) provides that a court, on its own, must limit the frequency or extent of discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit"); *Padilla v. Price Toyota*, 2005 U.S. Dist. LEXIS 25720 (D.N.J. Oct. 28, 2005) ("in determining whether the production of discovery is appropriate under Fed. R. Civ. P. 26 the relevancy of the information must be balanced against the burdensomeness of its production"); *New York v. United States Metals Refining Co.*, 771 F.2d 796, 804 (3d Cir. N.J. 1985)("Rule 26 provides very broad discovery and gives the trial court wide discretion to manage the process"); *Fisher v. Borden, Inc.*, 1994 U.S. Dist. LEXIS 21275 (D.N.J. Oct. 28, 1994) ("the court may limit discovery on its own initiative"); *Gillette Co. v. Philips Oral Healthcare, Inc.*, 2001 U.S. Dist. LEXIS 18624 (S.D.N.Y. 2001) ("the decision whether to limit the open and potentially far-reaching discovery permitted under the Federal Rules of Civil Procedure is left to the discretion of the trial court, in light of the facts and circumstances of a particular case"). Rule 26 specifically permits a court to limit discovery in the interest of justice, "to protect a party or person from annoyance, embarrassment, oppression, or *undue burden or expense.*" *Wong v. Thomas*, 238 F.R.D. 548 (D.N.J. 2007) (emphasis added).

       "[A] trial court has a duty, of special significance in lengthy and complex cases where the possibility of abuse is always present, to supervise and limit discovery to protect parties and witnesses from annoyance and excessive expense." *Dolgow v. Anderson*, 53 F.R.D. 661 (E.D.N.Y. 1971). For instance, in *Federal Ins. Co. v. Southwestern Wire Cloth, Inc.*, 1996 U.S. Dist. LEXIS 22001 (N.D. Okla. Dec. 9, 1996), the court, in reliance on Rule 26, denied defendant's motion to compel discovery relating to the insurer's treatment and/or litigation of claims filed by other insureds. "While the requested information may be relevant, there are so many variables in connection with other policies and other claims that the probative value of the requested discovery is likely to be minimal." *Id.* at *40. Thus, for example, in *Council Tower Ass'n v. Axis Specialty Ins. Co.*, 2009 U.S. Dist. LEXIS 36510 (E.D. Mo. Apr. 30, 2009), the court refused discovery regarding other policies reasoning that "[a] request for all bad faith claims, regardless of their disposition, is nothing more than a fishing expedition. The costs, including the potential extra discovery and satellite litigation that would accompany such an expedition, far outweigh any potential benefits." *Id.* at *2-*3.

       Accordingly, even if the Court finds the discovery requested by defendants to be potentially relevant, the request should still be denied because it will likely result in burden and expense for the parties and the Court that is disproportionate to the potential relevance.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

1214360.1

To: Hon. Tonianne J. Bongiovanni, U.S.M.J.
July 5, 2011
Page 8

Defendants' discovery requests, as drafted, are disproportionately broad. Defendants request the production of policies, procedures, and guidelines on a variety of issues, dating back as far as 2001. Some document requests are not limited by any time period at all. Moreover, to the extent that this Court may find that insurable interest and/or financial information is waivable on the part of the insurer, even if such a production revealed policies where American General appeared to waive such requirements because they were not contained in the application, that does not mean that the information was not otherwise obtained and considered by the underwriter during the pendency of the application. Additionally, defendants would still be required to establish American General's intent to waive in each case, the standard for which is particularly high. *Barker v. Wingo*, 407 U.S. 514 (U.S. 1972) ("waiver is an intentional relinquishment or abandonment of a known right or privilege. Courts should indulge every reasonable presumption against waiver"); *Sharrieff v. Cathel*, 574 F.3d 225 (3d Cir. N.J. 2009) ("to be express, a waiver of exhaustion must be clear, explicit, and unambiguous"). Thus, if American General is required to comply with defendants' request for production, this Court would have to preside over a mini-trial for each applicable application in order to ascertain the circumstances of the application and issuance of the policy in each case, and whether or not American General actually waived the requirement of insurable interest. All this would lead back to the beginning; that is, even if American General is found to have waived the requirement of insurable interest in one or more unrelated cases, that does not mean that American General waived the requirement of insurable interest *in this case*. The time and expense associated with producing and litigating the admissibility of such information therefore far outweighs its potential probative value.

## 5. *American General's AWD History system preserves all material documents related to the Policy at issue*

All documents relating to the subject Policy have been preserved via American General's computer-generated AWD History system, in which documents, e-mail messages and notes are maintained. American General has already produced non-privileged portions of its client file, including the policy file and underwriting file. Therefore, to the extent that defendants request documents relating to American General's communications with reinsurers or other insurers, there is no need for American General to perform a search for additional relevant documents. Irrespective of whether American General, AIG, or some other company/individual played a role in connection with the issuance and/or administration of the Policy, relevant documents have already been preserved. Furthermore, any such communications relating to other policies are irrelevant.

## D.   Audio/Visual Recordings

Finally, as we advised defendants in our response to their deficiency letter of June 7th, American General is in possession of an audio recording of an interview conducted by a Lab One representative with Larry Ellman, or an individual purporting to be Larry Ellman. American General has no obligation to produce this recording until *after* Larry Ellman's deposition. *See Margeson v. Boston & Marine R.R.*, 16 F.R.D. 200 (D. Mass. 1954) (holding that an insurer is

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

1214360.1

To: Hon. Tonianne J. Bongiovanni, U.S.M.J.
July 5, 2011
Page 9

entitled to withhold surveillance materials pending the deposition of the surveilled party); *see also Snead v. American Export-Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 151 (E.D. Pa. 1973) ("before any of these disclosures, however, the defense must be given an opportunity to depose the plaintiff fully....once his testimony is memorialized in deposition, any variation he may make at trial to conform to the surveillance films can be used to impeach his credibility"); *Daniels v. National R.R. Passenger Corp.*, 110 F.R.D. 160 (S.D.N.Y. 1986)(holding that "to protect the value of surveillance films to be used for impeachment of the plaintiff if he exaggerates his disabilities, while still serving the policy of broad discovery, it may be appropriate to require disclosure of such impeachment materials only after the depositions of the plaintiff or other witnesses to be impeached); *Blunt v. Wake Elec. Membership Corp.*, 162 F.R.D. 102 (E.D.N.C. 1993)("in fact, most courts which have explored the discoverability of surveillance films and the like have required disclosure of all such materials well in advance of trial....however, the timing of the disclosure must be such that the impeachment value of the evidence is preserved"); *Boyle v. CSX Transportation, Inc.*, 142 F.R.D. 435 (S.D.W.Va. 1992)("[I]n cases pending in this division in which surveillance material and information are sought in discovery, the surveilling party shall, after the passage of a sufficient time for deposing the surveilled, make available for inspection and copying all films and tapes taken in connection with the surveillance").

Thus, American General respectfully requests that the Court deny defendants' request for leave to file a motion to compel discovery and for sanctions because American General's discovery responses are sufficient. If the Court does find that defendants are entitled to additional discovery, we respectfully request an order requiring defendants to meet and confer. Alternatively, we request a status conference with your Honor to address the disputed discovery issues.

Finally, American General's service of its discovery responses to the Trust's first set of discovery requests on May 31st were not untimely, considering that the pleading phase of this matter wasn't completed until January 24, 2011 (the date of filing of American General's Answer to Defendant's Second Amended Counterclaim). Defendants served a second notice to produce documents on March 3, 2011, which American General responded to on June 17, 2011. Because of trial commitments between January and April, we also sought and secured on several occasions defense counsel's courtesy in extending time to provide responses in several cases, including this one. And we have afforded defense counsel that same courtesy on several occasions due to competing demands on their time. Finally, at no point did defendants formally demand service of discovery responses within a certain time frame.[4]

---

[4] During a telephone conversation in late April, defense counsel inquired as to the status of American General's responses. Counsel for American General indicated that the responses were forthcoming, and that we hoped to serve them within a week or so. On May 11th, defense counsel sent an email inquiring as to the status. American General's responses were served shortly thereafter, on May 31st. American General's responses to the Trust's Second Notice to Produce were served on June 17, 2011.

To: Hon. Tonianne J. Bongiovanni, U.S.M.J.
July 5, 2011
Page 10

We thank the Court for its attention to this matter.

Respectfully,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

_s/Robert P. Lesko_
Robert Lesko

RPL:kdp
cc:     Ira Lipsius, Esq. (via ECF
        David BenHaim, Esq. (via ECF)
        Daniel Grossman, Esq. (via ECF)

# EXHIBIT A

106aameMS.txt

1

106aameMS
1 UNITED STATES DISTRICT COURT
1 SOUTHERN DISTRICT OF NEW YORK
2 ------------------------------x
2
3 AMERICAN GENERAL LIFE INSURANCE
3 COMPANY,
4
4                    Plaintiff,
5
5                v.                      08 Civ. 6843(KMK)(GAY)
6
6 DIANA SPIRA 2005 IRREVOCABLE
7 LIFE INSURANCE TRUST, AARON
7 AZRYLEWITZ, as Trustee, and
8 SIMON SPIRA,
8
9                    Plaintiff.
9
10 ------------------------------x
10
11                                        White Plains, N.Y.
11                                        June 10, 2010
12
12
13 Before:
13
14              THE HONORABLE GEORGE A. YANTHIS,
14
15                                  Magistrate Judge
15
16                            APPEARANCES
16
17 WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
17      Attorneys for Plaintiff
18 ROBERT P. LESKO
18
19 SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH, LLP
19      Attorneys for Defendants
20 IRA S. LIPSIUS
20
21 PROSKAUER ROSE
21      Attorneys for LEOPOLD FREUND and PARKWOOD REALTY, LLC
22 MARK D. HARRIS
22
23
23
24
25 Digital recording.
                 MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027

2

106aameMS
1          THE DEPUTY CLERK:   In the matter of American General
2 against Spira.
3          THE COURT:  Good morning, counsel.
4          ALL COUNSEL:  Good morning, your Honor.
5          THE COURT:  Yes.  Why don't you just give your
6 appearance, who you are, who represent, starting with
7 plaintiff.
8          MR. LESKO:  Your Honor, Robert Lesko, from Wilson,
9 Elser, Moskowitz, Edelman & Dicker, for the plaintiff, American
                              Page 1

106aameMS.txt

```
4    chance to look at.  It may never see the light of day in a
5    trial, but why shouldn't it be provided for discovery?
6             MR. LESKO:  well, because it doesn't really fall
7    within the broad discovery standard.  Because the broad
8    discovery standard, Rule 26, requires that the information be
9    relevant or might otherwise lead to admissible evidence.
10            THE COURT:  Yes.
11            MR. LESKO:  It's not relevant, because all it
12   establishes is that maybe in another case, American General is
13   precluded from relying upon misrepresentation.  It doesn't even
14   establish that the information was immaterial in that case.  It
15   has no bearing upon this case, because in this case, we
16   required it.  It was provided on the application.
17            Beyond that, your Honor, the company also obtained a
18   third-party inspection report which verified the information on
19   the application.  So why do you go through that if it's not
20   relevant?  It's an expense to the company.
21            So what I'm saying is, it's not relevant and it will
22   not lead to the discovery of admissible evidence.  And it's
23   also burdensome, you know, for the reasons I indicated, that
24   you'd have to go through, you know, a diligent search of all
25   the applications and the records.
                      MARY M. STATEN, CSR, RPR, RMR
                            (914) 390-4027
```

51

106aameMS

```
1             Now, not only is it burdensome to the company, your
2    Honor, but it will be burdensome to this Court.  Because let's
3    say the documents were produced and Mr. Lipsius parades around
4    with an application that's blank.  Your Honor or Judge Karas
5    would have to preside over a little mini trial or evidentiary
6    hearing to determine whether or not that policy, for which that
7    application was submitted, was ever issued.  Maybe American
8    General declined it, or maybe American General got the
9    information regarding financial underwriting otherwise.  So
10   there would be all these -- say there's five policies or ten
11   policies like that.
12            THE COURT:  Okay.  Let me see what Mr. Lipsius is
13   going to say about it.
14            MR. LIPSIUS:  Look.  I want to give two events that
15   happened in the last six weeks.
16            On Friday afternoon, I received a check from American
17   General in settlement of a case for $1.7 million as the result
18   of the Court, a district court, ordering them to produce their
19   applications.
20            MR. LESKO:  I object to that.
21            MR. LIPSIUS:  Okay.  I just want to give anecdotal
22   events that took place.
23            And let's talk about what happens here.
24            They raised the issue, and I have gotten it in other
25   cases from American General.  And first of all, as the Court
                      MARY M. STATEN, CSR, RPR, RMR
                            (914) 390-4027
```

52

106aameMS

```
1    knows, they raise the claim of burden.  They haven't shown any
2    burden about number of hours.  And when we've taken hearings on
3    the burden that I've gone through hearings with American
4    General and with U.S. Life, which are both AIG companies --
5             AIG has a life plan.  In certain states, they write
6    under U.S. Life.  In other states, they write under American
7    General.  But their underwriting is all out of the same office
8    in Houston, I believe.  Houston, Missouri and Wisconsin.  But I
```

Page 24

# EXHIBIT B

# SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

ATTORNEYS AT LAW

4 CORNWALL DRIVE

SUITE 101

EAST BRUNSWICK, N.J. 08816

(732) 390-0166

FACSIMILE (732) 432-7706

WEBSITE: www.sfl-legal.com

June 7, 2011

IRA S. LIPSIUS*
JEAN M. GARDNER**
LAURENCE J. RABINOVICH
LORIENTON PALMER*
ANDREW KARONIS

JUDITH A. NORMAN*
PHILIP A. BRAMSON
MARC I. KUNKIN
CHERYL LIPSIUS*
DAVID BENHAIM

* ADMITTED IN NEW YORK ONLY
** MANAGING ATTORNEY

NEW YORK OFFICE

14 PENN PLAZA, SUITE 500
NEW YORK, N.Y. 10122
(212) 563-1710

FACSIMILE (212) 695-6602

OF COUNSEL

EDWARD FARMAN*

Writer's Extension: 253
Email: dbenhaim@sfl-legal.com

**_VIA EMAIL AND US MAIL_**
Karen Peck, Esq.
Wilson Elser Moskowitz Edelman & Dicker
33 Washington Street
Newark, NJ 07102
Email: karen.peck@wilsonelser.com

> **Re:    American General Life Insurance Co. v. Ellman Savings Irrevocable Trust**
> **Docket No. 3:08 CV 05364 (MLC) (TJB)**
> **Our File No. 4206.0002**

Dear Karen:

We are in receipt of your discovery responses dated May 31, 2011 and we note that the responses are wholly insufficient.[1] We respectfully request that your client cure the deficiencies within ten (10) days and advise that continued non-compliance with discovery obligations will result in the appropriate motion to compel and for sanctions without any further attempt to resolve this matter.

First, American General failed to respond to the demands served upon you on March 3, 2011. Please respond to those demands.

Next, the responses to interrogatories were served over a year after they were served and almost four months since the pleadings were formed. Rule 33(b)(4) stipulates that all objections are waived. We therefore request that you respond to all interrogatories without objection.

Also, your responses reference "relevant non-privileged" portions of the claims file and underwriting file. We are unsure if those files were produced as part of the Rule 26(a) production. If these files were already produced, please advise. We note that the claims file and underwriting file are relevant in their entirety.

---

[1] We withdraw demands 41-44.

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

Ms. Karen Peck
June 7, 2011
Page 2

Moreover, we view American General's refusal to produce documents responsive to the Interrogatories and demands 4, 8, 9, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40 and 48 to be bad faith conduct on behalf of American General. These demands are directly relevant to the issues of materiality, fraud and RICO. As you know, our thirteenth affirmative defense and our counter-claim, which American General failed to dismiss, allege that American General ignored its own underwriting guidelines in order to issue this and other similar policies. We are entitled to discovery on these issues. They are also not unduly burdensome as your client made similar production in the past, including, in American General vs. 130 Sussex LLP, 09-cv-5097, where the court sanctioned your clients for raising the same objections it did here.

Finally, we note that your response did not include any audio or videotapes or a single document.  To the extent most documents are not confidential, we respectfully request immediate production. For confidential documents, we request a confidentiality order that we can execute and allow for production.

I look forward to your prompt response.

Very truly yours,

SCHINDEL, FARMAN, LIPSIUS,
GARDNER & RABINOVICH LLP

David BenHaim

DB:tl

# EXHIBIT C

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

200 Campus Drive, Florham Park, New Jersey 07932-0668   Tel: 973.624.0800   Fax: 973.624.0808
One Gateway Center, Suite 2600, Newark, New Jersey 07102

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • West Palm Beach • White Plains
Limited Liability Partnership of NY*

*Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

www.wilsonelser.com

June 17, 2011

## Via Email

David BenHaim, Esq.
Schindel, Farman, Lipsius, Gardner & Rabinovich LLP
14 Penn Plaza, Suite 500
New York, New York 10122

> **Re:** *American General Life Ins. Co. v. Eltman Savings Irrevocable Trust, et al.*
> **Civil Action No. 3:08-cv-05364-MLC-TJB**
> **Our File No.: 07478.00537**

Dear Mr. BenHaim:

We write in response to your letter dated June 7, 2011 regarding American General's responses to the Trust's discovery requests. For the following reasons, American General stands on its previous objections and response to the Trust's discovery requests.

Preliminarily, we note that you have not made a good faith attempt to meet and confer regarding any issues that you may have with respect to American General's responses and objections to defendants' interrogatories and document demands. Aside from providing a serial list of requests and interrogatories (without so much as distinguishing which among the list are interrogatories and which are document requests), you have not presented any reasoning for your position. Please provide a detailed correspondence presenting your position separately with respect to each discovery request at issue. Alternatively, we would be happy to discuss each such request with you by telephone at a mutually acceptable time and date. Meanwhile, American General has no choice but to stand on its previous objections and responses without further consideration. .

You have provided no substantive basis for the relevance of your document requests. Moreover, your reference to *American General Life Ins. Co v. Sussex 130, LLP* is misguided. American General made no "similar production" in the *Sussex* matter. Furthermore, any

1202124.3

To:
June 8, 2011
Page 2

discovery in the *Sussex* matter (or any other matter) was related to the particular facts, claims, and defenses of that matter and certainly does not establish propriety of discovery in the present matter.

Finally, please be advised that American General is in possession of an audio recording of an interview conducted by a Lab One representative with Larry Ellman, or an individual purporting to be Larry Ellman. American General will produce this recording after Larry Ellman's deposition. *See Margeson v. Boston & Marine R.R.*, 16 F.R.D. 200 (D. Mass. 1954) (holding that an insurer is entitled to withhold surveillance materials pending the deposition of the surveilled party); *see also Snead v. American Export-Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 151 (E.D. Pa. 1973) ("before any of these disclosures, however, the defense must be given an opportunity to depose the plaintiff fully....once his testimony is memorialized in deposition, any variation he may make at trial to conform to the surveillance films can be used to impeach his credibility"); *Daniels v. National R.R. Passenger Corp.,* 110 F.R.D. 160 (S.D.N.Y. 1986)(holding that "to protect the value of surveillance films to be used for impeachment of the plaintiff if he exaggerates his disabilities, while still serving the policy of broad discovery, it may be appropriate to require disclosure of such impeachment materials only after the depositions of the plaintiff or other witnesses to be impeached); *Blunt v. Wake Elec. Membership Corp.*, 162 F.R.D. 102 (E.D.N.C. 1993)("in fact, most courts which have explored the discoverability of surveillance films and the like have required disclosure of all such materials well in advance of trial....however, the timing of the disclosure must be such that the impeachment value of the evidence is preserved"); *Boyle v. CSX Transportation, Inc.*, 142 F.R.D. 435 (S.D.W.Va. 1992)("[I]n cases pending in this division in which surveillance material and information are sought in discovery, the surveilling party shall, after the passage of a sufficient time for deposing the surveilled, make available for inspection and copying all films and tapes taken in connection with the surveillance").

If you wish to meet and confer regarding American General's responses to the disputed Document Requests, please provide a separate, *detailed* explanation to address American General's objections to *each* of the disputed document requests or advise when you might be otherwise available to discuss them in detail.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Karen D. Peck

cc:    Ira Lipsius, Esq. (via email)
       Daniel Grossman, Esq. (via email)

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

1202124.3

# EXHIBIT D

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

200 Campus Drive, Florham Park, New Jersey 07932-0668 Tel: 973.624.0800 Fax: 973.624.0808
One Gateway Center, Suite 2600, Newark, New Jersey 07102

*Albany ● Baltimore ● Boston ● Chicago ● Dallas ● Garden City ● Houston ● Las Vegas ● London ● Los Angeles ● Louisville ● McLean*
*Miami ● New Jersey ● New York ● Orlando ● Philadelphia ● San Diego ● San Francisco ● Stamford ● Washington, DC ● West Palm Beach ● White Plains*
*Limited Liability Partnership of NY*
*Affiliates: Berlin ● Cologne ● Frankfurt ● Mexico City ● Munich ● Paris*

JAMES CRAWFORD ORR
WILLIAM J. MINA
THOMAS F. QUINN
BARBARA HARKINSON KELLY
CAROLYNE O'CONNOR
KENNETH M. BROWN
DANIEL F. FLORES
KURT W. KRAUSS
WILLIAM P. KRAUSS
MICHAEL J. HAUGHTIN
AISHA M. GALLO
ROBERT A. BERNS
KELLY A. WATERS
BRIAN J. WHITEMAN
SUSAN KARLOVICH
MATTHEW S. MAHONEY
KEVIN C. DONOVAN

JAMES S. ROHRBERGER
JOSEPH J. HANLON
ROBERT LESKO
RONALD NERDMAN
ROBERT T. GUNNING
GREGG S. KAHN
MAXWELL L. BILLEK
JOANNA TRIERI
———
G. O'CONNEL
MARIAH C. PIFFL, JR.
JOHN P. O'TOOLE
ALPA LIMI
CHRISTOPHER W. MCCLANAHAN
LINDA K. SMITH
TANA JHIGTA
PAUL E. FARAY

KEITH J. VOLGAISN (1952-2007)

www.wilsonelser.com

KEITH IMIGRAY
GINA CALABRIA
JOHN W. WILLIAMS
SHAUN S. MACHARIM
KIM M. O'CONNOR
PETER A. SWIFT
DAVID EVANS
GREGORY T. BOOTH
JULIE VON BEVERN
BRUCE W. MCCOY, JR.
DANIEL R. ZEMSKY
C. TY NGUYEN
JESSICA BRENNAN
KATHERINE POTTER
MELISSA D. LANDAU

KAREN D. PACK
JOHN W. ROENER
STEPHANIE RUFFO
JILLIAN ACKERMANN
LOUIS PERAGGINE
ANDREW F. BAIN
BRENDAN F. MCCARTHY
CHARLES KIEZLOTT
PAUL J. MILLER
ANTHONY RAPA
AMIR SAMOAT
ANTHONY J. DRACCONE
EMILY WEISILITZ
MARLI P. CVBIAC

June 1, 2011

## Via Email and First Class Mail

David BenHaim, Esq.
Schindel, Farman, Lipsius, Gardner & Rabinovich LLP
14 Penn Plaza, Suite 500
New York, New York 10122

> **Re:** *American General Life Ins. Co. v. Ellman Savings Irrevocable Trust, et al.*
> **Civil Action No. 3:08-cv-05364-MLC-TJB**
> **Our File No.: 07478.00537**

Dear Mr. BenHaim:

We write in response to your deposition notices of the following individuals: Sarah Wickes; Liza Glass; Mark Childs; Leo Grace; Bill Wysong; Karen Padruco; Pat Wood; Don Garrow; Jennifer Larson; Paul Kiepert; Sherry Walton; Dru Ruiz; Scott Busalcehi.

As a preliminary matter, your thirteen depositions notices exceed the limit of ten depositions set forth by the Federal Rules of Civil Procedure. *See Fed. R. Civ. P.* 30(a)(2)(A)(i). We further ask that you strongly consider limiting your deposition requests in order to identify only those witnesses whose depositions that truly possess knowledge relevant to the issues presented in this action. Doing so will enable us to more quickly and efficiently arrange for the depositions of appropriate witnesses. Insofar as the witnesses that you have identified do not appear to have played any role in the subject transaction, we must insist that you proffer a basis upon which each person's testimony is relevant to this matter.

Although we are still in the process of gathering information on the requested witnesses from our client, we do not believe that any of the witnesses live or work in New Jersey. We will object to producing any out-of-state witnesses in New Jersey, and any such depositions will take place in the jurisdiction where each witnesses lives and/or works.

1197169.1

To:
May 31, 2011
Page 2

Thank you for your attention to this matter.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

*Karen D. Peck*

Karen D. Peck

KDP:kdp
cc:    Ira Lipsius, Esq. (via email)
       Daniel Grossman, Esq. (via email)

# EXHIBIT E

## Von Bevern, Julie E.

| | |
|---|---|
| **From:** | David BenHaim [dbenhaim@sfl-legal.com] |
| **Sent:** | Tuesday, June 07, 2011 2:40 PM |
| **To:** | Peck, Karen D. |
| **Cc:** | Ira S. Lipsius; Daniel Louis Grossman, Esq.; Lesko, Robert |

**Subject:** RE: Ellman - defendants' deposition notices

Karen:

I write with respect to your client's objections to the notices of deposition. Firstly, are all thirteen employees noticed for deposition still employees of American General? Please identify which ones are still American General employees - and the last known address of any non-employees.

Second, as a general rule, a plaintiff who brings suit in a particular forum may not avoid appearing for examination in that forum. See, e.g., Schindler Elevator Corp. v. Otis Elevator Co. 2007 WL 1771509, 8 (S.D.N.Y.). The depositions were noticed for New Jersey and that is where they will be held. See, generally, Federal Practice and procedure § 2112. While the plaintiff may have vast resources that permit its lawyers to travel for multiple depositions, Defendant Levitan, as an individual party of limited means, does not. He is not required to incur the cost and inconvenience of deposing American outside of New Jersey and there is no authority for American General's objections otherwise.

I look forward to your response.

Regards,
David BenHaim

---

**From:** Peck, Karen D. [mailto:Karen.Peck@wilsonelser.com]
**Sent:** Wednesday, June 01, 2011 9:58 AM
**To:** David BenHaim
**Cc:** Ira S. Lipsius; Daniel Louis Grossman, Esq.; Lesko, Robert
**Subject:** Ellman - defendants' deposition notices

David:  Please see the attached letter in response to defendants' deposition notices.

Thank you,

Karen D. Peck
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
200 Campus Drive
Florham Park, NJ 07932-0668
973-735-6077 (Direct)
973-624-0800 (Main)
973-624-0799 (Fax)
karen.peck@wilsonelser.com

*We've Moved:* **Wilson Elser partners and professionals can now be reached at the following new office location: 200 Campus Drive, Florham Park, New Jersey, 07932-0668. All other contact information remains the same. Please use all current phone numbers, fax numbers and e-mail addresses when communicating with us. We look forward to serving you from our Florham Park location.**

This communication was not intended or written to be used,
and it cannot be used by any taxpayer, for the purpose of
avoiding tax penalties. (The foregoing legend has been

affixed pursuant to U.S. Treasury Regulations governing tax practice.)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTICE: This electronic message is
intended to be viewed only by the individual or entity to
whom it is addressed. It may contain information that is
privileged, confidential and exempt from disclosure under
applicable law. Any dissemination, distribution or
copying of this communication is strictly prohibited
without our prior permission. If the reader of this
message is not the intended recipient, or the employee or
agent responsible for delivering the message to the
intended recipient, or if you have received this
communication in error, please notify us immediately by
return e-mail and delete the original message and any
copies of it from your computer system.

For further information about Wilson, Elser, Moskowitz,
Edelman & Dicker LLP, please see our website at
www.wilsonelser.com or refer to any of our offices. Thank
you.

7/5/2011