# LIPSIUS –BENHAIM
## LAW, LLP

14 Penn Plaza, Suite 500
New York, New York 10122
212.981.8440
Facsimile 212.695.6602
www.lipsiuslaw.com

IRA S. LIPSIUS
Extension 202
Email: ilipsius@lipsiuslaw.com

November 11, 2011

***VIA ECF***

Honorable Tonianne J. Bongiovanni, U.S.M.J.
United States District Court
For the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

Re:   **American General Life Insurance Co. v. Ellman Savings Irrevocable Trust**
      **Docket No. 08 CV 5364 (MLC) (TJB)**
      **Our File No. 4206.0002**

Dear Honorable Judge Bongiovanni:

We represent the defendant Ellman Savings Irr. Trust ("Trust") in the above referenced action. We write in order to bring to this Court's attention the serious and flagrant discovery violations by plaintiff, American General Life Insurance Co. ("AIG"). AIG's purposeful and malicious thwarting of the discovery process is part of a pattern of abuse evident in many other litigations in the federal court system. Apparently, AIG attempts to "run the clock" on discovery, refusing to disclose plainly discoverable material, hiding damaging material and refusing to produce witnesses for deposition. We therefore request a conference for the purpose of seeking sanctions against AIG, including preclusion of evidence and monetary sanctions.

AIG pursuant to Rule 26, made very limited disclosures on February 24, 2010. In May 2010 Trust served upon AIG the First Request for Production of Documents and the First Set of Interrogatories (**Exhibit A**). On March 3, 2011, after AIG interposed its answer to the counterclaim, Trust served a limited Second Request for Production of Documents (**Exhibit B**). AIG did not timely respond to any of the above requests or the interrogatories.

On April 6, 2011 a communication was sent to counsel for AIG requesting a response. (**Exhibit C**). AIG never responded to the April 6, 2011 communication. A telephone conference was held before your Honor on May 31, 2011(ECF Entry dated 5/31/11) where, again, a response was requested. AIG promised that responses were "on their way." AIG responded to the May 7, 2010 requests on May 31, 2011 and to the March 3, 2011 requests on June 16, 2011. AIG did not produce a single document in response and instead peppered its "response" with boilerplate, inapplicable and unsubstantiated objections (**Exhibit D**). After getting repeatedly stonewalled by AIG, on June 24, 2011, a conference was requested by Trust (ECF Entry # 91 - **Exhibit E**).

LIPSIUS-BENHAIM LAW, LLP

Honorable Tonianne J. Bongiovanni, U.S.M.J.
November 11, 2011
Page 2

In response to the June 24, 2011 letter, the Court ordered the parties to meet and confer. The parties met and conferred on July 18, 2011 and again on July 28, 2011. During the conferences, the requests were narrowed, qualified or withdrawn. AIG advised that it will consider the requests or take them under advisement.

On August 17, 2011, AIG advised that it will produce the documents if Trust was prepared to enter into a confidentiality agreement. AIG provided a form for Trust's approval. The very same day Trust executed the agreement. AIG produced 87 pages, falling far short of the myriad of documents and categories of documents that remain outstanding.

On August 18, 2011, we again appeared before your Honor where we advised that AIG had our narrowed requests under advisement.

On September 28, 2011, we wrote to AIG seeking the outstanding discovery outlining a list of 16 categories of documents that remain unanswered and requested that AIG advise us within seven days whether it will voluntarily produce the documents (**Exhibit F**). On September 30, 2011, AIG advised that it will respond by the middle of October (**Exhibit G**). October has come and gone and we are now in mid November with no response from AIG. Facing a December 1, 2011 discovery deadline, on November 1, 2011, I wrote to counsel for AIG.

It has now been a month since my letter to you concerning long outstanding discovery and two weeks after the date we were told to expect a response. I do not want to be accused of hastily running to the Court but am at a loss as to what to do in order to get your client to voluntarily participate in discovery. Kindly advise whether your client intends on producing the documents listed in the letter.

**(Exhibit H)**

On November 3, 2011, AIG responded with *19* pages of documents, none of which even came close to responding to the 16 categories of documents that remain outstanding. Moreover, even though the Ellman deposition was confirmed for September 26, 2011, AIG has refused to produce the Ellman recording.. When Ellman failed to show up for his deposition, AIG moved to compel his deposition.

AIG has refused to cooperate in scheduling the depositions of its witnesses by failing to provide dates for those depositions.

Further, Trust cannot conduct depositions without production of documents by AIG. AIG has failed to produce relevant documents including basic documents such as emails. Trust has identified 16 categories of documents which it requires (**Exhibit F**). As discussed with counsel for AIG in over four hours of meetings, each one of the 16 categories is vital to defendant's ability to defend itself and prosecute its claims. At the most basic are emails. Incredibly, AIG has failed to produce *any* emails. Statistically, "the use of email by professionals has increased 78 percent over the past five years. Nearly 83 percent surveyed use email as a primary

LIPSIUS-BENHAIM LAW, LLP

Honorable Tonianne J. Bongiovanni, U.S.M.J.
November 11, 2011
Page 3

communication tool for business." How We Work: Communication Trends of Business
Professionals (2010) (http://www.accountingweb-cgi.com/whitepapers/How-We-Work.pdf).
Indeed, a litigant that refuses to produce emails is essentially refusing the production of an
overwhelming majority of its communications concerning an issue.

AIG also refused to produce *any* documents relating to the investigation of defendant
Chaim Rubin. That investigation took place shortly after the policy was issued, wherein AIG
determined that the Ellman policy was viable despite AIG belief, at the time, that the application
contained the very misrepresentations it now claims allow it to rescind the policy and refuse to
pay the $10 million death benefit; the very subject of this litigation. It should not go unnoticed
that this investigation was key to defendants' counterclaims.

If this Court would like, we can detail each and every category and why the documents
are vital to defendant's case (and detrimental to plaintiff).

This abuse of the discovery process is part of a pattern of contempt displayed by AIG in
similar litigations. See, *Sussex* (**Exhibit I**), *Spira* (**Exhibit J**), *Grunhut* (**Exhibit K**).

Pursuant to Local Rule 37.1(a)(1) we have conferred with counsel for AIG as set forth
above. We also wrote counsel for AIG requesting a response before filing this letter. No
response was received (**Exhibit L**).

Accordingly, we respectfully seek an order as follows:

Dismissal of the complaint and granting of judgment on the counterclaim.

In the alternative, AIG be precluded from presenting any evidence at trial.

In the alternative:

1.  Extending Trust's discovery period against AIG for 60 days from the date
    AIG fully responds to all discovery issues raised in this letter.

2.  AIG must respond, satisfactorily, within 10 days, to the 16 categories
    identified in the September 28, 2011 letter without objection;

3.  AIG must produce all witnesses noticed for deposition within the District
    of New Jersey within 30 days of satisfactory responses described in the
    preceding paragraph;

4.  At least 14 days prior to the Larry Ellman deposition, AIG must produce
    the recordings it possesses of Larry Ellman and Irving Ellman and all
    documents referring to Larry Ellman. Failure to do so shall be deemed
    waiver of the Larry Ellman deposition and preclude the raising of any
    issue relating to Larry Ellman;

LIPSIUS-BENHAIM LAW, LLP

Honorable Tonianne J. Bongiovanni, U.S.M.J.
November 11, 2011
Page 4

5.    AIG must pay defendant's attorney fees in making this application; and

6.    Failure by AIG to strictly comply with this order shall result in an order precluding AIG from producing any evidence at trial or as part of any substantive motion brought by any party.

We thank the Court for its attention to this matter.

Very truly yours,

LIPSIUS-BENHAIM LAW, LLP

Ira S. Lipsius

ISL:bl
Enclosures

# EXHIBIT A

Ira S. Lipsius (IL 5704)
SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP
14 Penn Plaza, Suite 500
New York, NY 10122
Telephone No.: (212) 563-1710
*Attorneys for Ellman Savings Irrevocable Trust and Jeffrey Levitin, Esq.,*
*As Trustee of the Ellman Savings Irrevocable Trust*

## THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 7:08-cv-10046- SCR |
| vs. | § § | |
| ELLMAN SAVINGS IRREOCABLE TRUST, JEFFREY LEVITIN, ISRAEL KUGIELSKY, CHAIM RUBIN and JOHN DOES 1-10, | § § § § § § | |
| Defendants. | § § § § § § § § § | ELLMAN SAVINGS IRREVOCABLE LIFE INSURANCE TRUST, JEFFREY LEVITIN, AS TRUSTEE, FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO AMERICAN GENERAL LIFE INSURANCE COMPANY |
| JEFFREY LEVITIN, ESQ., as Trustee of the Ellman Savings Irrevocable Trust, | § § § | |
| Plaintiff, | § § § | |
| vs. | § § § | |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | § § § | CIVIL ACTION NO. 3:10-cv-1458 |
| Defendant. | § § | |

TO:   Robert P. Lesko
      Wilson, Elser, Moskowitz, Edelman & Dicker LLP
      33 Washington Street
      Newark, NJ 07102
      973-624-0800
      Attorneys for American General Life Insurance Company

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Jersey, Ellman Savings Irrevocable Life Insurance Trust (the "Trust"), and Jeffrey Levitin, as Trustee (the "Trustee"), by and through their attorneys, hereby request that, American General Life Insurance Company ("AIG"), answer the following produce the documents described below.

## DEFINITIONS

1.  "Applicant" shall mean either of the insured of a life insurance policy or the owner of a life insurance policy.

2.  "Communicated". This term means transmitted orally, electronically or in writing (in the form of facts, ideas, inquiries or otherwise) between any Person as defined below.

3.  "Concerning". This term means relating to, referring to, describing, evidencing or constituting.

4.  "Challenge Policy" or "Challenge Policies" shall mean any of the following High Value Life Insurance policies which AIG identifies, identified, suspects, suspected, alleges, or alleged as: investor-owned life insurance, stranger-owned life insurance, charity-owned life insurance, purchased for the purpose of life settlement, purchased for the purpose of viatical settlement, senior life insurance, based upon non-recourse loans, or lacking insurable interest.

5.  "Other Insurance Misrepresentation" shall mean allegedly false, inaccurate or incomplete responses (as alleged by AIG) to questions Concerning other life insurance existing, in force or

2

pending on the life of the Applicant in applications for life insurance in which the applications are bound into the policy.

6.   "AIG" means American General Life Insurance Company, its parent company, any sister life insurance companies, including, but not limited to, U.S. Life Insurance Company in the City of New York, or any agent or representative acting on their behalf.

7.   "Document".   This term shall have its customary broad meaning and shall include, without limitation, the following items, whether printed, recorded or reproduced by any other mechanical process, or written or produced by hand, whether on microfiche, computer memory, disk or tapes and whether or not claimed to be privileged against discovery on any ground: agreements; communications, including intercompany and intracompany communications; correspondence; letters; telegrams; telexes; memoranda; notebooks; summaries or records of telephone conversations; summaries or record of personal conversations or interviews; diaries; statistical statements; graphs; laboratory and engineering reports and notebooks; manuals; specifications; purchase orders; order acknowledgments; work orders; requests for quotations; quotations; instructions; charts; plans; drawings; minutes or records of meetings; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports or summaries of investigations; opinions or reports of consultants; opinions of counsel; records; reports or summaries of negotiations; photographs; brochures; pamphlets; advertisements; circulars; trade letters; press releases; drafts of any documents; original or preliminary notes; marginal comments appearing on any document; stenographic or steno type notes; any voice recordings whether on tape or a record.

3

8. "High Value Life Insurance" shall mean policies of life insurance issued by AIG in which, at the time of the policy application, the insured was equal to or older than 80 years of age and the face value of the policy was $5 million or more.

9. "Identify" (with respect to persons).  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

10. "Identify" (with respect to documents).  When referring to Documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) in the case of life insurance policies, the policy number, name of insured and year of issuance; and (v) author(s), addressee(s) and recipient(s).

11. "Financial Misrepresentation" shall mean any false, inaccurate or incomplete responses (as alleged by AIG) to financial questions in applications for life insurance in which the applications are bound into the policy.

12. "Parties".  The terms "AIG' and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its .officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

13. "Person".  This term is defined as any natural person or any business, legal or governmental entity or association.

4

14. "Possession or control". This term means in the possession or control of AIG, its officers, agents, attorneys, affiliated or constituent corporate entities or from any other person from whom AIG might obtain the requested information or document.

15. "Ellman Policy". This term shall mean AIG Life Insurance Policy No. UM0030862L issued by AIG on the life of Irving Ellman.

16. The following are rules of construction:

(a)   "All/Each". The term "all" and "each" shall be construed as all and each.

(b)   "And/Or". The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

(c)   Number. The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

1. Each request for production of a document or documents shall be deemed to be a request for the production of the original document or documents, to the extent that they are in or subject to, directly or indirectly, your control. In addition, each request should be considered as including all copies and, to the extent applicable, preliminary drafts of documents which, as to content, differ in any respect from the original or final draft or from each other (*e.g.* by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereto).

2. Each request that seeks information relating in any way to communications to, from, or within a business and/or corporate entity is hereby designated to mean, and should be construed

5

to include, all communications by and between representatives, employees, agents and/or servants of the business and/or corporate entity.

3. Any request propounded in the disjunctive shall also be read as if it is propounded in the conjunctive, and vice versa. Any request propounded in the masculine gender shall also be read as if propounded in the feminine and neuter gender, and vice versa. Any request propounded in the singular shall also be read as if propounded in the plural and vice versa. Any request propounded in the present tense shall also be read as if propounded in the past tense, and vice versa.

4. If a privilege not to answer is claimed, identify each matter as to which the privilege is claimed, the nature of the privilege and the legal and factual basis for each such claim. If such claim of privilege relates to a document, identify the author, addressee, and all recipients of copies of the document, setting forth the date and general subject matter thereof, and state the basis for the claim of privilege. Whenever a claim of privilege is made with respect to any oral communication or statement, identify the participants to the communication and/or the person giving and receiving the statement, and set forth the date and place of the communication or statement and state the general subject matter thereof and state the basis for the claim of privilege.

5. If any document was, but is no longer, in your possession; was, but is no longer, subject to your control, or was, but is no longer, in existence, sate whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others;; or (d) has been otherwise disposed of. In each instance, explain the circumstances surrounding any authorization for such disposition, including the date of such disposition; the person(s) responsible for such disposition; the identity of the person, if any, to whom the document was

6

transferred, and the policy, procedure, role, order, guideline, or other authority by, under or pursuant to which such disposition was made.

6. If a refusal to answer a request is based on the grounds that the interrogatory is overly burdensome, identify the number and nature of documents needed to be searched.

7. If you are unable to produce documents fully responsive to a request, produce to the extent possible and specify the reasons for your inability to provide a complete production.

8. An objection or claim of privilege directed in part of a request does not obviate the requirement to respond to the parts of the request for which no objection or claim of privilege is made.

9. These requests for production are continuing and should you acquire any additional information responsive to these interrogatories, the answers shall be supplemented to provide the additional information in accordance with the applicable Federal Rules of Civil Procedure and Local Court Rules.

## DOCUMENTS REQUESTED

1. All Documents identified in AIG's Rule 26(a)(1)(A) Initial Disclosures, to the extent not already disclosed.

2. All Documents Concerning the Ellman Policy.

3. All Documents used by, relied upon or consulted by AIG in responding to Trusts's First Set of Interrogatories.

4. All Documents identified in AIG's responses to the Trust's First Set of Interrogatories.

5. All Documents Concerning Irving Ellman, including, without limitation to, (i) Documents Concerning or relating to any policy of insurance issued by AIG insuring the life of Irving Ellman; (ii) Documents Communicated between AIG and Irving Ellman; and (iii)

7

Documents Communicated between AIG and Larry Ellman.

6. Copies of any correspondence, or any Documents Communicated, between AIG and any other Person (including, without limitation to, agents, reinsurers, and brokers) Concerning Irving Ellman or the Ellman Policy.

7. All Documents Concerning in any way commissions paid in connection with the Ellman Policy, including, without limitation to, (i) Documents, contracts or agreements with any persons receiving any commission in connection with the Ellman Policy; and (ii) Documents substantiating or evidencing commissions paid to any persons in connection with the Ellman Policy.

8. All pleadings and motions filed in any legal action identified in response to Interrogatory No. 10 of Trust's First Set of Interrogatories.

9. All discovery requests exchanged in any legal action identified in response to Interrogatory No. 10 of Trust's First Set of Interrogatories.

10. All Documents in support of AIG's claim that it has been damaged as a result of fraud allegedly committed by Defendants.

11. All Documents Concerning any investigation taken in connection with the facts and circumstances of this litigation or Concerning any investigation of Irving Ellman, the Ellman Policy or Larry Ellman, including, without limitation to, (i) any and all records, memoranda, notations, statements summaries and other Documents which were obtained from or as a result of interviewing persons having or purporting to have knowledge of the facts and circumstances surrounding this action; (ii) transcripts of all telephone conversations recorded with regard to any investigation conducted Concerning Irving Ellman, Larry Ellman, and the Ellman Policy; and (ii) copies of all investigation reports Concerning the Ellman Policy

12. Any and all films, photographs, video tapes or audio tapes, including transcripts or memoranda thereof, made either before, after or at the time of the policy rescission, Concerning the rescission of the Ellman Policy. This request calls for actual reports from the negatives and includes all films, photographs, video tapes or audio tapes which AIG intends to rely on at the time of trial.

13. Transcripts of all telephone conversations recorded with regard to any application made

8

in connection with the Ellman Policy.

14.  All Documents Communicated with any financier of premiums Concerning insurable interest for the period from 2002 to the present, including, without limitation to, bulletins, memoranda or agent letters issued by AIG since January 1, 2002 Concerning insurable interest.

15.  A copy of any and all underwriting guidelines used by AIG from January 1, 2002 to the present relating to High Value Life Insurance policies.  If an underwriting guideline applies to policies of which High Value Life Insurance polices are a subset of the applicable policies, then such guideline or guidelines are included within this Request.

16.  All Documents used by AIG to determine premiums or pricing for High Value Life Insurance policies.

17.  All internal memoranda, newsletters, bulletins, agent letters or agent memos Concerning High Value Life Insurance policies from January 1, 2002 to the present.

18.  All internal memoranda, newsletters, bulletins, agent letters or agent memos Concerning Challenge Policies from January 1, 2002 to the present.

19.  Copies of any guidelines or Documents that establish ratios or charts that compare total insurance in force and face values permitted for any policies issued by AIG.

20.  Copies of all Documents Communicated between AIG and its agents Concerning High Value Life Insurance policies from January 1, 2002 to the present, including, without limitation to, (i) marketing materials Concerning High Value Life Insurance policies; and (ii) Documents Concerning the sale of High Value Life Insurance policies; and (iii) Documents Concerning the net worth of applicant or insureds of High Value Life Insurance policies.

21.  Copies of all Documents Communicated between AIG and its agents or brokers Concerning the total life insurance in force for individual insureds or potential insureds of High Value Life Insurance policies from January 1, 2002 to the present.

22.  Copies of Documents regarding the rescission of policies or denial of coverage or denial of a claim on the basis of Other Insurance Misrepresentations, financial statements made in the policy application or on the basis of other life insurance available on the life of the insured.

23.  Copies of all applications (appropriately redacted) submitted from January 1, 2002 to the present to AIG seeking life insurance coverage for a person over 75 years old and seeking coverage of $5 million or more.

24. Copies of all Documents discussing or Concerning the impact or materiality of Financial Misrepresentations on the risk or hazard assumed by a life insurer.

25. Copies of all Documents discussing or Concerning the impact or materiality of Other Insurance Misrepresentations on the risk or hazard assumed by a life insurer.

26. Copies of all newsletters, bulletins, agent letters or agent memos regarding insurable interest from January 1, 2002 to the present.

27. Copies of any internal memos Concerning the sale of life insurance policies with face value of $2 Million or more.

28. Any actuarial filings made in connection with the rating of High Value Life Insurance Policies.

29. Any Documents Communicated between AIG and any reinsurer Concerning any High Value Life Insurance policies and/or any Challenge Policies.

30. All applications, agent reports, inspection reports, and policies (appropriately redacted) Concerning each and every policy which AIG has identified as a Challenge Policy, has identified as a suspected Challenge Policy, or which AIG has expressed a belief may be a Challenge Policy.

31. All applications and policies (appropriately redacted) Concerning each and every High Value Life Insurance policy which AIG has conducted any investigation as to insurable interest.

32. Copies of all Documents Communicated to or from AIG Concerning premium financing since January 1, 2002.

33. Copies of all Documents Communicated Concerning insurable interest between AIG and

10

any premium finance company since January 1, 2002.

34. All Documents and communications between AIG and any entity which AIG has identified as being involved in Challenge Policies.

35. All reports, investigation materials, training materials, and pamphlets, in AIG's possession, regarding Challenge Policies.

36. Copies of all newsletters, bulletins, agent letters or agent memos regarding insurable interest from January 1, 2001 to the present.

37. Copies of all Documents that evidence the materiality of financial representations Concerning an insured.

38. All internal memos issued since January 1, 2001 Concerning premium financing, insurable interest, high value life insurance, elderly life insurance, stranger owned life insurance or financial representations made in a policy application.

39. Copies of all newsletters, bulletins, agent letters or agent memos regarding Stranger Owned Life Insurance policies, Charity Owned Life Insurance policies, Investor Owned Life Insurance Policies or viatical settlements since January 1, 2001.

40. Copies of all Documents used to determine premiums or pricing of high value life insurance policies.

41. Copies of any guidelines or Documents that establish ratios or charts that compare net worth and face values for any policies issued by AIG.

42. Copies of all Documents Communicated by or to AIG Concerning the sale of High Value Life Insurance policies from January 1, 2002 to the present.

43. Copies of internal Documents regarding the rescission of policies or denial of coverage or denial of a claim on the basis of financial misrepresentation, financial statements made in the policy application or on the basis of other life insurance available on the life of the insured.

11

44. Copies of all Documents discussing the impact or materiality of financial misrepresentations on the risk or hazard assumed by a life insurer.

45. Copies of any correspondence between AIG and any reinsurer Concerning financial misrepresentations in policy applications.

46. All statements made by any party, or of any agent, employee or representative of a party named herein, whether written, oral, videotaped, audiotaped, and/or by any other recording medium Concerning this action. If oral, set forth the substance of the statement.

47. A true and accurate copy of each photograph, video tape, or other visual recording, associated with this action.

48. All documents Concerning any of the following AIG insureds:

   a.  Lily Buchsbaum
   b.  Sarah Perlstein
   c.  Lena Deblasio
   d.  Judith Liebowitz
   e.  Olga Rozencweig
   f.  Edith Wolpin
   g.  Tsvi Klein
   h.  Risha Goldklang
   i.  Rachelle Kremer
   j.  Judith Rosenthal

Dated:  New York, New York
        May 7, 2010

                     SCHINDEL, FARMAN, LIPSIUS,
                     GARDNER & RABINOVICH LLP
                     Attorneys for Defendant

       By:                          
                     Ira S. Lipsius
                     14 Penn Plaza, Suite 500
                     New York, NY 10122
                     (212) 563-1710

## CERTIFICATE OF SERVICE

Ira S. Lipsius certifies that service of the foregoing **Ellman Irrevocable Trust, and Jeffrey Levitin, as Trustee, First Request for the Production of Documents to AIG American General Life Insurance Co.** has, on this date, been made by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within this State, addressed to the following:

Robert P. Lesko
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
33 Washington Street
Newark, NJ 07102
Attorneys for AIG

I certify that the statements made herein are true and correct to the best of my knowledge and belief. I understand that if any statement made herein is knowingly false, I am subject to punishment.

Dated: May 7, 2010

_____
IRA S. LIPSIUS

13

Ira Lipsius, Esq.
SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP
14 Penn Plaza, Suite 500
New York, NY 10122
Telephone No.: (212) 563-1710
*Attorneys for Ellman Savings Irrevocable Trust and Jeffrey Levitin, Esq.,*
*As Trustee of the Ellman Savings Irrevocable Trust*

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | **CIVIL ACTION NO.** 7:08-cv-10046- SCR |
| vs. | § § | |
| ELLMAN SAVINGS IRREOCABLE TRUST, JEFFREY LEVITIN, ISRAEL KUGIELSKY, CHAIM RUBIN and JOHN DOES 1-10, | § § § § § | |
| Defendants. | § § § § | **ELLMAN SAVINGS IRREVOCABLE TRUST, JEFFREY LEVITIN, AS TRUSTEE, FIRST SET OF INTERROGATORIES TO AMERICAN GENERAL LIFE INSURANCE CO.** |
| ------------------------------------------- | § § § | |
| JEFFREY LEVITIN, ESQ., as Trustee of the Ellman Savings Irrevocable Trust, | § § § | |
| Plaintiff, | § § § | |
| vs. | § § | **CIVIL ACTION NO.** 3:10-cv-1458 |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | § § | |
| Defendant. | § | |

TO:   Robert P. Lesko
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
33 Washington Street
Newark, NJ 07102
973-624-0800
Attorneys for AIG

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Jersey, Ellman Savings Irrevocable Trust (the "Trust"), and Jeffrey Levitin, as Trustee (the "Trustee"), by and through their attorneys, hereby request that, American General Life Insurance Company ("AIG"), answer the following interrogatories in accordance with the Federal Rules of Civil Procedure.

## DEFINITIONS

For the purposes of Defendants' First Set of Interrogatories, the following Definitions shall apply:

1. "Applicant" shall mean either of the insured of a life insurance policy or the owner of a life insurance policy.

2. "Communication". This term means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3. "Concerning". This term means relating to, referring to, describing, evidencing or constituting.

4. "AIG" means AIG, its parent company, any sister life insurance companies or any agent or representative acting on their behalf.

5. "Document". This term shall have its customary broad meaning and shall include, without limitation, the following items, whether printed, recorded or reproduced by any other

2

mechanical process, or written or produced by hand, whether on microfiche, computer memory, disk or tapes and whether or not claimed to be privileged against discovery on any ground: agreements; communications, including intercompany and intracompany communications; correspondence; letters; telegrams; telexes; memoranda; notebooks; summaries or records of telephone conversations; summaries or record of personal conversations or interviews; diaries; statistical statements; graphs; laboratory and engineering reports and notebooks; manuals; specifications; purchase orders; order acknowledgments; work orders; requests for quotations; quotations; instructions; charts; plans; drawings; minutes or records of meetings; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports or summaries of investigations; opinions or reports of consultants; opinions of counsel; records; reports or summaries of negotiations; photographs; brochures; pamphlets; advertisements; circulars; trade letters; press releases; drafts of any documents; original or preliminary notes; marginal comments appearing on any document; stenographic or steno type notes; any voice recordings whether on tape or a record.

6. "High Value Life Insurance" shall mean policies of life insurance issued by AIG in which, at the time of the policy application, the insured was equal to or older than 80 years of age and the face value of the policy was $5 million or more.

7. "Identify" (with respect to persons). When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

3

8. "Identify" (with respect to documents). When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) in the case of life insurance policies, the policy number, name of insured and year of issuance; and (v) author(s), addressee(s) and recipient(s).

9. "Financial Misrepresentation" shall mean any false, inaccurate or incomplete responses (as alleged by AIG) to financial questions in applications for life insurance in which the applications are attached an issued policy of life insurance.

10. "Parties". The terms "Plaintiff" and "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

11. "Person". This term is defined as any natural person or any business, legal or governmental entity or association.

12. "Possession or control". This term means in the possession or control of AIG, its officers, agents, attorneys, affiliated or constituent corporate entities or from any other person from whom AIG might obtain the requested information or document.

13. "Ellman Policy". This term shall mean AIG Life Insurance Policy No. UM0030862L issued by AIG on the life of Irving Ellman.

14. The following are rules of construction:

   (a)    "All/Each". The term "all" and "each" shall be construed as all and each.

   (b)    "And/Or". The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4

(c)     Number. The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

1.      You are required, in responding to these interrogatories, to obtain and furnish all information available to you and any of your representatives, employees, agents, servants or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, servants or attorneys.

2.      Each interrogatory that seeks information relating in any way to communications to, from, or within a business and/or corporate entity is hereby designated to mean, and should be construed to include, all communications by and between representatives, employees, agents and/or servants of the business and/or corporate entity.

3.      Any interrogatory propounded in the disjunctive shall also be read as if it is propounded in the conjunctive, and vice versa.  Any interrogatory propounded in the masculine gender shall also be read as if propounded in the feminine and neuter gender, and vice versa. Any interrogatory propounded in the singular shall also be read as if propounded in the plural and vice versa.  Any interrogatory propounded in the present tense shall also be read as if propounded in the past tense, and vice versa.

4.      If a privilege not to answer is claimed, identify each matter as to which the privilege is claimed, the nature of the privilege and the legal and factual basis for each such claim.  If such claim of privilege relates to a document, identify the author, addressee, and all recipients of copies of the document, setting forth the date and general subject matter thereof, and state the basis for the claim of privilege.  Whenever a claim of privilege is made with respect to any oral

5

communication or statement, identify the participants to the communication and/or the person giving and receiving the statement, and set forth the date and place of the communication or statement and state the general subject matter thereof and state the basis for the claim of privilege.

5.     If any document was, but is no longer, in your possession; was, but is no longer, subject to your control, or was, but is no longer, in existence, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others; or (d) has been otherwise disposed of. In each instance, explain the circumstances surrounding any authorization for such disposition, including the date of such disposition; the person(s) responsible for such disposition; the identity of the person, if any, to whom the document was transferred, and the policy, procedure, role, order, guideline, or other authority by, under or pursuant to which such disposition was made.

6.     If any interrogatory cannot be answered in full, answer to the extent possible and specify the reason for your inability to answer.

7.     If a refusal to answer an interrogatory is based on the grounds that the interrogatory is overly burdensome, identify the number and nature of documents needed to be searched.

8.     An objection or claim of privilege directed in part of a request does not obviate the requirement to respond to the parts of the request for which no objection or claim of privilege is made.

9.     These interrogatories are continuing and should you acquire any additional information responsive to these interrogatories, the answers shall be supplemented to provide the additional information in accordance with the applicable Federal Rules of Civil Procedure and Local Court Rules.

## INTERROGATORIES

1. Identify any person or persons providing information necessary to complete these interrogatories and, as to each person so identified, state the number of the interrogatory or part thereof for which he or she provide information.

2. Identify each and every AIG employee, representative, agent, broker, independent contractor, and examiner (including by way of example, but without limitation to, underwriters, actuaries, investigators, medical examiners) involved with the investigation, pricing, approval, issuance or otherwise having any relation to the Ellman Policy.

3. Identify the date(s):

(i) AIG first believed that the application in connection with the Ellman Policy may contain false information; and

(ii) AIG became aware of any Financial Misrepresentations in the application submitted in connection with the Ellman Policy.

4. Specify in detail the manner in which AIG claims that it was damaged as a result of the alleged fraud complained of in the complaint.

5. How did AIG verify the information contained in any application submitted in connection with the Ellman Policy?  In responding, identify each and every action taken by AIG and identify any natural person taking each such action on behalf of AIG.

6. Identify (including date, payee, amount and any relevant agreement and/or contract) any commissions paid by AIG relating to the Ellman Policy?

7

7. For all commissions identified in response to Interrogatory No. 6, state the efforts made by AIG to collect back or recover such commissions.

8. Identify every High Value Life Insurance policy issued by AIG for the period 2002 to the present where the application (as attached to the policy) did not include any questions concerning income or net worth or, in response to any of the application's question(s) concerning income or net work, (i) did not include a response; (ii) included a response of "none" or "zero" or "n/a" or "not applicable"; or (iii) included a reference to a document other than the policy application.

9. Identify every High Value Life Insurance policy issued by AIG for the period 2002 to the present where the application (as attached to the policy) failed to indicate whether or not the insured had other policies of life insurance in force, including without limitation to, High Value Life Insurance policies where the application did not respond to any question(s) relating to an insured's (i) other insurance, (ii) existing insurance or (iii) pending insurance.

10. Identify (by court, court docket number, caption, and title) every legal action commenced from 2002 to the present in which AIG is a party and which involves the rescission of, or action for declaratory judgment to void for any reason (including, without limitation, lack of insurable interest), a life insurance policy for a person equal to or greater than 75 years old and a face value of $1,000,000 or more.

11. For the years 2002 to 2009, how did AIG verify (i) responses to questions relating to an applicant's other or existing life insurance and (ii) responses to questions about an applicant's financial status (including, without limitation to, responses relating to an applicant's net worth and/or income)? In responding, identify each and every procedure utilized by AIG (including, without limitation to, any written internal policies or procedures) to verify responses to financial questions in a policy application.

12. Identify all High Value Life Insurance policies issued by AIG from 2004 to the present where, prior to the death of the insured, AIG conducted an investigation into responses to

8

financial questions contained in the policy or the application or any other document (e.g., Financial Questionnaire) submitted in connection with the policy.

13. For each year of the period 1995 to the present, state the number of High Value Life Insurance policies issued by AIG and state for each year the total value of such policies issued.

14. State in detail each reason (including, without limitation to, any actuarial justification) that net worth of an insured is material to AIG's decision to issue a policy.

15. State in detail each reason (including, without limitation to, any actuarial justification) that annual income of an insured is material to AIG's decision to issue a policy.

16. Identify any communications made internally at AIG or made between AIG and any agent, broker, premium finance company, or life settlement company since January 1, 2002 concerning insurable interest.

17. State whether any bonuses are paid to any AIG employees based on premiums collected or scheduled to be collected and if so identify the title of employees subject to such bonuses.

9

Dated: New York, New York
     May 7, 2010

SCHINDEL, FARMAN, LIPSIUS,
GARDNER & RABINOVICH LLP

By: _____
    Ira S. Lipsius
    14 Penn Plaza, Suite 500
    New York, NY 10122
    (212) 563-1710

## CERTIFICATE OF SERVICE

Ira S. Lipsius certifies that service of the foregoing **Ellman Irrevocable Trust and Jeffrey Levitin, as Trustee of the Ellman Irrevocable Trust, First Set of Interrogatories to AIG American General Life Insurance Co.** has, on this date, been made by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within this State, addressed to the following:

Robert P. Lesko
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
33 Washington Street
Newark, NJ 07102
Attorneys for AIG

I certify that the statements made herein are true and correct to the best of my knowledge and belief. I understand that if any statement made herein is knowingly false, I am subject to punishment.

Dated: May 7, 2010

_____
IRA S. LIPSIUS

11

# EXHIBIT B

Ira S. Lipsius (IL 5704)
SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP
4 Cornwall Drive, Suite 101
East Brunswick, NJ 08816
Telephone No.: (732) 390-0166
*Attorneys for Ellman Savings Irrevocable Trust and Jeffrey Levitin, Esq.,*
*As Trustee of the Ellman Savings Irrevocable Trust*

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | **CIVIL ACTION NO.** |
| | § | **7:08-cv-10046- SCR** |
| vs. | § § | |
| ELLMAN SAVINGS IRREOCABLE TRUST, JEFFREY LEVITIN, ISRAEL KUGIELSKY, CHAIM RUBIN and JOHN DOES 1-10, | § § § § § | |
| Defendants. | § § § | **ELLMAN SAVINGS IRREVOCABLE LIFE INSURANCE TRUST, JEFFREY LEVITIN, AS TRUSTEE, SECOND REQUEST** |
| ------------------------------------------------- | § § § | **FOR THE PRODUCTION OF DOCUMENTS TO AMERICAN** |
| | § § | **GENERAL LIFE INSURANCE** |
| JEFFREY LEVITIN, ESQ., as Trustee of the Ellman Savings Irrevocable Trust, | § § § | **COMPANY** |
| Plaintiff, | § § § | |
| vs. | § § | |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | § § § | **CIVIL ACTION NO.** **3:10-cv-1458** |
| Defendant. | § § | |

TO:    Robert P. Lesko
       Karen Peck
       Wilson, Elser, Moskowitz, Edelman & Dicker LLP
       33 Washington Street
       Newark, NJ 07102
       973-624-0800
       Attorneys for American General Life Insurance Company

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Jersey, Ellman Savings Irrevocable Life Insurance Trust (the "Trust"), and Jeffrey Levitin, as Trustee (the "Trustee"), by and through their attorneys, hereby request that, American General Life Insurance Company ("AIG"), answer the following produce the documents described below.

## DEFINITIONS

1. "Applicant" shall mean either of the insured of a life insurance policy or the owner of a life insurance policy.

2. "Communicated". This term means transmitted orally, electronically or in writing (in the form of facts, ideas, inquiries or otherwise) between any Person as defined below.

3. "Concerning". This term means relating to, referring to, describing, evidencing or constituting.

4. "Challenge Policy" or "Challenge Policies" shall mean any of the following High Value Life Insurance policies which AIG identifies, identified, suspects, suspected, alleges, or alleged as: investor-owned life insurance, stranger-owned life insurance, charity-owned life insurance, purchased for the purpose of life settlement, purchased for the purpose of viatical settlement, senior life insurance, based upon non-recourse loans, or lacking insurable interest.

2

5.  "Other Insurance Misrepresentation" shall mean allegedly false, inaccurate or incomplete responses (as alleged by AIG) to questions Concerning other life insurance existing, in force or pending on the life of the Applicant in applications for life insurance in which the applications are bound into the policy.

6.  "AIG" means American General Life Insurance Company, its parent company, any sister life insurance companies, including, but not limited to, U.S. Life Insurance Company in the City of New York, or any agent or representative acting on their behalf.

7.  "Document".  This term shall have its customary broad meaning and shall include, without limitation, the following items, whether printed, recorded or reproduced by any other mechanical process, or written or produced by hand, whether on microfiche, computer memory, disk or tapes and whether or not claimed to be privileged against discovery on any ground: agreements; communications, including intercompany and intracompany communications; correspondence; letters; telegrams; telexes; memoranda; notebooks; summaries or records of telephone conversations; summaries or record of personal conversations or interviews; diaries; statistical statements; graphs; laboratory and engineering reports and notebooks; manuals; specifications; purchase orders; order acknowledgments; work orders; requests for quotations; quotations; instructions; charts; plans; drawings; minutes or records of meetings; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports or summaries of investigations; opinions or reports of consultants; opinions of counsel; records; reports or summaries of negotiations; photographs; brochures; pamphlets; advertisements; circulars; trade letters; press releases; drafts of any documents; original or preliminary notes; marginal comments appearing on any document; stenographic or steno type notes; any voice recordings whether on tape or a record.

3

8. "High Value Life Insurance" shall mean policies of life insurance issued by AIG in which, at the time of the policy application, the insured was equal to or older than 80 years of age and the face value of the policy was $5 million or more.

9. "Identify" (with respect to persons).  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

10. "Identify" (with respect to documents).  When referring to Documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) in the case of life insurance policies, the policy number, name of insured and year of issuance; and (v) author(s), addressee(s) and recipient(s).

11. "Financial Misrepresentation" shall mean any false, inaccurate or incomplete responses (as alleged by AIG) to financial questions in applications for life insurance in which the applications are bound into the policy.

12. "Parties".  The terms "AIG' and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party means the party and, where applicable, its .officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

13. "Person".   This term is defined as any natural person or any business, legal or governmental entity or association.

4

14. "Possession or control". This term means in the possession or control of AIG, its officers, agents, attorneys, affiliated or constituent corporate entities or from any other person from whom AIG might obtain the requested information or document.

15. "Ellman Policy". This term shall mean AIG Life Insurance Policy No. UM0030862L issued by AIG on the life of Irving Ellman.

16. The following are rules of construction:

(a)     "All/Each". The term "all" and "each" shall be construed as all and each.

(b)     "And/Or". The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

(c)     Number. The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

1.   Each request for production of a document or documents shall be deemed to be a request for the production of the original document or documents, to the extent that they are in or subject to, directly or indirectly, your control.   In addition, each request should be considered as including all copies and, to the extent applicable, preliminary drafts of documents which, as to content, differ in any respect from the original or final draft or from each other (*e.g.* by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereto).

2.   Each request that seeks information relating in any way to communications to, from, or within a business and/or corporate entity is hereby designated to mean, and should be construed

to include, all communications by and between representatives, employees, agents and/or servants of the business and/or corporate entity.

3.   Any request propounded in the disjunctive shall also be read as if it is propounded in the conjunctive, and vice versa.  Any request propounded in the masculine gender shall also be read as if propounded in the feminine and neuter gender, and vice versa.  Any request propounded in the singular shall also be read as if propounded in the plural and vice versa.  Any request propounded in the present tense shall also be read as if propounded in the past tense, and vice versa.

4.   If a privilege not to answer is claimed, identify each matter as to which the privilege is claimed, the nature of the privilege and the legal and factual basis for each such claim.  If such claim of privilege relates to a document, identify the author, addressee, and all recipients of copies of the document, setting forth the date and general subject matter thereof, and state the basis for the claim of privilege.  Whenever a claim of privilege is made with respect to any oral communication or statement, identify the participants to the communication and/or the person giving and receiving the statement, and set forth the date and place of the communication or statement and state the general subject matter thereof and state the basis for the claim of privilege.

5.   If any document was, but is no longer, in your possession; was, but is no longer, subject to your control, or was, but is no longer, in existence, sate whether it: (a) is missing or lost; (b has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others;; or (d) has been otherwise disposed of.  In each instance, explain the circumstances surrounding any authorization for such disposition, including the date of such disposition; the person(s) responsible for such disposition; the identity of the person, if any, to whom the document was

6

transferred, and the policy, procedure, role, order, guideline, or other authority by, under or pursuant to which such disposition was made.

6.  If a refusal to answer a request is based on the grounds that the interrogatory is overly burdensome, identify the number and nature of documents needed to be searched.

7.  If you are unable to produce documents fully responsive to a request, produce to the extent possible and specify the reasons for your inability to provide a complete production.

8.  An objection or claim of privilege directed in part of a request does not obviate the requirement to respond to the parts of the request for which no objection or claim of privilege is made.

9.  These requests for production are continuing and should you acquire any additional information responsive to these interrogatories, the answers shall be supplemented to provide the additional information in accordance with the applicable Federal Rules of Civil Procedure and Local Court Rules.

## DOCUMENTS REQUESTED

1.  Any emails, letters, or other written communications by or to the following individuals concerning either Chaim Rubin or the Ellman policy:
    a.  Sarah Wickes
    b.  Lisa Glass
    c.  Mark Childs
    d.  Leo Grace
    e.  Bill Wyong
    f.  Karen Padrucco
    g.  Pat Wood
    h.  Don Garrow
    i.  Jennifer Larson
    j.  Paul Kiepert
    k.  Sherry Walton
    l.  Dru Ruiz
    m.  Scott Busalacchi.

2.  All Documents and Communications concerning the investigation of the Chaim Rubin policies as discussed in the email exchange between Scott Busalacchi and Denise Bell identified in the second amended complaint.


3.  All documents or communications concerning, discussing or resulting from the 2006 or 2007 decision by AIG to require tax returns during application and the decision rescinding the requirement, including, but not limited to all records and emails maintained, sent or received by Kent Major, Marketing and Distribution, Brad Gabel, Royce Imhoff, Dennis Roberts, Mr. Cicchi and the Legal Department..


4.  A copy of any MIB reports obtained by AIG during the underwriting of the Ellman policy.

Dated:  March 3, 2011

SCHINDEL, FARMAN, LIPSIUS,
GARDNER & RABINOVICH LLP
Attorneys for Defendant


By:  _____

Ira S. Lipsius
4 Cornwall Drive, Suite 101
East Brunswick, NJ  08816
(732) 390-0166

## CERTIFICATE OF SERVICE

Ira S. Lipsius certifies that service of the foregoing **Ellman Irrevocable Trust, and Jeffrey Levitin, as Trustee, Second Request for the Production of Documents to AIG American General Life Insurance Co.** has, on this date, been made by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within this State, addressed to the following:

> Robert P. Lesko
> Karen Peck
> Wilson, Elser, Moskowitz, Edelman & Dicker LLP
> 33 Washington Street
> Newark, NJ 07102
> Attorneys for AIG

I certify that the statements made herein are true and correct to the best of my knowledge and belief. I understand that if any statement made herein is knowingly false, I am subject to punishment.

Dated: March 3, 2011

_____
IRA S. LIPSIUS

9

# EXHIBIT C

**David BenHaim**

| | |
|---|---|
| **From:** | David BenHaim |
| **Sent:** | Wednesday, April 06, 2011 2:32 PM |
| **To:** | Peck, Karen D.; Lesko, Robert |
| **Cc:** | Ira S. Lipsius |
| **Subject:** | Ellman; 4206.0002 |
| **Attachments:** | 3321_001.pdf |

Counselors:

I refer you to my letter of March 3, 2011, which is attached. Please advise, by the end, of this week when we can expect to receive your long overdue discovery responses. If I do not hear back I will have no option but to turn to the court for judicial intervention without further notice.

David

# EXHIBIT D

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

200 Campus Drive, Florham Park, New Jersey 07932-0668   Tel: 973.624.0800   Fax: 973.624.0808

One Gateway Center, Suite 2600, Newark, New Jersey 07102

Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean
Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains
Limited Liability Partnership of NY
Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris

| | | | |
|---|---|---|---|
| JAMES CRAWFORD ORR | MATTHEW S. MAHONEY | | MATTHEW BRODERICK |
| WILLIAM J. RENA | KEVIN C. DONOVAN | www.wilsonelser.com | JOANNA FIOREK | BRUCE W. MOODY, JR. |
| THOMAS F. QUINN | JAMES S. REHBERGER | | KURT H. DZUGAY | MICHAEL L. SOLOMON |
| BARBARA HOPKINSON KELLY | JOSEPH T. HANLON | | GINA CALABRIA | RENEE D. PACCIONE |
| CAROLYN F. O'CONNOR | ROBERT LESKO | | JOHN W. WILLIAMS | DANIEL E. ZEMSKY |
| KENNETH M. BROWN | RENEE J. SHERMAN | | SHAUN R. McGREGOR | C. TY NGUYEN |
| DANIEL F. FLORES | ROBERT T. GUNNING | | KIM M. CONNOR | JESSICA BRENNAN |
| WILLIAM P. KRAUSS | GREGG S. KAHN | | ADAM S. PICINICH | KATHERINE POTTER |
| MICHAEL J. NAUGHTON | ADAM J. KIPNIS | | JOHN J. SHOTTER | MELISSA D. LANDAU |
| MARTIN J. SULLIVAN | MAXWELL L. BILLEK | | PETER A. SWIFT | KAREN D. PECK |
| JOSEPH A. GALLO | | | ERIC T. EVANS | JOHN W. ROESER |
| ROBERT A. BERNS | OF COUNSEL | | GREGORY T. FOOTE | ROBERT GITELMAN |
| KURT W. KRAUSS | ROBERT C. NEFF, JR. | | JULIE VON BEVERN | STEPHANIE RUFFO |
| KELLY A. WATERS | JOHN P. O'TOOLE | | MICHAEL L. TRUCILLO | |
| COLIN P. HACKETT | SUNA LEE | | | |
| BRIAN J. WHITEMAN | CHRISTOPHER W. McCLANAHAN | | | |
| SUSAN KARLOVICH | LINDA K. SMITH | | | |

KEITH G. VON GLAHN (1952-2007)

May 31, 2011

**Via E-Mail and First Class Mail**

Ira S. Lipsius
Schindel, Farman, Lipsius, Gardner & Rabinovich LLP
14 Penn Plaza, Suite 500
New York, New York 10122

      **Re:**   *American General Life Ins. Co. v. Ellman Savings Irrevocable Trust, et al.*
            **Civil Action No. 3:08-cv-05364-MLC-TJB**
            **Our File No.: 07478.00537**

Dear Mr. Lipsius:

      Enclosed please American General's Answers to the Trust's First Set of Interrogatories and Response to the First Request for the Production of Documents in connection with the above-referenced matter. Our client's certification to the Interrogatories will follow shortly under separate cover.

      Very truly yours,

      WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

      Karen D. Peck

KDP/mgs
Enclosures

cc:    Daniel Grossman, Esq. (w/encs.)

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Robert P. Lesko
Karen D. Peck
200 Campus Drive
Florham Park, NJ 07932-0668
 (973) 624-0800 ph.
(973) 624-0799 fx.
Attorneys for plaintiff, American General
Life Insurance Company

|  |  |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY |
| Plaintiff, | Civil Action No: 3:08-cv-05364-MLC-TJB |
| vs. | **AMERICAN GENERAL LIFE INSURANCE COMPANY'S ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES** |
| ELLMAN SAVINGS IRREVOCABLE TRUST, JEFFREY LEVITIN, ISRAEL KUGIELSKY, CHAIM RUBIN, and JOHN DOES 1-10, | |
| Defendants. | |

TO:    Ira Lipsius, Esq.
       Schindel, Farman, Lipsius, Gardner & Rabinovich LLP
       14 Penn Plaza, Suite 500
       New York, New York 10122
       Attorneys for Defendants Ellman Savings Irrevocable Trust and Jeffrey Levitin

       PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil

Procedure and the Local Rules of Civil Procedure,  Plaintiff American General Life

Insurance Company ( "Plaintiff" and/or "American General"), responds to Defendants'

First Set of Interrogatories to Plaintiff as follows:

998258.1

## GENERAL OBJECTIONS

1.      Plaintiff objects to these Interrogatories in their entirety as overly broad, unduly burdensome, vague, vexatious, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence.

2.      Plaintiff objects to each Interrogatory calling for an answer requiring "each", "every", "all", "any", or "each and every" persons, entities, documents, statements, facts or circumstances on the grounds that such Interrogatories are vague and ambiguous, overly broad, unduly burdensome, oppressive and vexatious, and that they seek information neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection, Plaintiff will construe these terms and phrases to request that Plaintiff use reasonable diligence to locate relevant information or documents, based on an examination of those files that reasonably may be expected to yield relevant information or documents, and inquire of those who may reasonably be expected to possess responsive information or documents.

3.      Plaintiff objects to all Interrogatories and requests for information regarding "each", "every", "all", "any", or "each and every" person(s), entity(ies), fact(s), circumstance(s), document(s), or statement(s) on the grounds that Plaintiff has not completed its investigation of facts relating to this action. Discovery and Plaintiff's search for documents and related materials is ongoing. Accordingly, Plaintiff reserves the right to rely on any facts, documents or other evidence that may develop or come to

998258.1

Plaintiff's attention, subsequent thereto. Plaintiff's responses are set forth herein without prejudice to its right to assert additional objections or supplemental responses should Plaintiff discover additional information or grounds for objections. Additionally, Plaintiff reserves the right to supplement or amend these responses at any time prior to trial of this action.

4.      Plaintiff objects to each Interrogatory that seeks information with respect to documents or oral communications "relating to", "reflecting", "pertaining to", "concerning", "discussing", "referencing", or "referring to" certain facts or contentions on the grounds that these terms are vague and ambiguous, and do not describe the material sought with sufficient particularity. Plaintiff further objects that requests using these terms are overly broad, unduly burdensome, oppressive and vexatious and that they seek information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

5.      Plaintiff objects to the Interrogatories to the extent they impose any duty or obligation upon Plaintiff in excess of those duties and obligations imposed by the applicable Rules of Court.

6.      Plaintiff objects to all Interrogatories to the extent they seek information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the self-examination or self-critical analysis privilege, or any other legal privilege or immunity.

7.      Plaintiff objects to all Interrogatories that seek information in the possession or control of other parties to this action.

998258.1

8.    Plaintiff objects to these Interrogatories to the extent that they require the understanding of legal concepts, statutory construction and/or court roles, thus improperly seek a legal conclusion and/or legal reasoning which is not the appropriate subject matter of Interrogatories.

9.    Plaintiff objects to all Interrogatories to the extent that they require Plaintiff to detail its legal contentions and supporting facts on the ground that such request are premature at this stage of discovery.

10.    To the extent Plaintiff answers these Interrogatories; Plaintiff does not concede that the information requested is relevant to this action. Plaintiff expressly reserves the right to object to further discover of the subject matter of any of these Interrogatories and the introduction into evidence of any answer or portion thereof, or of any document produced in response to these Interrogatories.

11.    Plaintiff reserves the right to challenge the competency, relevance, materiality and admissibility of information set forth herein in any subsequent proceeding or the trial of this or any other action and to object on those grounds to the use of these answers in any subsequent proceeding or the trial of this or any other action.

12.    Plaintiff objects to all Interrogatories to the extent they seek disclosure of confidential, commercial or business information.

13.    Plaintiff objects to defendants' improper reference to "AIG" insofar as there is no entity referred to as "AIG" that is a party or otherwise relevant to this action or any of the claims or defenses asserted herein. Insofar as practical, American General has

assumed that all of defendants' references to "AIG" were inserted in error, and were actually intended to read "American General Life Insurance Company," and American General has responded to the requests on that basis.

The foregoing General Objections are hereby expressly incorporated in each of the following answers to Interrogatories, to the extent applicable, and are in addition to any specific objections made in any of the following answers.

998258.1

## SPECIFIC OBJECTIONS AND ANSWERS TO INTERROGATORIES

1.      Identify any person or persons providing information necessary to complete these interrogatories and, as to each person so identified, state the number of the interrogatory or part thereof for which he or she provide (sic) information.

**Response:**

American General objects to this interrogatory on the grounds that it is overly broad and burdensome and seeks to impose discovery obligations upon American General beyond those provided in the Federal Rules of Civil Procedure. American General further objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this interrogatory on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving any objections, Sarah Locket Wickes, with the aid and assistance of counsel, helped to gather and provide information necessary to respond to these interrogatories.

2.      Identify each and every AIG employee, representative, agent, broker, independent contractor, and examiner (including by way of example, but without limitation to, underwriters, actuaries, investigators, medical examiners) involved with the investigation, pricing, approval, issuance or otherwise having any relation to the Ellman Policy.

**Response:**

American General objects to this interrogatory on the grounds and to the extent that it is vague and ambiguous because the term/phrase "involved with…or otherwise having any relation to the Ellman Policy," is subject to alternate and potentially conflicting interpretations, and is also, therefore, overly broad and unduly burdensome. American General further objects to this interrogatory on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege. American General objects to this interrogatory on the grounds that it seeks to impose upon American General the costs and other burden associated with distilling specific information from documents or other sources that are available to defendants at the same or lesser cost.

998258.1

Subject to and without waiving any objections, American General refers defendants to the relevant, non-privileged portions of the Underwriting and Claims Files maintained by or on behalf of American General relevant to the Policy at issue, which may contain information responsive to this request.   American General also refers defendants to American General's initial disclosures previously produced herein. American General reserves the right to amend its response to this interrogatory in accordance with the Federal Rules of Civil Procedure and orders of the Court as additional information is discovered through the course of continuing discovery.

      3.      Identify the date(s):

            (i) AIG first believed that the application in connection with the Ellman Policy may contain false information; and

            (ii) AIG became aware of any Financial Misrepresentations in the application submitted in connection with the Ellman Policy.

**Response:**

American General objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine.  American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.

Subject to and without waiving any objections, American General responds that it first became aware of defendants' fraudulent misrepresentation in connection with the Ellman Policy during the investigation commenced following the receipt of the Trust's Proof of Death Claimant's Statement in May 2008.

      4.      Specify in detail the manner in which AIG claims that it was damaged as a result of the alleged fraud complained of in the complaint.

**Response:**

American General objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine.  American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.  American General further objects to this interrogatory on the grounds that it is premature insofar as it calls for the full and complete disclosure of all of American General's contentions relating to damages prior to the close of discovery.

Subject to and without waiving any objections, American General responds that it incurred damages in connection with the issuance and administration of the Ellman Policy, including, but not limited to, attorneys' fees, fees incurred pursuant to the

998258.1

investigation, and commissions paid in connection with the Ellman Policy. American General was also defrauded into accepting a risk that it would not have accepted if the true facts had been disclosed to it. American General's additional damages will be detailed and quantified by experts. As a result of the damages incurred, American General is entitled to, among other things:

a.   A declaration pursuant to 28 U.S.C. § 2201 that American General is entitled to keep all premiums paid under the Ellman Policy as offset against damages, costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Ellman Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Ellman Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Ellman Policy in their possession, custody and control for cancellation;

b.   A declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Ellman Policy, the Ellman Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Ellman Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Ellman Policy in their possession, custody and control for cancellation;

c.   An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Ellman Policy together with its cost of investigation, costs of suit and attorneys fees;

d.   Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit, and attorneys fees;

e.   Such other and further relief as may be available to American General which the Court deems to be equitable and just.

5.   How did AIG verify the information contained in any application submitted in connection with the Ellman Policy? In responding, identify each and every action taken by AIG and identify any natural person taking each such action on behalf of AIG.

**Response:**

998258.1

American General objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome given its use of the term "verify" and because it does not specify the "information contained in any application" to which it is directed. American General further objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.

Subject to and without waiver of any objections, American General refers defendant to the underwriting and policy files pertaining to the subject policy that have already been produced by American General, which may contain information responsive to this request. American General further responds with the following information, which may be responsive to this request:

On or before November 9, 2005, when United States Central Agency Services Corporation ("USCAS") sent to American General a life insurance application purportedly executed by Irving Ellman and Rubin. The November 9 Application stated the reason for the proposed policy as "estate planning," meaning preservation of a purportedly sizeable estate from estate taxes. It also misrepresented Ellman's personal net worth as $15 million.

In the course of underwriting, American General received a Comprehensive Inspection Report including a telephone interview completed by Lab One, in which an individual claiming to be Ellman represented that he was retired from the real estate business. He represented his current unearned income as $643,000, and total net worth as $5,135,000.00. On November 29, 2005, Rubin forwarded a letter purportedly from Ellman to Rubin setting forth Ellman's balance sheet indicating net worth of $11,312,000.00.

American General requested confirmation of net worth from Ellman's accountant. On March 13, 2006, an individual claiming to be Larry Ellman called Lab One, and represented that he had been providing personal accounting services to Ellman for twenty years. The caller represented that Ellman had yearly gross income of $1,500,000.00 and net worth of $11,312,000.00.

On March 13, 2006, Ellman, Rubin, and Israel Kugielsky, as Trustee, executed a new insurance application identifying the Ellman Trust as the owner and sole beneficiary of the Ellman Policy. This application was purportedly executed in Lakewood, New Jersey.

In the March 13 application, Ellman, Kugielsky, Rubin, and the Trust specifically requested issuance of a policy with Base Coverage of $10,000,000.00. Each again represented that the policy was intended for "estate planning." In response to questions regarding Ellman's personal income and net worth, the March 13 application incorporates the values provided in the inspection report, namely $1,500,000 and $11,312,000, respectively. The March 13 application also stated that there was then no other pending or in force life insurance or annuity on the Ellman's life.

998258.1

In reliance upon the information provided to American General throughout the course of the underwriting process, American General issued the Policy and caused it to be delivered with an Issue Date of March 14, 2006. The Policy was issued using policy form number 04337, which was created and intended for use in the State of New Jersey. The Policy Schedule page indicates in all capital letters "THIS IS A NEW JERSEY POLICY." American General delivered the Ellman Policy to Rubin in New Jersey on or about March 16, 2006 for delivery to the Trust. Rubin delivered it to Kugielsky in New Jersey on March 22, 2006.

On January 16, 2007, Kugielsky renounced his appointment as Trustee and advised that Levitin would be his successor. Levitin accepted the assignment on January 23, 2007. Ellman died on May 21, 2008. Thereafter, Levitin executed a Proof of Death of Claimant's Statement on behalf of the Trust.

In a subsequent interview, Larry informed an investigator that Ellman was last employed from 1978 to 1994 by the New York State Department of Insurance, Liquidation Bureau, and was not in the real estate business as represented in the application. He estimated Ellman's personal income at $2,000.00 per month in state pension and social security benefits, with no stock, bonds, equity, or real estate at all. Ellman's total net worth is estimated at less than $25,000.00. Larry also admitted he is not an accountant and had never served as such for Ellman. Larry had no knowledge of any life insurance or trust until after Ellman's death. Thus, Larry could not have been the person who spoke with Lab One on the telephone and verified Ellman's income and net worth.

6.    Identify (including date, payee, amount and any relevant agreement and/or contract) any commissions paid by AIG relating to the Ellman Policy?

**Response:**

American General objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.

Subject to and without waiver of any objections, insurance producer Chaim Rubin received commissions as a result of the solicitation and procurement of the Ellman Policy. Further responding, American General refers defendant to the relevant non-privileged portions of the underwriting and claim files previously produced, as well as American General's initial disclosures, which documents contain additional information responsive to this interrogatory.

7.    For all commission identified in response to Interrogatory No. 6, state the efforts made by AIG to collect back or recover such commissions.

**Response:**

998258.1

American General object to this interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses asserted in this matter nor reasonably calculated to lead to the discovery of admissible evidence. .

Subject to and without waiving any objections, American General responds that, in the present action, it demands, among other things, the return of commissions and other compensation that Chaim Rubin received in connection with the Ellman Policy.

8.    Identify every High Value Life Insurance Policy issued by AIG for the period 2002 to the present where the application (as attached to the policy) did not include any questions concerning income or net worth or, in response to any of the application's question(s) concerning income or net worth, (i) did not include a response; (ii) include a response of "none" or "zero" or "n/a" or "not applicable"; or (iii) included a reference to a document other than the policy application.

**Response:**

American General objects to this interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses asserted in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information, and would also lead to unnecessary and disproportionate expenditure of judicial resources.

9.    Identify every High Value Life Insurance policy issued by AIG for the period 2002 to the present where the application (as attached to the policy) failed to indicate whether or not the insured had other policies of life insurance in force, including without limitation to, High Value Life Insurance policies where the application did not respond to any question(s) relating to an insured's (i) other insurance, (ii) existing insurance or (iii) pending insurance.

**Response:**

American General objects to this interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses asserted connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require disproportionately time-consuming and expensive search

998258.1

of American General's records in order to ascertain whether American General is in possession of any responsive information, and would also lead to unnecessary and disproportionate expenditure of judicial resources.

10.     Identify (by court, court docket number, caption, and title) every legal action commenced from 2002 to the present in which AIG is a party and which involves the rescission of, or action for declaratory judgment to void for any reason (including, without limitation, lack of insurance interest), a life insurance policy for a person equal to or greater than 75 years old and a face value of $1,000,000 or more.

**Response:**

American General objects to this interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses asserted in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information, and would also lead to unnecessary and disproportionate expenditure of judicial resources. American General further objects to this interrogatory on the grounds that it seeks to impose upon American General the costs and other burden associated with distilling specific information from documents or other sources that are available to defendants at the same or lesser cost.

11.     For the years 2002 to 2009, how did AIG verify (i) responses to questions relating to an applicant's other or existing life insurance and (ii) responses to questions about an applicant's financial status (including, without limitation to, responses relating to an applicant's net worth and/or income)? In responding, identify each and every procedure utilized by AIG (including, without limitation to, any written internal policies or procedures) to verify responses to financial questions in a policy application.

**Response:**

American General objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome due in part to its use of the term "verify." American General further objects to this interrogatory on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this

998258.1

interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information, and would also lead to unnecessary and disproportionate expenditure of judicial resources.

12.   Identify all High Value Life Insurance policies issued by AIG from 2004 to the present where, prior to the death of the insured, AIG conducted an investigation into responses to financial questions contained in the policy or the application or any other document (e.g., Financial Questionnaire) submitted in connection with the policy.

**Response:**

American General objects to this interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this interrogatory on the grounds and to the extent that it calls for the disclosure of the information the disclosure of which would violate the attorney-client privilege and/or the attorney work product doctrine.

13.   For each year of the period 1995 to the present, state the number of High Value Life Insurance policies issued by AIG and state for each year the total value of such policies issued.

**Response:**

American General objects to this interrogatory on the grounds that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information.

998258.1

14.     State in detail each reason (including, without limitation to, any actuarial justification) that net worth of an insured is material to AIG's decision to issue a policy).

**Response:**

American General objects to this interrogatory on the grounds that it is overly broad, vague and ambiguous insofar as it is not limited to a specific policy, time period or factual circumstance. American General further objects to this interrogatory on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

Subject to and without waiver of any objections, American General states that financial underwriting, meaning the examination of the economic elements of a particular case, including but not limited to income and net worth, is necessary to determine whether there exists an insurable interest as well as to determine whether there is a need for insurance, and if so, how much. Financial underwriting is also necessary to determine whether the insurance requested bears a reasonable relationship to the loss that would occur in the event of the insured's death. Without financial underwriting, there is a substantial risk of speculative intent, overinsurance, moral hazard, and other adverse risk characteristics potentially antithetic to American General's decision to accept the risk.

Further responding American General refers defendant to its initial disclosures and documents references therein, including but not limited to the relevant non-privileged portions of applicable underwriting guidelines in effect at the time the subject policy was issued, which documents may contain further information responsive to this request.

15.     State in detail each reason (including, without limitation to, any actuarial justification) that annual income of an insured is material to AIG's decision to issue a policy.

**Response:**

American General objects to this interrogatory on the grounds that it is overly broad, vague and ambiguous insofar as it is not limited to a specific policy, time period or factual circumstance. American General further objects to this interrogatory on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

Subject to and without waiver of any objections, American General states that financial underwriting, meaning the examination of the economic elements of a particular case, including but not limited to income and net worth, is necessary to determine whether there exists an insurable interest as well as to determine whether there is a need for insurance, and if so, how much. Financial underwriting is also necessary to determine whether the insurance requested bears a reasonable relationship to the loss that would

998258.1

occur in the event of the insured's death. Without financial underwriting, there is a substantial risk of speculative intent, overinsurance, moral hazard, and other adverse risk characteristics potentially antithetic to American General's decision to accept the risk.

Further responding American General refers defendant to its initial disclosures and documents references therein, including but not limited to the relevant non-privileged portions of applicable underwriting guidelines in effect at the time the subject policy was issued, which documents may contain further information responsive to this request.

16.    Identify any communications made internally at AIG or made between AIG and any agent, broker, premium finance company, or life settlement company since January 1, 2002 concerning insurable interest.

**Response:**

American General objects to this interrogatory on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require a disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this interrogatory on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this interrogatory on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

17.    State whether any bonuses are paid to any AIG employees based on premiums collected or scheduled to be collected and if so, identify the title of employees subject to such bonuses.

**Response:**

American General objects to this interrogatory on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said interrogatory would require a disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is

in possession of any responsive information.  American General further objects to this interrogatory on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

## CERTIFICATION

**As to responses:**

Sarah Lockett Wickes, of full age, hereby certifies and says that I have been authorized to sign the foregoing answers to Interrogatories on behalf of American General Life Insurance Company, that I have read American General Life Insurance Company's Objections and Answers to Interrogatories, and know the contents thereof, and subscribe the same on behalf of  American General Life Insurance Company, that said answers were prepared with the assistance of representatives of American General Life Insurance Company in this action and with the advice and assistance of counsel, that subject to inadvertent or undiscovered errors all or portions of said answers are based upon the records and information still in existence, presently recollected and thus far discovered in the course of the preparation of these answers, that consequently, American General Life Insurance Company reserves the right to make changes in the answers if it appears at any time that omissions or errors have been made therein or that more specific information is available, and that, subject to the limitations set forth herein, the said answers are true to the best of my knowledge, information and belief.

_____
Sarah Locket Wickes
Claims Examiner

Dated:

**As to objections:**

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Attorneys for Plaintiff

_____
Karen D. Peck

Dated:

998258.1

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Robert P. Lesko
Karen D. Peck
200 Campus Drive
Florham Park, NJ 07932-0668
(973) 624-0800 ph./ (973) 624-0799 fx.
Attorneys for plaintiff, American General Life Insurance Company

|  |  |  |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY | : | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY |
|  | : |  |
| Plaintiff, | : | Civil Action No: 3:08-cv-05364-MLC-TJB |
|  | : |  |
| vs. | : | **AMERICAN GENERAL LIFE INSURANCE COMPANY'S RESPONSE TO THE FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS OF THE ELLMAN SAVINGS IRREVOCABLE TRUST AND JEFFREY LEVITIN, AS TRUSTEE** |
| ELLMAN SAVINGS IRREVOCABLE TRUST, JEFFREY LEVITIN, ISRAEL KUGIELSKY, CHAIM RUBIN, and JOHN DOES 1-10, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

TO:   Ira Lipsius, Esq.
      Schindel, Farman, Lipsius, Gardner & Rabinovich LLP
      14 Penn Plaza, Suite 500
      New York, New York 10122
      Attorneys for Defendants Ellman Savings Irrevocable Trust and Jeffrey Levitin

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil

Procedure, plaintiff American General Life Insurance Company (hereinafter "American

General") objects to and answers the First Request for the Production of Documents

propounded by the Ellman Savings Irrevocable Trust and Jeffrey Levitin, as Trustee, as

follows:

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
Attorneys for Plaintiff, American General Life Insurance Company

By: _____
                Karen D. Peck

Dated: May 31, 2011

998395.1

## GENERAL OBJECTIONS

The information supplied in these responses is not based solely on the knowledge of the executing party, but includes the knowledge of the party's attorneys, unless privileged. The word usage and sentence structure is that of the attorneys who prepared these answers and do not purport to be the exact language of the executing parties. These responses are based on information currently known by American General and its attorneys. Discovery in this case is ongoing, and American General has not completed its investigation of the facts pertaining to this action, nor has it completed its discovery, or preparation for trial. American General reserves the right to rely on any facts, documents or other evidence which may develop or come to American General's attention subsequent hereto. American General's responses are set forth herein without prejudice to American General's right to assert additional objections or supplemental responses should American General discover additional information or grounds for objections. American General reserves the right to supplement or amend these responses at any time prior to trial of this action.

American General objects to defendants' improper reference to "AIG" in their First Request for Production of Documents insofar as there is no entity referred to as "AIG" that is a party or otherwise relevant to this action or any of the claims or defenses asserted herein. Insofar as practical, American General has assumed that all of defendants' references to "AIG" were inserted in error, and were actually intended to read "American General Life Insurance Company," and American General has responded to the requests on that basis.

998395.1

American General objects to these requests in their entirety as overly broad, unduly burdensome, vague, vexatious, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence.

American General objects to each request calling for an answer requiring "each", "every", "all", "any", or "each and every" persons, entities, documents, statements, facts or circumstances on the grounds that such requests are vague and ambiguous, overly broad, unduly burdensome, oppressive and vexatious, and that they seek information neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection, American General will construe these terms and phrases to request that American General use reasonable diligence to locate relevant information or documents, based on an examination of those files that reasonably may be expected to yield relevant information or documents, and inquire of those who may reasonably be expected to possess responsive information or documents.

American General objects to all requests for information regarding "each", "every", "all", "any", or "each and every" person(s), entity(ies), fact(s), circumstance(s), document(s), or statement(s) on the grounds that Plaintiff has not completed its investigation of facts relating to this action. Discovery and American General's search for documents and related materials is ongoing. Accordingly, American General reserves the right to rely on any facts, documents or other evidence that may develop or come to American General's attention, subsequent thereto. American General's responses are set forth herein without prejudice to its right to assert additional objections or supplemental responses should American General discover additional information or grounds for

998395.1

objections. Additionally, American General reserves the right to supplement or amend these responses at any time prior to trial of this action.

American General objects to each requests that seeks information with respect to documents or oral communications "relating to", "reflecting", "pertaining to", "concerning", "discussing", "referencing", or "referring to" certain facts or contentions on the grounds that these terms are vague and ambiguous, and do not describe the material sought with sufficient particularity. American General further objects that requests using these terms are overly broad, unduly burdensome, oppressive and vexatious and that they seek information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

American General objects to the requests to the extent they impose any duty or obligation upon American General in excess of those duties and obligations imposed by the applicable Rules of Court.

American General objects to all requests to the extent they seek information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the self-examination or self-critical analysis privilege, or any other legal privilege or immunity.

American General objects to all requests that seek information in the possession or control of other parties to this action.

American General objects to all requests to the extent that they require American General to detail its legal contentions and supporting facts on the ground that such request are premature at this stage of discovery.

998395.1

To the extent American General responds to these requests, American General does not concede that the information requested is relevant to this action. American General expressly reserves the right to object to further discover of the subject matter of any of these Requests and the introduction into evidence of any answer or portion thereof, or of any document produced in response to these requests.

American General reserves the right to challenge the competency, relevance, materiality and admissibility of information set forth herein in any subsequent proceeding or the trial of this or any other action and to object on those grounds to the use of these answers in any subsequent proceeding or the trial of this or any other action.

American General objects to all requests to the extent they seek disclosure of confidential, commercial or business information.

The foregoing General Objections are hereby expressly incorporated in each of the following responses to requests, to the extent applicable, and are in addition to any specific objections made in any of the following answers.

998395.1

## SPECIFIC ANSWERS AND OBJECTIONS

1.      All documents identified in AIG's Rule 26(a)(1)(A) Initial Disclosures, to the extent not already disclosed.

**Response:**
American General refers defendants to the documents produced in connection with American General's Initial Disclosures pursuant to Fed. R. Civ. P. 26.

2.      All Documents Concerning the Ellman Policy.

**Response:**
American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents upon which American General might rely at the time of trial prior to the close of discovery. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

3.      All Documents used by, relied upon or consulted by AIG in responding to the Trust's First Set of Interrogatories.

**Response:**
American General objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

4.     All Documents identified in AIG's responses to the Trust's First Set of Interrogatories.

**Response:**
Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

5.     All Documents concerning Irving Ellman, including, without limitation to, (i) Documents Concerning or relating to any policy of insurance issued by AIG insuring the life of Irving Ellman; (ii) Documents Communicated between AIG and Irving Ellman; and (iii) Documents Communicated between AIG and Larry Ellman.

**Response:**
American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents upon which American General might rely at the time of trial prior to the close of discovery. American General further objects to this request on the grounds and to the extent that it calls for the disclosure of the work product of counsel which reflects counsel's mental impressions and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

998395.1

6.      Copies of any correspondence, or any Documents Communicated, between AIG and any other Person (including, but without limitation to, agents, reinsurers, and brokers) concerning Irving Ellman or the Ellman Policy.

**Response:**

American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents upon which American General might rely at the time of trial prior to the close of discovery. American General further objects to this request on the grounds and to the extent that it calls for the disclosure of the work product of counsel which reflects counsel's mental impressions and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

7.      All Documents concerning in any way commissions paid in connection with the Ellman Policy, including, without limitation to, (i) Documents, contracts or agreements with any persons receiving any commission in connection with the Ellman Policy; and (ii) Documents substantiating or evidencing commissions paid to any person in connection with the Ellman Policy.

**Response:**

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

8.      All pleadings and motions filed in any legal action identified in response to Request No. 10 of the Trust's First Set of Interrogatories.

**Response:**

American General objects to this request on the grounds that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information.

     9.    All discovery requests exchanged in any legal action identified in response to Request No. 10 of the Trust's First Set of Interrogatories.

**Response:**
American General objects to this request on the grounds that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information.

     10.    All Documents in support of AIG's claim that it has been damaged as a result of fraud allegedly committed by Defendants.

**Response:**
American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents upon which American General might rely at the time of trial prior to the close of discovery. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.

    Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request. American General may also rely upon additional facts that have been or may be disclosed in the course of this litigation and continuing discovery, including but not limited to, in: pleadings filed by any party or non-party;

answers to interrogatories, requests for admission, requests for production submitted by any party and documents produced in response thereto; responses to subpoenas issued or answered by and party or non-party; testimony of any party or non-party in any formal or informal proceeding in this or any other action; oral or written statements of any party or non-party, or; any other process or proceeding.

11.   All Documents Concerning any investigation taken in connection with the facts and circumstances of this litigation or Concerning any investigation of Irving Ellman, the Ellman Policy or Larry Ellman, including, without limitation to, (i) any and all records, memoranda, notations, statements summaries and other Documents which were obtained from or as a result of interviewing persons having or purporting to have knowledge of the facts and circumstances surrounding this action; (ii) transcripts of all telephone conversations recorded with regard to any investigation conducted concerning Irving Ellman, Larry Ellman, and the Ellman Policy; and (iii) copies of all investigation reports concerning the Ellman Policy.

**Response:**
American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents upon which American General might rely at the time of trial prior to the close of discovery. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

12.   Any and all films, photographs, video tapes, or audio tapes, including transcripts or memoranda thereof, made either before, after or at the time of the policy rescission, concerning the rescission of the Ellman Policy. This request calls for actual reports from the negatives and includes all films, photographs, video tapes, or audio tapes which AIG intends to rely on at the time of trial.

998395.1

**Response:**

American General objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request. To the extent any films, photographs, video tapes, or audio tapes otherwise exist and are within American General's possession, custody and control, said documents will be produced in accordance with applicable rules of court and/or court order during the course of this litigation.

13.   Transcripts of all telephone conversations recorded with regard to any application made in connection with the Ellman Policy.

**Response:**

American General objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents upon which American General might rely at the time of trial prior to the close of discovery.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request. To the extent any document responsive to this request otherwise exists and is within American General's possession, custody and control, said document will be produced in accordance with applicable rules of court and/or court order during the course of this litigation.

14.   All Documents communicated with any financier of premiums concerning insurable interest for the period from 2002 to present, including, without limitation to, bulletins, memoranda or agent letters issued by AIG since January 1, 2002 concerning insurable interest.

**Response:**

American General objects to this request on the grounds that it is vague and ambiguous and because it is overly broad and unduly burdensome insofar as it is not limited by relevant time period, specific description or any other reasonable limitation

998395.1

and because of the phrase "financier of premiums" is not appropriately defined or limited. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

15.    A copy of any and all underwriting guidelines used by AIG from January 1, 2002 to the present relating to High Value Life Insurance policies. If an underwriting guidelines applies to policies of which High Value Lie Insurance policies are a subset of the applicable policies, then such guideline or guidelines are included within this Request.

**Response:**
American General objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

Subject to and without waiver of any objections, and upon the execution and entry of an appropriate confidentiality order, American General will produce the relevant portions of its underwriting guidelines in effect at the time the Policy at issue in this litigation was issued.

16.    All documents used by AIG to determine premiums or pricing for High Value Life Insurance Policies.

**Response:**
American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American

General further objects to this request on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and is therefore subject to the attorney work product doctrine.

17.    All internal memoranda, newsletters, bulletins, agent letters or agent memos concerning High Value Life Insurance policies from January 1, 2002 to the present.

**Response:**
American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

18.    All internal memoranda, newsletters, bulletins, agent letters or agent memos concerning Challenge Policies from January 1, 2002 to the present.

**Response:**

998395.1

American General objects to this request on the grounds and to the extent that it is vague and ambiguous because the term/phrase "Challenge Policies" is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

19.     Copies of any guidelines or documents that establish ratios or charts that compare total insurance in force and face values permitted for any policies issued by AIG.

**Response:**
    American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or other reasonable limitation. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

    Subject to and without waiver of any objections, and upon the execution and entry of an appropriate confidentiality order, American General will produce the relevant portions of its underwriting guidelines in effect at the time the Policy at issue in this litigation was issued.

20.     Copies of all documents communicated between AIG and its agents concerning High Value Life insurance policies from January 1, 2002 to the present, including, without limitation to, (i) marketing materials concerning high value life insurance policies; and (ii) documents concerning the sale of high value life insurance policies; and (iii) documents concerning the net worth of applicant or insureds of high value life insurance policies.

**Response:**
    American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting

998395.1

interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

21.     Copies of all documents communicated between AIG and its agents or brokers concerning the total life insurance in force for individuals, insureds, or potential insureds of High Value Life Insurance policies from January 1, 2002, to the present.

**Response:**
American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

22.     Copies of documents regarding the rescission of policies or denial of coverage or denial of a claim on the basis of other insurance misrepresentations, financial statements made in the policy application or on the basis of other life insurance available on the life of the insured.

998395.1

**Response**:

American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel, and is therefore subject to the attorney work product doctrine.

     23.     Copies of all applications (appropriately redacted) submitted from January 1, 2002 to the present to AIG seeking life insurance coverage for a person over 75 years old and seeking coverage of $5 million or more.

**Response:**

American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine.

24.    Copies of all documents discussing or concerning the impact or materiality of Financial Misrepresentations on the risk or hazard assumed by a life insurer.

**Response:**
American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents and information upon which American General might rely at the time of trial concerning materiality of the financial misrepresentations at issue prior to the close of discovery.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request, including but not limited to the relevant portions of American General's underwriting guidelines in effect at the time the Policy at issue in this litigation was issued.

25.    Copies of all documents discussing or concerning the impact or materiality of other insurance misrepresentations on the risk or hazard assumed by a life insurer.

**Response:**
American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain

998395.1

whether American General is in possession of any responsive information. American General objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantage and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents and information upon which American General might rely at the time of trial concerning materiality of the financial misrepresentations at issue prior to the close of discovery.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request. American General further responds that, upon the execution and entry of an appropriate confidentiality order, American General will produce the relevant portions of its underwriting guidelines in effect at the time the Policy at issue in this litigation was issued.

26.    Copies of all newsletters, bulletins, agent letters or agent memos regarding insurable interest from January 1, 2002 to the present.

**Response:**
American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege.

998395.1

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

27.    Copies of any internal memos concerning the sale of life insurance policies with fact value of $2million or more.

**Response:**
American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege.

28.    Any actuarial findings made in connection with the rating of High Value Life Insurance Policies.

**Response:**
American General objects to this request on the grounds and to the extent that it is vague and ambiguous because the term/phrase "filings made in connection with" is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary

documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

29.     Any documents communicated between AIG and any reinsurer concerning any high value life insurance policies and/or any challenge policies.

**Response:**
American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

30.     All applications, agent reports, inspection reports, and policies (appropriately redacted) concerning each and every policy which AIG has identified as a Challenge Policy, has identified as a suspected Challenge Policy, or which AIG has expressed a belief may be a Challenge Policy.

**Response:**
American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require

disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine.

  31. All applications and policies (appropriately redacted) concerning each and every High Value Life Insurance policy which AIG has conducted any investigation as to insurable interest.

**Response:**
  American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine.

  32. Copies of all documents communicated to or from AIG concerning premium financing since January 1, 2002.

**Response:**
  American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by

998395.1

relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

33.     Copies of all documents communicated concerning insurable interest between AIG and any premium finance company since January 1, 2002.

**Response:**

American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade

secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

34.     All documents and communications between AIG and any entity which AIG has identified as being involved in Challenge Policies.

**Response:**
American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

35.     All reports, investigation materials, training materials, and pamphlets, in AIG's possession, regarding Challenge Policies.

**Response:**
American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in

connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage.

      36.    Copies of all newsletters, bulletins, agent letters or agent memos regarding insurable interest from January 1, 2001, to the present.

**Response:**
      American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds and to the extent that it duplicative of previous requests for documents.

      American General refers defendants to its objections and response to the foregoing requests, including, but not limited to requests numbered 18 and 26, above.

      37.    Copies of all documents that evidence the materiality of financial misrepresentations concerning an insured.

**Response:**
      American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-

998395.1

consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents and information upon which American General might rely at the time of trial concerning materiality of the financial misrepresentations at issue prior to the close of discovery. American General further objects to this request on the grounds and to the extent that it duplicative of previous requests for documents, including but not limited to the request numbered 24.

38.    All internal memos issued since January 1, 2001 concerning premium financing, insurable interest, high value life insurance, elderly life insurance, stranger owned life insurance, or financial representations made in a policy application.

**Response:**
    American General objects to this request on the grounds and to the extent that it is vague and ambiguous because it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it seeks confidential and

998395.1

proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents and information upon which American General might rely at the time of trial concerning materiality of the financial misrepresentations at issue prior to the close of discovery.

39.    Copies of all newsletters, bulletins, agent letters or agent memos regarding Stranger Owned Life Insurance policies, Charity Owned Life Insurance policies, Investor Owned Life Insurance Policies, or viatical settlement since January 1, 2001.

**Response:**
American General objects to this request on the grounds and to the extent that it is vague and ambiguous because it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents and information upon which American General might rely at the time of trial concerning materiality of the financial misrepresentations at issue prior to the close of discovery.

40.    Copies of all documents used to determine premiums or pricing of high value life insurance policies.

**Response:**
American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period,

specific description or other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it duplicative of previous requests for documents, including but not limited to the request numbered 16.

   41.   Copies of any guidelines or documents that establish ratios or charts that compare net worth and face values for any policies issued by AIG.

**Response:**
   American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or other reasonable limitation. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds and to the extent that it duplicative of previous requests for documents, including but not limited to the request numbered 19.

   42.   Copies of all documents communicated by or to AIG concerning the sale of High Value Life Insurance policies from January 1, 2002 to the present.

**Response:**
   American General objects to this request on the grounds and to the extent that it is vague and ambiguous because it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly

broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents and information upon which American General might rely at the time of trial concerning materiality of the financial misrepresentations at issue prior to the close of discovery. American General further objects to this request on the grounds and to the extent that it duplicative of previous requests for documents, including but not limited to the request numbered 20, and 27-29.

43.    Copies of internal documents regarding the rescission of policies or denial of coverage or denial of a claim on the basis of financial misrepresentation, financial statements made in the policy application or on the basis of other life insurance available on the life of the insured.

**Response:**
    American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the

grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it duplicative of previous requests for documents, including but not limited to the request numbered 22.

44.    Copies of all documents discussing the impact or materiality of financial misrepresentations on the risk or hazard assumed by a life insurer.

**Response:**
American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents and information upon which American General might rely at the time of trial concerning materiality of the financial misrepresentations at issue prior to the close of discovery. American General further objects to this request on the grounds and to the extent that it duplicative of previous requests for documents, including but not limited to the request numbered 24.

45.    Copies of any correspondence between AIG and any reinsurer concerning financial misrepresentation in policy applications.

**Response:**
American General objects to this request on the grounds and to the extent that it is vague and ambiguous insofar as it is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by

relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds and to the extent that it duplicative of previous requests for documents, including but not limited to the request numbered 29.

46.    All statements made by any party, or any agent, employee or representative of a party named herein, whether written, oral videotaped, audiotaped, and/or by any other recording medium concerning this action.  If oral, set forth the substance of the statement.

**Response:**
American General objects to this request on the grounds and to the extent that is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds that it is duplicative of a previous request. American General further objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents upon which American General might rely at the time of trial prior to the close of discovery. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request. Further responding, American General may also rely upon any and all admissions and/or statements against interest of defendants or any third party that has been or may be disclosed in the course of this litigation and continuing discovery, including but not limited to, in: pleadings filed by any party or non-party; answers to interrogatories, requests for admission, requests for production submitted by any party and documents produced in response thereto; responses to subpoenas issued or answered by and party or non-party; testimony of any party or non-party in any formal or informal proceeding in this or any other action; oral or written statements of any party or non-party, or; any other process or proceeding.

47.    A true and accurate copy of each photograph, video tape, or other visual recording associated with this action.

**Response:**
American General objects to this request on the grounds and to the extent that it is vague and ambiguous because the term/phrase "associated with this action" is subject to alternate and potentially conflicting interpretations. American General further objects to this request on the ground that it is duplicative of a previous request. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents upon which American General might rely at the time of trial prior to the close of discovery. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request. Further responding, American General may also rely upon any document that has been or may be disclosed in the course of this litigation and continuing discovery, including but not limited to, in: pleadings filed by any party or non-party; answers to interrogatories, requests for admission, requests for production submitted by any party and documents produced in response thereto; responses to

subpoenas issued or answered by and party or non-party; testimony of any party or non-party in any formal or informal proceeding in this or any other action; oral or written statements of any party or non-party, or; any other process or proceeding.

      48.    All documents concerning any of the following AIG insureds:

a.    Lily Buchsbaum
b.    Sarah Perlstein
c.    Lean Deblasio
d.    Judith Liebowitz
e.    Olga Rozencweig
f.    Edith Wolpin
g.    Tsvi Klein
h.    Risha Goldklang
i.    Rachelle Kremer
j.    Judith Rosenthal

**Response:**
    American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation.  American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information.

998395.1

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Robert P. Lesko
Karen D. Peck
200 Campus Drive
Florham Park, NJ 07932-0668
(973) 624-0800 ph./ (973) 624-0799 fx.
Attorneys for plaintiff, American General Life Insurance Company

|  |  |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY |
| Plaintiff, | Civil Action No: 3:08-cv-05364-MLC-TJB |
| vs. | **AMERICAN GENERAL LIFE INSURANCE COMPANY'S RESPONSE TO THE SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS OF THE ELLMAN SAVINGS IRREVOCABLE TRUST AND JEFFREY LEVITIN, AS TRUSTEE** |
| ELLMAN SAVINGS IRREVOCABLE TRUST, JEFFREY LEVITIN, ISRAEL KUGIELSKY, CHAIM RUBIN, and JOHN DOES 1-10, |  |
| Defendants. |  |

TO:   Ira Lipsius, Esq.
David BenHaim, Esq.
Schindel, Farman, Lipsius, Gardner & Rabinovich LLP
14 Penn Plaza, Suite 500
New York, New York 10122
Attorneys for Defendants Ellman Savings Irrevocable Trust and Jeffrey Levitin

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil

Procedure, plaintiff American General Life Insurance Company (hereinafter "American

General") objects to and answers the First Request for the Production of Documents

propounded by the Ellman Savings Irrevocable Trust and Jeffrey Levitin, as Trustee, as

follows:

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
Attorneys for Plaintiff, American General Life Insurance Company

By: _____
Karen D. Peck

Dated: June 17, 2011

1201821.1

## GENERAL OBJECTIONS

The information supplied in these responses is not based solely on the knowledge of the executing party, but includes the knowledge of the party's attorneys, unless privileged. The word usage and sentence structure is that of the attorneys who prepared these answers and do not purport to be the exact language of the executing parties. These responses are based on information currently known by American General and its attorneys. Discovery in this case is ongoing, and American General has not completed its investigation of the facts pertaining to this action, nor has it completed its discovery, or preparation for trial. American General reserves the right to rely on any facts, documents or other evidence which may develop or come to American General's attention subsequent hereto. American General's responses are set forth herein without prejudice to American General's right to assert additional objections or supplemental responses should American General discover additional information or grounds for objections. American General reserves the right to supplement or amend these responses at any time prior to trial of this action.

American General objects to defendants' improper reference to "AIG" in their Second Request for Production of Documents insofar as there is no entity referred to as "AIG" that is a party or otherwise relevant to this action or any of the claims or defenses asserted herein. Insofar as practical, American General has assumed that all of defendants' references to "AIG" were inserted in error, and were actually intended to read "American General Life Insurance Company," and American General has responded to the requests on that basis.

American General objects to these requests in their entirety as overly broad, unduly burdensome, vague, vexatious, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence.

American General objects to each request calling for an answer requiring "each", "every", "all", "any", or "each and every" persons, entities, documents, statements, facts or circumstances on the grounds that such requests are vague and ambiguous, overly broad, unduly burdensome, oppressive and vexatious, and that they seek information neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection, American General will construe these terms and phrases to request that American General use reasonable diligence to locate relevant information or documents, based on an examination of those files that reasonably may be expected to yield relevant information or documents, and inquire of those who may reasonably be expected to possess responsive information or documents.

American General objects to all requests for information regarding "each", "every", "all", "any", or "each and every" person(s), entity(ies), fact(s), circumstance(s), document(s), or statement(s) on the grounds that Plaintiff has not completed its investigation of facts relating to this action. Discovery and American General's search for documents and related materials is ongoing. Accordingly, American General reserves the right to rely on any facts, documents or other evidence that may develop or come to American General's attention, subsequent thereto. American General's responses are set forth herein without prejudice to its right to assert additional objections or supplemental responses should American General discover additional information or grounds for

objections. Additionally, American General reserves the right to supplement or amend these responses at any time prior to trial of this action.

American General objects to each requests that seeks information with respect to documents or oral communications "relating to", "reflecting", "pertaining to", "concerning", "discussing", "referencing", or "referring to" certain facts or contentions on the grounds that these terms are vague and ambiguous, and do not describe the material sought with sufficient particularity. American General further objects that requests using these terms are overly broad, unduly burdensome, oppressive and vexatious and that they seek information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

American General objects to the requests to the extent they impose any duty or obligation upon American General in excess of those duties and obligations imposed by the applicable Rules of Court.

American General objects to all requests to the extent they seek information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the self-examination or self-critical analysis privilege, or any other legal privilege or immunity.

American General objects to all requests that seek information in the possession or control of other parties to this action.

American General objects to all requests to the extent that they require American General to detail its legal contentions and supporting facts on the ground that such request are premature at this stage of discovery.

To the extent American General responds to these requests, American General does not concede that the information requested is relevant to this action. American General expressly reserves the right to object to further discover of the subject matter of any of these Requests and the introduction into evidence of any answer or portion thereof, or of any document produced in response to these requests.

American General reserves the right to challenge the competency, relevance, materiality and admissibility of information set forth herein in any subsequent proceeding or the trial of this or any other action and to object on those grounds to the use of these answers in any subsequent proceeding or the trial of this or any other action.

American General objects to all requests to the extent they seek disclosure of confidential, commercial or business information.

The foregoing General Objections are hereby expressly incorporated in each of the following responses to requests, to the extent applicable, and are in addition to any specific objections made in any of the following answers.

1201821.1

## SPECIFIC ANSWERS AND OBJECTIONS

1.      Any emails, letters, or other written communications by or to the following individuals concerning either Chaim Rubin or the Ellman policy:

    a. Sarah Wickes
    b. Lisa Glass
    c. Mark Childs
    d. Leo Grace
    e. Bill Wyong
    f. Karen Padrucco
    g. Pat Wood
    h. Don Garrow
    i. Jennifer Larson
    j. Paul Kipert
    k. Sherry Walton
    l. Dru Ruiz
    m. Scott Busalacchi

### Response:

American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation, and because the search for and production of documents responsive to this request will require expenditure of time, money and resources that would be vastly disproportionate to any potential probative value of any responsive documents. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

2.      All Documents and Communications concerning the investigation of the Chaim Rubin policies as discussed in the email exchange between Scott Busalacchi and Denise Bell identified in the second amended complaint.

1201821.1

**Response:**

American General objects to this request on the grounds that it is vague and ambiguous insofar as it refers to an "investigation" without a description of such investigation sufficient to allow American General to conduct a reasonable search of its records to ascertain the existence of responsive documents. American General objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request. American General further refers defendants to the documents produced by USCAS in response to American General's subpoena.

3.      All documents or communications concerning, discussing or resulting from the 2006 or 2007 decision by AIG to require tax returns during application and the decision rescinding the requirement, including, but not limited to all records and emails maintained, sent, or received by Kent Major, Marketing and Distribution, Brad Gabel, Royce Imhoff, Dennis Roberts, Mr. Cicchi and the Legal Department.

**Response:**

American General objects to this request on the grounds that it is vague and ambiguous insofar as it refers to "the 2006 or 2007 decision by AIG to require tax returns during the application and the decision rescinding the requirement" without a description sufficient to allow American General to conduct a reasonable search of its records to ascertain the existence of responsive documents. American General objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds and to the extent that it seeks confidential and proprietary documents and information, the disclosure of which would violate trade secrets of American General and/or place American General at a competitive disadvantaged and/or cause American General to lose a competitive advantage. American General further objects to this request on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records.

4.      A copy of any MIB reports obtained by AIG during the underwriting of the Ellman policy.

**Response:**

American General objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

# EXHIBIT E

# SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

### ATTORNEYS AT LAW

### 4 CORNWALL DRIVE

### SUITE 101

### EAST BRUNSWICK, N.J. 08816

(732) 390-0166

FACSIMILE (732) 432-7706

WEBSITE: www.sfl-legal.com

IRA S. LIPSIUS*
JEAN M. GARDNER**
LAURENCE J. RABINOVICH
LORIENTON PALMER*
ANDREW KARONIS

JUDITH A. NORMAN*
PHILIP A. BRAMSON
MARC I. KUNKIN
CHERYL LIPSIUS*
DAVID BENHAIM

*ADMITTED IN NEW YORK ONLY
**MANAGING ATTORNEY

NEW YORK OFFICE

14 PENN PLAZA, SUITE 500
NEW YORK, N.Y. 10122
(212) 563-1710

FACSIMILE (212) 695-6602

OF COUNSEL

EDWARD FARMAN*
Writer's Extension: 253
Email: dbenhaim@sfl-legal.com

June 24, 2011

**_VIA ECF_**
Honorable Tonianne J. Bongiovanni, U.S.M.J.
United States District Court
For the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

> **Re:** **American General Life Insurance Co. v. Ellman Savings Irrevocable Trust**
> **Docket No. 08 CV 5364 (MLC) (TJB)**
> **Our File No. 4206.0002**

Dear Honorable Judge Bongiovanni:

We represent Jeffrey Levitin, the trustee of the Ellman Savings Irrevocable Trust ("Trust"). We write to seek leave to file a motion to compel discovery and for sanctions concerning American General's wanton and malicious non-responses to long-outstanding discovery requests. Attempts to resolve this issue without Court intervention have proven to be fruitless.

Over one year ago, on May 7, 2010, we served American General with our first Request for Production of Documents and First Set of Interrogatories.

Since March 3, 2011, we have been beginning American General to respond to our discovery demands. At our last conference, held on May 31, 2011, American General promised that responses were "on their way." Later that day we received some of American General's purported responses and the rest were received on June 16, 2011. Exhibit A. American General refused to produce a single document in response to the demands and instead, peppered its responses with boilerplate, inapplicable and unsubstantiated objections.

American General's responses were egregiously deficient and show utter contempt for the discovery process. Some examples of the bad faith inherent in the non-responses: American

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

Hon. Tonianne J. Bongiovanni
June 24, 2011
Page 2

General has produced less than 10 emails, all of which were produced as part of its Rule 26 disclosure, and refuses to even conduct a search for emails communicated to or from its employees and agents concerning the policy at issue in this litigation.

In allegation 60 of the amended complaint, American General claims that it first learned that the insured had more than the American General policy insuring his life when the insured passed away and a claim was made for benefits. Thus, we requested, "A copy of any MIB reports obtained by AIG during the underwriting of the Ellman policy." An MIB report is always obtained by the insurer as part of the underwriting process and it shows what other policies were submitted for an applicant. American General's response to this clearly relevant and vital request:

> 4.    A copy of any MIB reports obtained by AIG during the underwriting of the Ellman policy.
>
> **Response:**
>
> American General objects to this request on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this request on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

As you know, this court denied American General's motion to dismiss the counter-claim for fraud based, in large part, on an audit conducted of Rubin and referenced in the counter-claim. Specifically, a series of emails between Denise Bell and AIG employee Scott Busalacchi discussed an investigation of agent Chaim Rubin which identified the Ellman policy as a STOLI policy shortly after the policy was issued and discussed that American General did not plan on acting upon this discovery. This court cited this email exchange as well as the fact that American General American separately investigated Rubin and determined that other policies contained the same or similar conditions as in Ellman which would allow American General to rescind, yet it chose to keep those policies in force. Yet, American General refuses to disclose any of the information relevant to these allegations:

Hon. Tonianne J. Bongiovanni
June 24, 2011
Page 3

    48.    All documents concerning any of the following AIG insureds:

    a.    Lily Buchsbaum
    b.    Sarah Perlstein
    c.    Lean Deblasio
    d.    Judith Liebowitz
    e.    Olga Rozencweig
    f.    Edith Wolpin
    g.    Tsvi Klein
    h.    Risha Goldklang
    i.    Rachelle Kremer
    j.    Judith Rosenthal

**Response:**
    American General objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this request on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this request on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this request to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence. American General further objects to this request on the grounds and to the extent that it seeks personal and confidential information concerning other insureds that are not parties to this litigation. American General further objects to this request on the grounds and to the extent that it is overly broad and unduly burdensome as to respond to said request would require disproportionately time-consuming and expensive search of American General's records in order to ascertain whether American General is in possession of any responsive information.

    American General's failure to respond is particularly disturbing considering its purported RICO claim and allegations 84-175 of the amended complaint, which detail the so-called "Goldklang Fraud" the "Kremer Fraud" and the "Rosenthal Fraud." American General has not produced a single document concerning any of these policies.

    American General has also refused to produce any documents concerning the Trust's thirteenth affirmative defense that American General regularly ignored the lack of financial justification in order to write high value elderly policies. For example, American General's vice president of underwriting testified in another matter that at one point, American General decided that in order to verify the financial information that it receives in an application, all applications must be accompanied by tax returns. When the

Hon. Tonianne J. Bongiovanni
June 24, 2011
Page 4

        sales staff informed the underwriters that the sale of high value elderly policies has
suffered as a result of this decision, American General reversed its policy, once again
turning a blind eye to the financial representations made. The Trust requested:

> 3.      All documents or communications concerning, discussing or resulting
> from the 2006 or 2007 decision by AIG to require tax returns during application and the
> decision rescinding the requirement, including, but not limited to all records and emails
> maintained, sent, or received by Kent Major, Marketing and Distribution, Brad Gabel,
> Royce Imhoff, Dennis Roberts, Mr. Cicchi and the Legal Department.

        American General refuses to respond.

        American General also refuses to produce records of materiality which show how
the financial condition of the insured is material to the risk assumed by American
General.

        Moreover, American General refuses to produce the witnesses as noticed for
deposition or even assert whether the noticed employees are still employees of American
General.

        American General refuses to produce the telephone interview it conducted of
Larry Ellman during the underwriting process which forms the basis for its entire
complaint and referenced in paragraph 39 of the amended complaint, citing some obscure
and inapplicable case law concerning surveillance videos taken of personal injury
claimants. The interview sought was not a surveillance record but a part of the
underwriting process and clearly discoverable.

        In order to mask its complete failure in discovery, American General
misrepresented to this court at the last conference that the Trust also had outstanding
discovery. This was completely false as all demands made of the Trust were responded to
in February 2011. Since the conference, we have not been advised of any purported
outstanding discovery.1

        In sum, American General's behavior in discovery is repugnant and sanctionable.
We therefore respectfully request that this court grant the Trust leave to file a motion to
compel and to sanction American General for its malicious and wanton refusal to

SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP

Hon. Tonianne J. Bongiovanni
June 24, 2011
Page 5

participate in discovery.

Respectfully yours,

SCHINDEL, FARMAN, LIPSIUS,
GARDNER & RABINOVICH LLP

David BenHaim

DB:tl

Enclosures

cc:     Karen D. Peck *(Via Email and US Mail)*
        Wilson Elser Moskowitz Edelman & Dicker
        200 Campus Drive
        Florham Park, NJ 07932-0668
        Email: Karen.peck@wilsonelser.com

# EXHIBIT F

# LIPSIUS –BENHAIM
## LAW, LLP

14 Penn Plaza, Suite 500
New York, New York 10122
212.981.8440
Facsimile 212.695.6602
www.lipsiuslaw.com

DAVID BENHAIM
Direct Line; 212-981-8446
Email: dbenhaim@lipsiuslaw.com

September 28, 2011

## VIA FEDERAL EXPRESS 2-DAY DELIVERY

Robert Lesko, Esq.
Wilson Elser Moskowitz Edelman & Dicker
200 Campus Drive
Florham Park, NJ 07932

> **Re:**   **American General Life Insurance Co. v. Ellman Savings Irrevocable Trust**
> **Docket No. 3:08 CV 05364 (MLC) (TJB)**
> **Our File No. 4206.0002**

Dear Mr. Lesko:

We write with respect to American General's outstanding discovery obligations. We met on July 18, 2011 and July 28, 2011 to discuss American General's deficiencies in responding to the Trust's request for documents. During the meetings and conferences, you indicated that American General will consider the requests, as narrowed during the conferences, and advise whether it will voluntarily produce. You also advised that your client may have concerns about confidentiality.

As a result, on August 17, 2011, we entered into a confidentiality agreement. Later that day, American General produced documents with Bates numbers AGLIC 0779 through AGLIC 0866, which appear to include agent manuals, field memos and underwriting guidelines. An overwhelming majority of the documents sought, however have not been produced. In discussions with Karen Peck this past month, we were advised that American General was still considering the requests, as narrowed.

Below is a list of documents that remain outstanding:

1. Emails by American General employees concerning the policy, Ellman, Rubin and the Trust written or received by the 13 employees identified in the notices of deposition.

2. Documents evidencing commissions paid and charged back and any other documents substantiating damages claimed by American General.

Robert Lesko, Esq.
September 28, 2011
Page 2

3. All documents concerning any investigation conducted by American General of Larry Ellman, Irving Ellman, the Policy, the Trust and Chaim Rubin.

4. Any and all audiotapes of any of the above persons (with the recording of Larry Ellman being subject to attorneys only until after the Larry Ellman deposition).

5. Transcripts of any of the recordings listed in 4. above.

6. The 1980 actuarial charts used by American General to set premiums for the Policy (or any other actuarial clients used at the time by American General).

7. Bulletins and memos to agents (to the extent not produced on August 17, 2011).

8. Any guides or calculators that compare insurance in force against net worth and income.

9. Communication with AIG reinsurers concerning (1) insurable interest; (2) high value elderly policies (or the product sold by such market).

10. All documents and communications with any premium finance entity concerning elderly high value policies (or the product sold to the elderly market).

11. Reports, bulletins, manuals, marketing materials, training materials and agent letters concerning elderly high value policies (or the product designed for such market).

12. Complete policy files (including emails) concerning the ten insured listed in Request No. 48 (Chaim Rubin files).

13. The complete investigation file of the Chaim Rubin investigation identified in the Second Amended Complaint.

14. All documents (including emails) concerning the decision to require tax returns with applications and the decision rescinding the requirement including emails received and sent by the seven entities or persons identified in the second request for documents.

15. Any MIB report obtained by American General during underwriting.

16. All policy applications which resulted in policies issued within two years prior and one year after the date of issuance of the Ellman policy for insureds 75 years or older and with a fair market of $5M or more.

Robert Lesko, Esq.
September 28, 2011
Page 3


       Kindly advise us within seven days whether the documents will be produced voluntarily
by American General.

                                          Very truly yours,

                                          LIPSIUS-BENHAIM LAW, LLP

                                          David BenHaim

DB:bl

# EXHIBIT G

**David BenHaim**

---

| | |
|---|---|
| **From:** | Lesko, Robert [Robert.Lesko@wilsonelser.com] |
| **Sent:** | Friday, September 30, 2011 8:58 AM |
| **To:** | David Benhaim |
| **Subject:** | FW: AG/Ellman - BenHaim ltr re AG's outstanding discovery 09.28.11 |
| **Attachments:** | AG.Ellman - BenHaim ltr re AG's oustanding discovery 09.28.11.pdf |

David:

We have your letter (attached).  Please be advised that we will be unable to respond within 7 days as you have requested because of other commitments.  We will, however, consider your letter and endeavor to respond by the middle of October.

Robert Lesko
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
200 Campus Drive
Florham Park, NJ 07932-0668
973-735-5779 (Direct)
973-624-0800 (Main)
973-624-0808 (Fax)
robert.lesko@wilsonelser.com

---

**From:** Sisti, Maria
**Sent:** Thursday, September 29, 2011 1:54 PM
**To:** Lesko, Robert
**Cc:** Peck, Karen D.
**Subject:** AG/Ellman - BenHaim ltr re AG's outstanding discovery 09.28.11

Maria Sisti
Legal Secretary
Wilson Elser Moskowitz Edelman & Dicker LLP
200 Campus Drive
Florham Park, 07932-0668
973-735-5770 (Direct)
973-624-0800 (Main)
973-624-0808 (Fax)
maria.sisti@wilsonelser.com

This communication was not intended or written to be used, and it

cannot be used by any taxpayer, for the purpose of avoiding tax

penalties. (The foregoing legend has been affixed pursuant to U.S.

Treasury Regulations governing tax practice.)

*********************************************************

# EXHIBIT H

| | |
|---|---|
| **From:** | David Benhaim [dbenhaim@lipsiuslaw.com] |
| **Sent:** | Tuesday, November 01, 2011 1:56 PM |
| **To:** | 'Lesko, Robert'; 'Peck, Karen D.' |
| **Cc:** | Daniel Louis Grossman, Esq.; 'Ira S. Lipsius' |
| **Subject:** | FW: AG/Ellman - BenHaim ltr re AG's outstanding discovery 09.28.11 |

**Attachments:** AG.Ellman - BenHaim ltr re AG's oustanding discovery 09.28.11.pdf

Rob and Karen,

It has now been a month since my letter to you concerning long outstanding discovery and two weeks after the date we were told to expect a response. I do not want to be accused of hastily running to the court but am at a loss as to what to do in order to get your client to voluntarily participate in discovery. Kindly advise whether your client intends on producing the documents listed in the letter.

Regards,
David

**David BenHaim, Esq.**
**Lipsius - BenHaim Law LLP**
14 Penn Plaza, Suite 500 | New York, NY 10122
Tel: 212.981.8446      | Fax: 212.695.6602

CONFIDENTIALITY NOTICE: The information contained in this e-mail is confidential, may be legally privileged, and is intended only for the use of the party named above. If the reader of this e-mail is not the intended recipient, you are advised that any dissemination, distribution, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify us by telephone at 212.981.8440 and destroy this e-mail.

**From:** Lesko, Robert [mailto:Robert.Lesko@wilsonelser.com]
**Sent:** Friday, September 30, 2011 8:58 AM
**To:** David Benhaim
**Subject:** FW: AG/Ellman - BenHaim ltr re AG's outstanding discovery 09.28.11

David:

We have your letter (attached).  Please be advised that we will be unable to respond within 7 days as you have requested because of other commitments.  We will, however, consider your letter and endeavor to respond by the middle of October.

Robert Lesko
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
200 Campus Drive
Florham Park, NJ 07932-0668
973-735-5779 (Direct)
973-624-0800 (Main)
973-624-0808 (Fax)
robert.lesko@wilsonelser.com

**From:** Sisti, Maria
**Sent:** Thursday, September 29, 2011 1:54 PM
**To:** Lesko, Robert
**Cc:** Peck, Karen D.
**Subject:** AG/Ellman - BenHaim ltr re AG's outstanding discovery 09.28.11

11/11/2011

Maria Sisti
Legal Secretary
Wilson Elser Moskowitz Edelman & Dicker LLP
200 Campus Drive
Florham Park, 07932-0668
973-735-5770 (Direct)
973-624-0800 (Main)
973-624-0808 (Fax)
maria.sisti@wilsonelser.com

This communication was not intended or written to be used, and it
cannot be used by any taxpayer, for the purpose of avoiding tax
penalties. (The foregoing legend has been affixed pursuant to U.S.
Treasury Regulations governing tax practice.)
**********************************************************

CONFIDENTIALITY NOTICE: This electronic message is intended to be
viewed only by the individual or entity to whom it is addressed.
It may contain information that is privileged, confidential and
exempt from disclosure under applicable law. Any dissemination,
distribution or copying of this communication is strictly prohibited
without our prior permission. If the reader of this message is not
the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, or if you have
received this communication in error, please notify us immediately by
return e-mail and delete the original message and any copies of it
from your computer system.

For further information about Wilson, Elser, Moskowitz, Edelman &
Dicker LLP, please see our website at www.wilsonelser.com or refer to
any of our offices.
Thank you

11/11/2011

# EXHIBIT I

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AMERICAN GENERAL LIFE INS. CO.          :
      Plaintiff          :          Civil Action No. 09-5097(FSH)
                  :
   v.          :
                  :          ORDER ON INFORMAL
SUSSEX 130 LLP, et al.          :          APPLICATIONS & SECOND AMENDED
                  :          <u>PRETRIAL SCHEDULING ORDER</u>
                  :
      Defendants          :

      This matter having come before the Court by way of submissions dated December 17, 2010 and December 18, 2010, regarding a request to extend the pretrial deadlines, the plaintiff's alleged failure to comply with certain prior orders, and for sanctions;

      and the Court having considered the submissions, record of proceedings, and governing law;

      and for the reasons set forth in the Opinion delivered on the record on December 19, 2010;

      IT IS ON THIS 19th day of December, 2010

      **ORDERED that:**

      1. The request to extend the pretrial deadlines is granted as set forth herein;

      2. The following depositions shall occur on the dates as set forth below and shall be deemed court-ordered:

| Date | Deponent(s) | Location |
|---|---|---|
| January 11-13, 2011 | Beth Newsom, Mary Warren, & Carolyn Randolph | Texas |
| January 25, 2011 | Jill Stephenson | Minnesota |
| January 16, 2011 | Edna Barber | Minnesota |
| February 1, 2011 | Liza Glass | New Jersey |
| February 4, 2011 | Scott Ulven | New Jersey |
| February 8, 2011 | Michael Strulowitz | New Jersey |
| February 10-11, 2011 | Caitlyn Irby (Rule 30(b)(1) & (b)(6)) | New Jersey |
| February 15-16, 2011 | Robert Cicchi (Rule 30(b)(6)) | New Jersey |
| February 28 and March 1, 2011 | Corbin Connell (Rule 30(b)(6)) | New Jersey |

March 15, 2011          Mary Paulette (Rule 30(b)(6))                          New Jersey

3.  No later than **January 4, 2011**, the parties shall provide the date and location for the deposition of Ross Hansen and the names of other individuals who will serve as Rule 30(b)(6) witnesses to testify about remaining topics, including the topics set forth in the October 27, 2010 Order concerning Interrogatory Nos. 5 and 6 and the December 6, 2010 Order concerning Interrogatories Nos 1 and 2;

4.  No later than **January 10, 2011**, the plaintiff shall complete its search for and production of documents that are responsive to the discovery demands, as modified by the Orders, in the following custodians electronic and paper files: Ross Hansen, Jason Croft, Wayne Arzberger, and Mark McGuire and, based upon the representation that the following are akin to "data processors, the files of the following custodians need not be searched: Ces Batuto, Hanna DeGuzman, Robert Paredes, Lara Serna, and Carmi Reloj;

5.  No later than **January 3, 2011**, the plaintiff shall notify the defendants if they oppose searching the paper and electronic files for the production of documents that are responsive to the discovery demands, as modified by the Orders, in following custodians electronic and paper files: Royce Imhoff, Steven Dansker, Ray Sawicki, Chris Ayers, Terri Mills, Jon Kvello, Rachel Soluyo, Scott Brasington, Sarah Wickes, Charlotte Swanks/Charlotte Ford, Susan Umbehant, Tom Geiger, and certain members of the legal department.  If there is an objection, the plaintiff shall provide the specific reason.  If there is no objection, then the production of the documents shall be completed no later than **January 10, 2011**;

6.  In accordance with the agreement of the parties, no later than **December 17, 2010**, plaintiff shall provide the list of October 27, 2010 court-ordered list of employees whose files were searched as a result of the directive in the October 27, 2010 Order and searched before the date of the October 27, 2010 Order;

7.  The plaintiff shall produce Caitlyn Irby to testify as a Rule 30(b)(6) witness concerning plaintiff's search for documents reflecting annuities sold to or that American General proposed to sell to Canyon Funding Trust, including communications with representatives of Canyon Funding Trust and communications with AIG about the life insurance policies for Mr. Goldberg (other than communications with counsel concerning this litigation) and the results of the search.  The plaintiff shall pay for two hours of the reasonable attorneys fees that defendants will expend to cover this topic at her deposition and for having to raise this issue in the December 17, 2010, submission;

8.  No later than **January 10, 2011**, the plaintiff shall produce reflecting the annuities sold to, on behalf of Canyon Funding or via Canyon Funding for the individuals identified on Bates Nos. AG2340-2345;

9.  The plaintiff shall produce Brad Gabel, Liza Glass, and Mark Childs as Rule 30(b)(6) witnesses to testify about the search for documents embodying communications with AIG about the policies offered to Mr. Goldberg.  The plaintiff shall pay the reasonable attorney's fees and

costs for these depositions;

10. The Certification of Robert Lesko is struck pursuant to L. Civ. R. 7.2(a) and because it fails to be from a person with knowledge who can be examined by adverse counsel at a deposition. No later than **January 6, 2011**, the plaintiff shall produce a certification as required by the October 27, 2010 Order from a person with knowledge regarding the search for documents embodying communications with AIG about any life insurance policy insuring Mr. Goldberg and shall respond to the subjects identified on Page 16 at paragraph 2 of the December 17, 2010 joint submission and specifically state whether or not the plaintiff has possession custody or control over such documents;

11. In accordance with the agreement of the parties, no later than **January 10, 2011**, the plaintiff shall provide a certification to its amended responses to the interrogatories and the parties shall re-review their respective privilege logs and produce logs that fully comply with L. Civ. R. 34.1 and Fed. R. Civ. P. 26(b)(5);

12. The request for sanctions is granted as follows: (1) plaintiffs shall pay the reasonable attorney's fees for the depositions as set forth above and (2) plaintiff shall pay one-half of the reasonable attorney's fees defendants expended for the submission of the December 17, 2010 letter concerning compliance with the October 27, 2010 Order that directed searches of custodians' files. Payment shall be made no later than **January 10, 2011**;

## IT IS FURTHER ORDERED that:

### I. COURT DATES

1. There shall be telephone status conferences before the Undersigned on **TO BE SET IF REQUESTED**. Plaintiff shall initiate the telephone calls.

2. There will be a settlement conference before the Undersigned on **TO BE SET IF REQUESTED**. Trial Counsel and clients with full settlement authority must attend the conference. If the trial counsel **and** client with full settlement authority do not appear, the settlement conference may be cancelled or rescheduled and the noncompliant party and/or attorney may be sanctioned, which may include an assessment of the costs and expenses incurred by those parties who appeared as directed.

3. The final pretrial conference shall be conducted pursuant to Fed. R. Civ. P. 16(d) on **June 30, 2011 at 10:00 a.m.** The Final Pretrial Conference will occur even if there are dispositive motions pending. The Court will adjourn the Final Pretrial conference <u>only</u> if the requesting party makes a compelling showing that manifest injustice would otherwise result absent adjournment.

### II. DISCOVERY AND MOTION PRACTICE

4.      a. Fed. R. Civ. P. 26 disclosures are to be exchanged on or before **deadline passed.**

b. No later than **deadline passed**, the parties shall submit a proposed discovery confidentiality order and certification as required by Local Civ. R. 5.3[1].

5.      Discovery necessary to engage in meaningful settlement discussions: none.

6.      The parties may serve interrogatories limited to **25** single questions including subparts and requests for production of documents on or before **deadline passed,** which shall be responded to no later than **deadline passed.**

7.      Absent agreement of counsel or order of the Court, the number of depositions to be taken by each side shall not exceed **20**. No objections to questions posed at depositions shall be made other than as to lack of foundation, form or privilege. See Fed. R. Civ. P. 32(d) (3) (A). No instruction not to answer shall be given unless a privilege is implicated. The depositions are to be completed no later than **March 31, 2011.**

8.      Fact discovery is to remain open through **March 31, 2011.** No discovery is to be issued or engaged in beyond that date, except upon application and for good cause shown.

9.      Counsel shall confer in a good faith attempt to informally resolve any and all discovery disputes before seeking the Court's intervention. Should such informal effort fail to resolve the dispute, the matter shall be brought to the Court's attention via a joint letter that sets forth: (a) the request, (b) the response; (c) efforts to resolve the dispute; (d) why the complaining party believes the information is relevant and why the responding party's response continues to be deficient; and (e) why the responding party believes the response is sufficient. No further submissions regarding the dispute may be submitted without leave of Court. If necessary, the Court will thereafter schedule a telephone conference to resolve the dispute.

No discovery motion or motion for sanctions for failure to provide discovery shall be filed before utilizing the procedures set forth in these paragraphs without prior leave of Court.

Any unresolved discovery disputes (other than those that arise during depositions) must be brought before the Court no later than **deadline passed.** The Court will not entertain applications concerning discovery matters, informally or otherwise, after this date. If an unresolved dispute arises at a deposition, then the parties shall contact the Chambers of the Undersigned for assistance during the deposition.

10.     Any motion to amend pleadings or join parties must be filed by **deadline passed.**

11.     All dispositive motions shall be discussed in advance of filing with the Undersigned

_____

[1] If a party seeks to file under seal information submitted in connection with a request for non-discovery relief, then the party shall: (1) consult Local Civ. R. 5.3 and (2) contact the Chambers of the Undersigned for instructions regarding the format for presenting such a motion.

either in person or by teleconference. Unless the parties notify the Court that expert discovery is needed to file such motions, any and all dispositive motions must be filed no later than **May 27, 2011** and must be comply with Local Rule 7.1. No pretrial dispositive motions will be entertained after that date. Any responses shall be submitted no later than **June 6, 2011** and any replies shall be submitted no later than **June 13, 2011.** The return date shall be **June 20, 2011** before the Hon. Faith S. Hochberg. Her Honor's chambers will advise the parties if oral argument will be required.

## III. EXPERTS[2]

12.     All affirmative expert reports shall be delivered by **April 5, 2011.**

13.     All responding expert reports shall be delivered by **May 5, 2011.**

14.     a. All expert reports are  to be in the form and content as required by Fed. R. Civ. P. 26(a) (2)(B).  No expert shall testify at trial as to any opinions or base those opinions on facts not substantially disclosed in the experts report.

    b. All expert depositions shall be completed by **May 20, 2011.**

    c. Daubert motions shall be filed no later than **May 27, 2011.**

## IV. FINAL PRETRIAL CONFERENCE

15.     The final pretrial conference shall be conducted pursuant to Fed. R. Civ. P. 16(d) on **June 30, 2011 at 10:00 a.m.** The final pretrial conference will occur even if dispositive motions are pending.  The Court will adjourn the Final Pretrial conference <u>only</u> if the requesting party makes a compelling showing that manifest injustice would otherwise result absent adjournment.

16.     Not later than **20 working days**  before the pretrial conference, the parties shall exchange copies of all proposed trial exhibits. Each exhibit shall be pre-marked with an exhibit number conforming to the party's exhibit list.

17.     All counsel are directed to assemble at the office of Plaintiff's counsel not later than **ten (10) days** before the pretrial conference to prepare the proposed Joint Final Pretrial Order in the form and content required by the Court.  Plaintiff's counsel shall prepare the Joint Pretrial Order and shall submit it to all other counsel for approval and execution.

18.     With respect to non-jury trials, each party shall submit to the District Judge and to opposing counsel proposed Findings of Fact and Conclusions of Law, trial briefs and any hypothetical questions to be put to an expert witness on direct examination.

19.     The original of the Final Pretrial Order shall be delivered to the CHAMBERS of the

---

[2]The parties shall provide the experts information on a rolling basis so that they can produce their expert reports by the deadlines set forth herein.

Undersigned no later than **June 21, 2011 at 3:00 p.m.** All counsel are responsible for the timely submission of the Pretrial Order.

20.    The Court expects to engage in meaningful settlement discussions at the final pretrial conference. Therefore, trial counsel who actually has full settlement authority must attend the conference and clients or other persons with full settlement authority must be available by telephone.

## V. MISCELLANEOUS

21.    The Court may from time to time schedule conferences as may be required, either <u>sua</u> <u>sponte</u> or at the request of a party.

22.    Since all dates set forth herein are established with the assistance and knowledge of counsel, there will be no extensions except for good cause shown and by leave of Court, even with consent of all counsel. Any request to extend any deadline or to adjourn a court event shall be made no later than three days before the scheduled date and shall reflect: (1) the good cause the requesting party believes supports the extension or adjournment and (2) whether or not all parties consent to the request. Absent unforeseen emergent circumstances, the Court will not entertain requests to extend deadlines that have passed as of the date of the request.

23.    A copy of every pleading, document or written communication with the Court shall be served on all other parties to the action. Any such communication which does not recite or contain a certification of such service may be disregarded by the Court.

24.    Absent permission from Chambers, communications to the Court by facsimile will not be accepted. All communications to the Court shall be in writing or by telephone conference.

25.    **FAILURE TO COMPLY WITH THE TERMS OF THIS ORDER   MAY RESULT IN SANCTIONS.**

s/Patty Shwartz
**UNITED STATES MAGISTRATE JUDGE**

# EXHIBIT J



**LIPSIUS –BENHAIM**
**LAW, LLP**

14 Penn Plaza, Suite 500
New York, New York 10122
212.981.8440
Facsimile 212.695.6602
www.lipsiuslaw.com

DAVID BENHAIM
Direct Line: 212-981-8446
Email: dbenhaim@lipsiuslaw.com

September 26, 2011

**VIA FEDERAL EXPRESS**

Honorable George A. Yanthis
United States Magistrate Judge
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

       Re:   **American General Life Insurance Co. v. Spira**
              **Docket No. 7:08-cv-06843**
              **Our File No. 4227.0001**

Dear Magistrate Judge Yanthis:

        We write with respect to a significant failing in American General's discovery responses. American General has not produced a single email in connection with this action despite a request for such records. When we conferred with American General's counsel concerning this shortcoming, we were advised that American General has not even conducted a search for responsive emails and will not be producing emails because (1) we are far along in the litigation and (2) information from emails are sometimes entered by the note keeper into American General's note keeping system ("AWD"), and since notes were produced, emails need not be produced. American General's position is unsupported by the rules governing discovery and is yet another example of American General flaunting its contempt for the discovery process. It is respectfully submitted that American General be compelled to produce relevant unprivileged emails within 14 days.

**The Request**

        In the Request for Documents served by the Trust on October 27, 2009, the Trust requested:

        2.   All Documents Concerning the 2005 Spira Policy.

        5.   All Documents Concerning Simon Spira or Diana Spira, including, without limitation to, (i) Documents Concerning or relating to any policy of insurance issued by AIG insuring the life of Diana Spira; (ii) Documents Communicated between AIG and Simon Spira; and (iii) Documents Communicated between AIG and Simon Spira; and

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 26, 2011
Page 2

       6.    Copies of any correspondence, or any Documents
Communicated, between AIG and any other Person (including, without
limitation to, agents, reinsurers, and brokers) Concerning Simon Spira,
Diana Spira or the 2005 Spira Policy.

The following definitions were used in the request:

"Communicated".  This term means transmitted orally, **electronically** or in
writing (in the form of facts, ideas, inquiries or otherwise) between any
Person as defined below.

"Document".  This term shall have its customary broad meaning and shall
include, without limitation, the following items, whether printed, recorded
or reproduced by any other mechanical process, or written or produced by
hand, whether on microfiche, **computer memory**, disk or tapes…

Emails concerning the insured and the policies at issue here are clearly within the bounds
of the requests. American General's reply, served three months later on January 29, 2010,
responded to each of the above demands, and indeed, to almost all of the requests, in
boilerplate fashion[1] as follows:

---

[1] American General responded in this exact fashion, calling the requests "interrogatories," to 13 of the Trust's 47
demands. The rest of American General's responses are almost identical.

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 26, 2011
Page 3

American General objects to this interrogatory on the grounds and to the extent that it is overly broad and unduly burdensome because it is not limited by relevant time period, specific description or any other reasonable limitation. American General further objects to this interrogatory on the grounds that it seeks disclosure of information that is not within the possession, custody or control of American General. American General further objects to this interrogatory on the grounds that it is premature insofar as it calls for the full and complete disclosure of all documents upon which American General might rely at the time of trial prior to the close of discovery. American General further objects to this interrogatory on the grounds that it calls for the disclosure of the mental impressions of counsel and trial strategy, and is therefore subject to the attorney work product doctrine. American General further objects to this interrogatory on the grounds that it calls for information the disclosure of which would violate the attorney-client privilege. American General further objects to this interrogatory on the grounds and to the extent that it seeks information that is neither relevant to the claims or defenses asserted by either party in connection with the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiver of any objections, American General refers defendants to the relevant, non-privileged portions of the claim and underwriting files pertaining to the Policy at issue, as well as documents referenced in connection with American General's Initial Disclosures in connection with this matter, which may contain documents responsive to this request.

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 26, 2011
Page 4

We first alerted American General of its failure to respond to the requests in a series of communications which resulted in a letter to the Court dated May 17, 2010. In its hearing of August 27, 2010, this Court did not address these concerns and suggested that for the remaining discovery disputes not addressed in the hearing, the parties meet and confer. On August 2, 2011, the Court entered an order memorializing the August 27, 2010 order. On Thursday, September 22, 2011, counsel for both parties exchanged emails concerning unproduced emails. Counsel for American General's final response was as follows:

Thanks for your explanation. I think I understand your position. There are two problems with your request. First, it is a little late in the game to be asking for it now. Second, and more important, the request seeks to impose a substantial burden without reasonable justification. That is, the burden of the search would outweigh the probative value of the documents, if any, that are likely to be revealed by the search.

You do have an obligation to demonstrate that the probative value of what you seek outweighs the burden imposed upon American General in obtaining it for you. What you are asking for is a guaranty that there are no emails that mention Spira to or from anyone at American General other those contained in the policy files already produced. That would require a broad search of American General's electronic database, which as I am sure you can appreciate is very large. Such a search would be burdensome and costly. We believe the burden is not justified because there has been no indication that any emails relevant to the Spira policies were generated by American General but not saved into AWD or otherwise inserted into the appropriate file. There is always that *possibility*, but that is not enough to justify the burden. In fact, on the contrary, there is good reason to expect that all emails relevant to the Spira matter were saved into AWD in the ordinary course of business. This further militates against imposing this broad burden upon American General.

I gather that your understanding of American General's procedure concerning saving emails in AWD is based upon testimony from specific underwriters in other cases. I also suspect that those underwriters also testified that it is company policy to save all relevant emails in the appropriate file. It is also company policy and procedure to maintain all documentation relevant to a specific policy in the file correlating to that specific policy. Therefore, the presumption is that all documents relevant to the underwriting of the Spira policies are contained in the Spira underwriting file maintained in the ordinary course of American General's business. The same is true for other aspects of business pertaining to a specific policy, such as policyholder services and claims. For this reason, we can and should reasonably assume that all documents relevant to the

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 26, 2011
Page 5

policies have been produced within the relevant policy files. If you wish to impose the burden of proving beyond doubt that no documents exist outside the policy files because of some deviation from procedure, it is incumbent upon you to demonstrate that such a deviation occurred or otherwise demonstrate a substantial need for such conclusive proof. If you have reason to believe that the company policy and procedure regarding preservation of emails was not followed in connection with the Spira policies, then there might be a need for the search and justification of the burden.

In any event, even if there is a need for the discovery sufficient to justify the burden, it is also incumbent upon you to limit the scope of the request so as to contain the burden.

For these reasons, we request that you please articulate any reason why you believe emails relevant to the Spira policies were actually not preserved in AWD or otherwise inserted in the relevant policy files. We also ask that you confer with us regarding the scope of the additional search that you now request in order to limit and curtail the burden upon American General.

## Legal Analysis

The District Court for the Southern District of New York has led the nation in recognizing the importance of e-discovery in modern litigation and paving the way for its production. See, *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003); *Zubulake v. UBS Warburg LLC*, 230 F.R.D. 290 (S.D.N.Y. 2003); *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280 (S.D.N.Y. 2003).

As the Honorable George A. Yanthis recognized in 2007, "e-mails sent or received by Defendants relating to the issues herein could constitute important relevant evidence and are reasonably calculated to lead to admissible evidence. It has not been demonstrated that said information is reasonably available from any other easily accessed source. The discovery requests are specific. The resources of the parties are not an issue. Accordingly, the Court directs that the Defendant restore the backup tapes for the time period from August 2004 through March 2005 to produce the requested non-privileged documents." *In re Veeco Instruments, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 23926 (S.D.N.Y. Mar. 30, 2007). Statistically, "the use of email by professionals has increased 78 percent over the past five years. Nearly 83 percent surveyed use email as a primary communication tool for business." How We Work: Communication Trends of Business Professionals (2010) (http://www.accountingweb-cgi.com/whitepapers/How-We-Work.pdf). Indeed, a litigant that refuses to produce emails is essentially refusing the production of an overwhelming majority of its communications concerning an issue.

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 26, 2011
Page 6

    Here, American General claims that "it is a little late in the game to be asking for it now." American General's position is patently offensive. The documents were requested on October 27, 2009, almost two years ago. In fact, the emails should have been produced as part of American General's Rule 26 production – which contains an ongoing obligation to supplement responses as they become available throughout litigation. The only reason emails have not been produced is because American General chose to play "hide the ball – catch me of you can" discovery and failed to comply with its obligations. Moreover, in May 2010 these demands were the subject of a request made to this Court - which the court addressed in an order entered August 2, 2011. In any event, discovery is still ongoing and American General has failed to produce a single witness noticed for deposition. In fact, American General only responded to certain discovery responses on September 23, 2011. The emails should have been produced two years ago and American General's cry concerning timeliness "is reminded of the old saw about the child who murders his parents and then asks for mercy because he is an orphan." *Fog Cutter Capital Group v. SEC*, 474 F.3d 822, 826 (D.C. Cir. 2007).

    American General's claim that production of the AWD notes excuses its failure to produce emails is unsupported by the facts or the law. Firstly, the AWD notes do not contain emails. Instead, users can elect to save information from emails, save portions of emails, or not enter any information concerning emails into AWD. A sample of an AWD note referencing an email:

```
Begin Date:        2006-05-19          Flags:
Begin Time:        16:05:12            DTM Job Name:
User Id:           M05PI17            DTM Return Code:
Workstation Id:                       DTM Task Name:
Business Area:                        DTM Next Task:
Type:                                 End Date:      2006-05-19
Status:                               End Time:      16:05:12
Queue:
User Name:         Wood, Pat
DTM Description:
  Comments:          I emailed dfeller@bchlife.com - o/sing req's needed by 5/28/06 or we will nto
                     the file.
```

    Apparently, Pat Wood, an underwriter at American General, sent an email to dfeller@bchlife.com and referenced the email in the AWD notes. But the note itself does not contain the actual email but rather Pat Wood's code words and shorthand describing a request made in an email. Without the actual email, it is impossible to tell what the request was, what the response, if any, was, to whom the email was sent and the sum and substance of the conversation. All we have is Pat Wood's cryptic code concerning some email that was sent. Had Pat Wood not chosen to enter these "comments" we would not even have that. In fact, Ms. Wood, or any other American General employee, could have simply not entered any notes concerning an email. It is entirely up to the discretion of the end user to choose what to enter into AWD and how to enter it. Evidence of the fact that most emails do not even result in a note entry in the AWD system is the fact that there are very few notes referencing an email sent or received.

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 26, 2011
Page 7

In any event, even if all emails resulted in notes entered, AWD notes are not emails, the communications that defendants requested and are entitled to.

American General's general claim that the discovery would be burdensome and costly as "American General" is "very large" must also fail. Here, American General has not even made a plea to shift the cost but simply refuses to conduct the search and further refuses, other than in general terms, to specify what the burden might be. Moreover, even if an electronic search of the entire company may be burdensome or costly, which American General has not shown, at the very least, American General should have searched the records of those individuals involved in the Spira matter. Instead, it simply did nothing.

American General has attempted this manipulation in the past. In *U.S. Life v. Grunhut*, Index No.: 600550/2007 (N.Y. Sup. 2007), American General refused to produce emails, making the same lame excuse. On March 19, 2011, Judge Edmead ordered American General to produce all emails using the name of the insured and the policy numbers as search terms. Exhibit A. See, also, American General Life Inc. Co. v. Sussex 130 LLP, 2:09-cv-05097-FSH -PS (Document 104 Filed 12/20/10) (Court ordered emails to be searched and sanctioned American General for opposing the search). Exhibit B.

The court's analysis in *Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D.350 (W.D.N.Y. 2011) is persuasive. There, the court was presented with "[t]he latest dispute in this case relates to U.S. Telesis's claim that Global Crossing has withheld relevant internal emails from the 2004 period regarding the Concurrence Agreement." It was admitted that "Global Crossing did not search for archived electronically stored information in responding to Plaintiffs' discovery demands because of the effort and expense of doing so." Global Crossing also claimed that the request for emails, made after the close of discovery and after motions for summary judgment were filed, was untimely. The court noted that "Despite the frequency and scope of those disputes, plaintiffs never raised any issue of the adequacy of Global Crossing's production of internal emails or other electronically stored information." In sanctioning Global Crossing for its failure to produce the emails, the court noted that the emails were not even requested but should have been produced as part of a party's ongoing Rule 26 obligation ruling "Global Crossing must supplement its production under Rule 26(e) by searching its archived databases for internal email communications from 2004 relating to the Concurrence Agreement and producing any such emails to U.S. Telesis. I find no justification on the record before this Court to shift all or part of the cost to U.S. Telesis." See, also, *In re Veeco Instruments, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 23926 (S.D.N.Y. Mar. 30, 2007) which Judge Yanthis refused to consider fee shifting without a detailed explanation of:

1. The extent to which the request is specifically tailored to discover relevant information;

2. The availability of such information from other sources;

3. The total cost of production, compared to the amount in controversy;

LIPSIUS-BENHAIM LAW, LLP

Honorable George A. Yanthis
September 26, 2011
Page 8

4. The total cost of production, compared to the resources available to each party;

5. The relative ability of each party to control costs and its incentive to do so;

6. The importance of the issues at stake in the litigation; and

7. The relative benefits to the parties of obtaining the information.

Here, American General has not presented any explanation concerning any of these factors. It is respectfully submitted that a search of the policy numbers and insured last name will not be burdensome or costly. Accordingly, American General should be required to produce all relevant emails within 14 days.

Very truly yours,

LIPSIUS-BENHAIM LAW, LLP

David BenHaim

DBH:bl
Enclosure

cc.:   Robert P. Lesko, Esq.

# EXHIBIT K

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:    **HON. CAROL EDMEAD**       PART _35_

               *Justice*

_US Life Insur._

                  INDEX NO. _600550/07_

            - v -       MOTION DATE _3/9/11_

_Grunhut, Lazar_       MOTION SEQ. NO. _017_

                  MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:** ☐ Yes   ☑ No

**Upon the foregoing papers, it is ordered that this motion**

Motion sequence 017 is resolved as follows, in accordance with the so-ordered transcript (Court Rptr. Laura L. Ludovico):

ORDERED that, within 45 days, plaintiff shall produce all emails related to the five policies of Piri Grunhut; using the search for her name and policy numbers. Plaintiff shall provide a list of all employees who have substantive contact with the five policies within 30 days; and it is further

ORDERED that, request to produce notes, memoranda and other documents related to tax returns is denied without prejudice to move to reargue, only if the substantial number of the individuals of effected group, identified in this court's previous order to produce applications, includes the individuals to whom the tax policy at issue directly applies; and it is further

ORDERED that defendants' request for policies was unwarranted and exceeding the court's directive at this juncture. However, the request for information related to whether the applications produced resulted in the issuance of policies is granted and the information shall be produced within 30 days ; and it is further

Dated: ___3/9/11___          _____

                                    J.S.C.

**Check one:** ☐ FINAL DISPOSITION   ☑ NON-FINAL DISPOSITION

**Check if appropriate:** ☐ DO NOT POST      ☐ REFERENCE

☐ SUBMIT ORDER/ JUDG.      ☐ SETTLE ORDER/ JUDG.

*(left margin, vertical text:)* MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

ORDERED that, within 45 days, counsel for plaintiff shall provide a fact Affidavit from an employee that all responsive documents, requested or relied upon during underwriting, within possession, custody or control of plaintiff, have been produced; and it is further

ORDERED that plaintiff shall produce Mr. Joe Townsend for deposition within 60 days. Request for deposition of Mr. Cicchi is premature at this juncture; and it is further

ORDERED that the cut-off for discovery is lifted. No other cut-off dates without an order of this court.

This constitutes the order of the court.

Dated _3/19/11_          ENTER: _____, J.S.C.

HON. CAROL EDMEAD

Check one:          ❏ FINAL DISPOSITION          ❏ NON-FINAL DISPOSITION

Check if appropriate:          ❏ DO NOT POST          ❏ REFERENCE

# EXHIBIT L

## David BenHaim

---

| | |
|---|---|
| **From:** | David Benhaim [dbenhaim@lipsiuslaw.com] |
| **Sent:** | Friday, November 11, 2011 10:54 AM |
| **To:** | 'Lesko, Robert'; 'Ira S. Lipsius'; 'Peck, Karen D.'; Daniel Louis Grossman, Esq. |

**Subject:** RE: 4206.0002; Ellman

Rob:

Ira's statements are not without merit.

We met and conferred on July 18, 2011 and again on July 28, 2011 concerning discovery that remain outstanding from May 2010. During the conferences, the requests were narrowed, qualified or withdrawn. You advised that AIG will consider the requests and take them under advisement. On August 17, 2011, you advised that AIG will produce if we enter into a confidentiality agreement and Karen forwarded me one for our consideration. Later that day, we executed the agreement and AIG produced *87* more papers falling far short of the myriad of documents and categories of documents that remain outstanding.

On September 28, 2011, we wrote to you seeking the outstanding discovery outlining a list of 16 categories of documents that remain unanswered and requested that AIG advise us within seven days whether it will voluntarily produce the documents. On September 30, 2011, you advised that it will respond by the middle of October. On November 1, 2011, I wrote you.

> It has now been a month since my letter to you concerning long outstanding discovery and two weeks after the date we were told to expect a response. I do not want to be accused of hastily running to the Court but am at a loss as to what to do in order to get your client to voluntarily participate in discovery. Kindly advise whether your client intends on producing the documents listed in the letter.

On November 3, 2011, AIG responded with *19* pages of documents, none of which even came close to responding to the 16 categories of documents that remain outstanding, most of which are fundamental to our ability to defend and prosecute the claims. If AIG is going to produce these documents, kindly advise by noon today, when AIG will be producing them. Otherwise we will asking the court to compel AIG to produce and for the costs involved in making the application.

The Trust, on the other hand, has produced every responsive document in its possession and control. The only item we are waiting on is an authorization for bank records, which you should get shortly.

Regards,
David


**David BenHaim, Esq.**
**Lipsius - BenHaim Law LLP**
14 Penn Plaza, Suite 500 | New York, NY 10122
Tel: 212.981.8446        | Fax: 212.695.6602

CONFIDENTIALITY NOTICE: The information contained in this e-mail is confidential, may be legally privileged, and is intended only for the use of the party named above. If the reader of this e-mail is not the intended recipient, you are advised that any dissemination, distribution, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify us by telephone at 212.981.8440 and destroy this e-mail.

---

**From:** Lesko, Robert [mailto:Robert.Lesko@wilsonelser.com]
**Sent:** Thursday, November 10, 2011 6:00 PM
**To:** Ira S. Lipsius; Peck, Karen D.
**Cc:** David Benhaim
**Subject:** RE: 4206.0002; Ellman

Ira:

We will provide the recording in accordance with the order.  Moreover, we have already produced substantial supplemental discovery in response to your requests.  Therefore, your self-serving statements are without merit.  Your clients, on the other hand, are in violation of their own discovery obligations as has been previously documented.  And we would like an opportunity to discuss that with you further before bringing our concerns tot he court.  So, you do have a choice "but to go to the court."  In fact, you have an obligation to meet and confer in good faith.  I suggest that before you go running to the court, you make a good faith effort to actually meet and confer, rather than sending terse and inaccurate emails like the one below.  We would welcome such an overture from you, however, should you choose not to accept our invitation to engage in a good faith meeting and conference, we would also welcome the opportunity to present the issues to the court.

I look forward to hearing from you soon regarding your availability for a conference.

Regards,

Robert Lesko
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
200 Campus Drive
Florham Park, NJ 07932-0668
973-735-5779 (Direct)
973-624-0800 (Main)
973-624-0808 (Fax)
robert.lesko@wilsonelser.com

---

**From:** Ira S. Lipsius [mailto:iral@lipsiuslaw.com]
**Sent:** Thursday, November 10, 2011 5:11 PM
**To:** Peck, Karen D.; Lesko, Robert
**Subject:** 4206.0002; Ellman

Your failure to produce the Larry Ellman recording, in contempt of the court's order, and your failure to produce documents, including the failure to produce a single email, despite numerous discussions and letters has left us with no choice but to go to the court.

--
Ira S. Lipsius
Lipsius-Benhaim Law LLP
14 Penn Plaza
New York, NY 10122

212 981 8440  ext. 202
iral@lipsiuslaw.com

This communication was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding tax penalties. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)
*************************************************************

CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not

11/11/2011