# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

200 Campus Drive, Florham Park, New Jersey 07932-0668   Tel: 973.624.0800   Fax: 973.624.0808
One Gateway Center, Suite 2600, Newark, New Jersey 07102

*Albany • Baltimore • Boston • Chicago • Dallas • Denver • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • West Palm Beach • White Plains
Limited Liability Partnership of NY
Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

www.wilsonelser.com

JAMES CRAWFORD ORR
WILLIAM J. RIINA
THOMAS F. QUINN
BARBARA HOPKINSON KELLY
CAROLYN F. O'CONNOR
KENNETH M. BROWN
DANIEL F. FLORES
KURT W. KRAUSS
MICHAEL J. NAUGHTON
JOSEPH A. GALLO
ROBERT A. BERNS
KELLY A. WATERS
BRIAN J. WHITEMAN
SUSAN KARLOVICH
MATTHEW S. MAHONEY
KEVIN C. DONOVAN
JAMES S. REHBERGER

JOSEPH T. HANLON
ROBERT LESKO
RENEE J. SHERMAN
ROBERT T. GUNNING
GREGG S. KAHN
MAXWELL L. BILLEK
JOANNA PIOREK

OF COUNSEL
ROBERT C. NEFF, JR.
JOHN P. O'TOOLE
SUNA LEE
CHRISTOPHER W. McCLANAHAN
LINDA K. SMITH
TANA BUCCA
PAUL E. PARAY
KIM M. CONNOR

KURT H. DZUGAY
GINA CALABRIA
JOHN W. WILLIAMS
SHAUN S. McGREGOR
PETER A. SWIFT
ERIC T. EVANS
GREGORY T. FOOTE
JULIE VON BEVERN
BRUCE W. MCCOY, JR.
DANIEL E. ZEMSKY
C. TY NGUYEN
JESSICA BRENNAN
KAREN D. PECK

JOHN W. ROESER
STEPHANIE RUFFO
LOUIS PERAGGINE
ANDREW F. BAIN
BRENDAN P. MCCARTHY
CHARLES KELLETT
PAUL J. MILLER
ANTHONY RAPA
AMEE SAMPAT
ANTHONY J. DRAGONE
EMILY WEISSLITZ
JOBIL P. CYRIAC

KEITH G. VON GLAHN (1952-2007)

November 28, 2011

**Via ECF**
Hon. Tonianne J. Bongiovanni, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

      Re:    *American General Life Ins. Co. v. Ellman Savings Irrevocable Trust et al.*
              **Docket No. 08-cv-5364**
              **Our File No. 07478.00537**

Dear Judge Bongiovanni:

      We write on behalf of plaintiff American General Life Insurance Company ("American General") to apprise the Court of the status of discovery in advance of the telephone conference scheduled for November 30, 2011 and to respond to correspondence dated November 11, 2011 from Ira Lipsius, Esq. Unfortunately, we have been unable to complete discovery in accordance with the current scheduling order, and we respectfully request that Your Honor consider further adjournment of the discovery deadline to allow for the completion of non-party discovery and depositions.

      American General has not been able to commence depositions because non-party witness Larry Ellman has refused to appear pending retention of counsel; he has since retained counsel and his deposition is scheduled for December 5. Defendants have voluntarily chosen not to proceed with depositions they have requested. American General is also experiencing difficulty obtaining documents and deposition form defendant Israel Kugielsky. Finally, American General may require assistance to obtain documents from additional non-party sources pertaining to financial accounts (TD Bank) from which premiums were paid for the life insurance policy at issue in this matter ("the Policy") as well as the current ultimate beneficiary of the Policy (Fifth

1294442.1

To:
November 28, 2011
Page 2

Season Financial/Levitin).

    We disagree with the statements set forth in Mr. Lipsius' November 11 letter regarding American General's compliance with its discovery obligations. Since trust counsel's court-ordered participation in a meeting and conference on July 28, our office has been working diligently with American General to investigate and respond to several categories of discovery despite valid objections, and we have made several supplemental productions of documents and information by way of compromise since the trust defendants' last premature discovery submission of June 25. Meanwhile, we have repeatedly requested that trust defendants' counsel engage in actual discussion of persisting discovery issues rather than sending terse, threatening correspondence. Once again, however, counsel has refused to meet and confer in good faith. There now remains in dispute only three categories of documents discussed in the July meeting and conference.

    Accordingly, we ask for the Court's assistance in compelling defendants' counsel to cooperate in American General's efforts to secure non-party discovery (including authorizations for records) so that depositions can proceed without further delay. We also ask for the Court's assistance in resolving, once and for all, any remaining issues regarding discovery addressed to American General.

**A.  Trust Defendants Should Be Compelled to Produce Authorization for Bank Records and Cooperate With American General's Subpoena to Fifth Season Financial (of which the Trustee is a Principal)**

    Trust defendants have not complied with American General's request for an authorization to release the Trust's bank records addressed to TD Bank. The request was made on October 10, 2011. We made inquiries on October 18 and 26. Finally, on November 11, trust counsel advised that we would have the authorization during the week of November 14. The authorization has not yet been provided.

    Non-party Fifth Season Financial is owned or controlled by the Trustee, Jeffrey Levitin. Fifth Season is the current beneficiary of the trust, and therefore, the ultimate beneficiary of the Policy at issue. American General served Fifth Season with a subpoena for documents and testimony on November 8, 2011. The documents were due to be produced under the subpoena on November 18, and the subpoena called for an appearance for testimony on November 23. We have not received any documents or other response to the subpoena.

**B.  Trust's Request to Compel Further Discovery Should be Denied Because the Trust Has Failed to Meet and Confer, and It Seeks Irrelevant Information that is Disproportionately Broad, Burdensome and Harassing.**

    Recall that this matter arose out of defendants' fraud and a pattern of racketeering activity in furtherance of the business of an enterprise to unlawfully obtain issuance of life insurance policies and payment of death benefits in contravention of state and federal statutes, common

law and public policy. American General brought this action seeking not only rescission of the Ellman Policy at issue, but also for compensatory and treble damages under the New Jersey Insurance Fraud Prevention Act and the Racketeer Influenced and Corrupt Organizations Act (RICO). In fact, this action is only one of four similar cases initiated by American General believed to involve the same common scheme and participants.

Defendants have attempted to turn the tables on American General by asserting bare allegations of fraud without good faith basis or evidentiary support. Defendants have sought (and to some degree succeeded) to disrupt the daily business of American General by burdening officers and employees with broad and burdensome discovery obligations. Defendants' motivation for such disruptive discovery was articulated by trust counsel in a similar fraud action brought by American General in the United States District Court for the Southern District of New York.

> Look. I want to give two events that happened in the last six weeks. On Friday afternoon, I received a check from American General in settlement of a case for $1.7 million[1] as the result of the Court, a district court, ordering them to produce their applications.

[**Exhibit A** at 51:16-20].

Defendants' real goal in seeking the discovery is to establish leverage for settlement through *in terrorem* discovery tactics. Meanwhile, the subject discovery will needlessly burden the parties and the Court by unnecessarily protracting discovery and the litigation. The Court should be particularly vigilant in this case to prevent such obvious abuse of the discovery process by defendants.

1. <u>American General Has Already Compromised Significantly.</u>

After a meeting and conference regarding discovery on July 28, in which this Court ordered trust counsel to participate, the trust identified 16 categories of documents that remained outstanding. American General has carefully considered each category, compromised as appropriate, and responded accordingly. American General has produced (or agreed to produce) documents in response to 11 categories, and advised that it possesses no documents responsive to 2 categories. American General has refused to produce documents in response to the remaining 3 categories of documents (other Rubin clients, other policy applications, and internal correspondence on underwriting requirements) for the reasons set forth below.

Included among the documents American General produced or agreed to produce are:

- the entire Policy file (application, underwriting, policy owner services, claims)
- commission statements pertaining to the Policy at issue

---

[1] Despite best efforts, including consultation with clients and other outside counsel allegedly involved in the purported settlement, we have been unable to verify this statement.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

1294442.1

To:
November 28, 2011
Page 4

- audio tapes of inspection telephone interviews
- underwriting guidelines relevant to the misrepresentations in the application
- field communications pertaining to STOLI/IOLI and insurable interest
- the Market Conduct Manual provided to producers
- marketing materials relating to the product at issue
- the 1980 Commissioner's Standard Ordinary table used in the pricing of premiums
- producer file for Chaim Rubin
- Professional Producer's Committee file for Chaim Rubin

In sum, American General has produced every document that it possesses in any way relevant to the producer and the Policy at issue, and more.

  2.  <u>Defendants Have Failed to Meet and Confer Regarding the Remaining Issues</u>

At no time has defense counsel made any attempt to discuss any of the disputed subject matter either in person or by telephone, despite invitations from this office to do so. Accordingly, counsel's request for relief in the November 11 should be denied.

Trust counsel previously has consistently refused to meet and confer with respect to discovery. In a court-ordered meeting and conference in July, the parties made substantial progress toward resolution of the disputes, and American General has since been engaged in research and production of additional documents pertaining to many of the narrowed requests. Trust counsel has expressed dissatisfaction with the pace of production by email, but has never lifted the telephone to call and discuss the issues personally. We have invited such discourse on several occasions including November 10, and November 11 [**Exhibit B**], but our invitations were rebuffed.

Defendants have similarly failed to confer with respect to their requested depositions. Defendants' *thirteen* deposition notices exceed the limit of ten depositions set forth by the Federal Rules of Civil Procedure. *See Fed. R. Civ. P.* 30(a)(2)(A)(i). By letter dated June 1, 2011, we requested that defendants identify only those witnesses that truly possess knowledge relevant to the issues presented in this action. [**Exhibit C**]. We suggested that this would enable us to more quickly and efficiently arrange for the depositions of appropriate witnesses. Insofar as the witnesses identified by defendants do not appear to have played any role in the subject transaction, we also requested that defendants proffer a basis upon which each person's testimony could be considered relevant to this matter. We discussed this issue with trust counsel during the July meeting and conference at which time trust counsel agreed to consider the list and advise which witnesses they truly wanted to depose. Trust defendants have not communicated with us regarding depositions at all since that time.

  3.  <u>Discovery Related to Policies Other than the Subject Policy Does Not Meet the Rule 26 Relevance Threshold</u>

To:
November 28, 2011
Page 5

To the extent that trust defendants' discovery may have some theoretical relevance to the issued at had, it should not be permitted because it would result in a disproportionate burden on American General and a waste of judicial resources; thus, pursuant to Fed. R. Civ. P. 26(c), American General should not be required to produce such discovery.

Pursuant to Rule 26, parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. *Fed. R. Civ. P.* 26(b)(1); *Padilla v. Price Toyota*, 2005 U.S. Dist. LEXIS 25720 (D.N.J. Oct. 28, 2005).

Despite the potentially broad scope of the rule, "to cast a wide net for discovery of information in the hopes that something of use may come back is the essence of a fishing expedition precluded by the rule of proportionality." *Prof'l Recovery Servs. v. GE Capital Corp.*, 2009 U.S. Dist. LEXIS 3889 (D.N.J. Jan. 15, 2009); *see also Robbins v. Camden City Bd. of Education,* 105 F.R.D. 49 (D.N.J. 1985) ("the Federal Rules of Civil Procedure…are concerned with preventing 'fishing expeditions,' discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests"); *Collens v. City of New York,* 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses"); *Tottenham v. Trans World Gaming Corp.,* 2002 U.S. Dist. LEXIS 11313, (S.D.N.Y. June 21, 2002) ("discovery … is not intended to be a fishing expedition . . . [and] requests cannot be based on pure speculation or conjecture."); *Messier v. Southbury Training School*, No. 3:94-CV-1706, 1998 WL 136170, at *6 (D. Conn. Jan. 30, 1998) (discovery "fishing expedition[s]" are "disfavored by courts") (citations omitted); 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2015, at 210 (2d ed. 1994) (courts faced with such requests should "assess the likelihood that the discovery actually will produce admissible evidence; [and] unless there is reasonable basis to predict that it will, discovery may be refused on that ground").

The discovery sought by defendants here does not meet the Rule 26 relevance threshold because it is not relevant to any party's claim or defense. The issues in the present case are (1) whether the Policy was obtained through material misrepresentations on the application for the Policy; and (2) whether the lack of insurable interest rendered the Policy void. As explained below, the discovery would not tend to prove or disprove that American General waived the requirement of insurable interest because: (1) lack of insurable interest is not waivable; and (2) even if it was, and even if American General waived insurable interest in other cases, such waiver would have no bearing *on this case.* Similarly, even if American General waived financial underwriting requirements in connection with the underwriting and issuance of another policy, such waiver has no bearing on *this Policy.* As a result, defendants' discovery request does not meet the relevance threshold of Rule 26.

    4.    <u>Discovery of Other Policies is Not Relevant Because The Requirement of Insurable Interest is Not Waivable</u>

Defendants seek documents on policies unrelated to the subject Policy, presumably in an

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
1294442.1

effort to illustrate American General's waiver insurable interest in connection with those policies. But the requirement of insurable interest is not waivable. A policy of insurance that lacks insurable interest is void as a matter of public policy. This is a general axiom of insurance law. *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 798 (6th Cir. 2009). "Such policies . . . . are, therefore, independently of any statute on the subject, condemned, as being against public policy." *Warnock v. Davis*, 104 U.S. 774, 779 (1881). *See also, Dunlap v. Great-West Life Assurance Co.*, 1995 U.S. Dist. LEXIS 6490 (D.N.C., March 30, 1995); *Chem v. New York Life Ins. Co.*, 1999 U.S. App. LEXIS 3101 (9th Cir., February 25, 1999); *Lowe v. Rennert*, 869 S.W.2d 199 (Mo. App. 1993); *Wood v. New York Life Ins. Co.*, 255 Ga. 300 (1985); *Beard v. The Amer. Agency Life Ins. Co.*, 314 Md. 235, 550 A.2d 677 (1988); *Bell v. National Life & Accident Ins. Co.*, 41 Ala. App. 94 (1960); *Geisler v. Mut. Ben. Health & Acci. Ass'n*, 163 Kan. 518 (1947); *Fowler v. The New York Indem. Co.*, 26 N.Y. 422, 423-424 (1863) (lack of insurable interest renders a policy a mere wager policy and therefore void as a matter of statute as well as independently of the statute, at common law).

Accordingly, New Jersey has a statutory requirement for insurable interest which prohibits any person from procuring or causing to be procured insurance upon the life of another unless the proceeds are payable to a person having an insurable interest in the insured when the contract is issued. N.J.S.A. § 17B:24-1.1(b).[2] Unless the owner of a life insurance policy falls within the categories of persons enumerated in the statute, insurable interest arises only where continuance of the insured's life is to the beneficiary's benefit, such as where the insured has an obligation to provide care and assistance. *Sovereign Camp of Woodman of the World v. Muth*, 109 A. 853 (N.J. Ch. 1920); N.J.S.A. 17B:24-1.1(a)(2) (insurable interest exists where there is expectation of pecuniary interest based upon continued life of the insured).

Because a policy that lacks the requirement of insurable interest is void as against public policy, an insurer cannot render the contract valid by consenting to a waiver of insurable interest. As one leading insurance treatise has stated:

> It is usually considered that the requirement of insurable interest is absolute and is not excused by the fact that the claimant may have acted in good faith or that the insurer had full knowledge of all the circumstances. Several leading courts have gone on record to the effect that the doctrines of waiver and estoppel have no application to such situations and cannot operate to excuse the lack of insurable interest.

---

[2] New Jersey has a particularly strong public policy against insurance fraud. In 1983, New Jersey's legislature enacted the Fraud Act "to confront aggressively the problem of insurance fraud" by, among other things, facilitating its detection and "requiring the restitution of fraudulently obtained insurance benefits" N.J.S.A. 17:33A-2. The Supreme Court of New Jersey has recognized that "[i]nsurance fraud is a problem of massive proportions that currently results in substantial and unnecessary costs to the general public in the form of increased rates. In fact, approximately ten to fifteen percent of all insurance claims involve fraud." *Merin v. Maglaki*, 126 N.J. 430, 436 (1992).

*See* 4f-109f *Appleman on Insurance* Section 2122. Indeed, this very basic rule of law has been in effect for over 130 years, thus evidencing the soundness of the position. *See Agricultural Insurance Company of Watertown, New York v. Charles Montague*, 38 Mich. 548, 1878 Mich. Lexis 114 (Sup. Ct. 1878) (holding that the law requires "that a person shall have an insurable interest before he can insure: a policy issued when there is no such interest is void, and it is immaterial that it is taken in good faith and with full knowledge. The policy of the law does not admit of such insurance, however willing the parties may be to enter into it. The doctrine of waiver has obviously nothing to do with such a case").

> 5. Discovery of Other Policies is Irrelevant Because Even if Waiver of Insurable Interest Requirement and/or Financial Underwriting Requirements Occurred as to Other Policies, Such Waiver would be Irrelevant to This Policy

Even assuming *arguendo* that insurable can be waived – which it cannot – the documents sought by defendants are nevertheless irrelevant because American General's waiver of the requirement of insurable interest in another case (even if it has occurred, which American General contends it has not) does not preclude American General (by waiver or otherwise) from requiring an insurable interest in *this case*. The circumstances relating to issuance of every application are unique in each case. A party to a contract enjoys the right to waive or otherwise forgo certain rights without a blanket waiver of such rights in all circumstances. *See, e.g., Nat'l Steel Corp. v. NLRB*, 324 F.3d 928 (7th Cir. 2003) ("a party to collective bargaining waives its right to bargain over an issue only by clearly and unmistakably expressing its intent to do so. The failure to demand bargaining in the past, without more, does not amount to waiver if it does not unmistakably show that the union intended to permanently give up its right to bargain in the future"); *In re Parker*, 2004 Bankr. LEXIS 1128 (Bankr. S.D. Ala. Mar. 3, 2004)("a vendor's acceptance of one or more payments subsequent to the time specified in the agreement does not necessarily waive his right to object to the vendee's delinquency as to future payments, or preclude him from insisting on strict performance in the future"). Thus, "waiver" of the requirement of insurable interest in other cases -- even if it were a possibility, which it is not -- would be nevertheless be irrelevant to this case.

> 6. Internal Correspondence Regarding American General's Underwriting Requirement of Tax Returns is Irrelevant Because it Occurred After the Policy Was Issued

The application for the Policy was first submitted to American General on November 9, 2005. All underwriting requirements had been submitted to American General, and the Policy was approved for issuance on March 14, 2006. The Policy was then issued and delivered on March 22, 2006. Two full months later, in mid-May 2006, American General announced a new interim underwriting requirement that all applications for the certain products insuring individuals aged 70 or older with face amount of $ 1 million or more must be accompanied by the last insured's last filed tax return. This underwriting requirement was, therefore, not applicable to the Policy at issue. It is, therefore, irrelevant to the decision to issue the Policy or the issues presented in this case. For this and other reasons, internal communication regarding

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

1294442.1

implementation of this interim requirement is irrelevant.

       7.      <u>The Requested Discovery, Even If Relevant, Would Result in a Disproportionate Burden on American General and a Waste of Judicial Resources</u>

Even if defendant's requested discovery meets Rule 26's relevance threshold, the requested discovery should still be denied under the provisions of Rule 26 because it would result in a disproportionate burden on American General and a waste of judicial resources. A court may limit discovery under certain circumstances even if the information sought otherwise meets the Rule 26 relevance threshold. Fed. R. Civ. P. 26(c); *see also Cooper Health Sys. v. Virtua Health, Inc.*, 259 F.R.D. 208 (D.N.J. 2009) ("Fed. R. Civ. P.26(b)(2)(C)(iii) provides that a court, on its own, must limit the frequency or extent of discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit"); *Padilla v. Price Toyota*, 2005 U.S. Dist. LEXIS 25720 (D.N.J. Oct. 28, 2005) ("in determining whether the production of discovery is appropriate under Fed. R. Civ. P. 26 the relevancy of the information must be balanced against the burdensomeness of its production"); *New York v. United States Metals Refining Co.*, 771 F.2d 796, 804 (3d Cir. N.J. 1985)("Rule 26 provides very broad discovery and gives the trial court wide discretion to manage the process"); *Fisher v. Borden, Inc.*, 1994 U.S. Dist. LEXIS 21275 (D.N.J. Oct. 28, 1994) ("the court may limit discovery on its own initiative"); *Gillette Co. v. Philips Oral Healthcare, Inc.*, 2001 U.S. Dist. LEXIS 18624 (S.D.N.Y. 2001) ("the decision whether to limit the open and potentially far-reaching discovery permitted under the Federal Rules of Civil Procedure is left to the discretion of the trial court, in light of the facts and circumstances of a particular case"). Rule 26 specifically permits a court to limit discovery in the interest of justice, "to protect a party or person from annoyance, embarrassment, oppression, or *undue burden or expense.*" *Wong v. Thomas*, 238 F.R.D. 548 (D.N.J. 2007) (emphasis added).

"[A] trial court has a duty, of special significance in lengthy and complex cases where the possibility of abuse is always present, to supervise and limit discovery to protect parties and witnesses from annoyance and excessive expense." *Dolgow v. Anderson*, 53 F.R.D. 661 (E.D.N.Y. 1971). For instance, in *Federal Ins. Co. v. Southwestern Wire Cloth, Inc.*, 1996 U.S. Dist. LEXIS 22001 (N.D. Okla. Dec. 9, 1996), the court, in reliance on Rule 26, denied defendant's motion to compel discovery relating to the insurer's treatment and/or litigation of claims filed by other insureds. "While the requested information may be relevant, there are so many variables in connection with other policies and other claims that the probative value of the requested discovery is likely to be minimal." *Id.* at *40. Thus, for example, in *Council Tower Ass'n v. Axis Specialty Ins. Co.*, 2009 U.S. Dist. LEXIS 36510 (E.D. Mo. Apr. 30, 2009), the court refused discovery regarding other policies reasoning that "[a] request for all bad faith claims, regardless of their disposition, is nothing more than a fishing expedition. The costs, including the potential extra discovery and satellite litigation that would accompany such an expedition, far outweigh any potential benefits." *Id.* at *2-*3.

Accordingly, even if the Court finds the discovery requested by defendants to be potentially relevant, the request should still be denied because it will likely result in burden and

expense for the parties and the Court that is disproportionate to the potential relevance. Defendants' discovery requests, as drafted, are disproportionately broad.

Moreover, to the extent that this Court may find that insurable interest and/or financial information is waivable on the part of the insurer, even if such a production revealed policies where American General appeared to waive such requirements because they were not contained in the application, that does not mean that the information was not otherwise obtained and considered by the underwriter during the pendency of the application. Additionally, defendants would still be required to establish American General's intent to waive in each case, the standard for which is particularly high. *Barker v. Wingo*, 407 U.S. 514 (U.S. 1972) ("waiver is an intentional relinquishment or abandonment of a known right or privilege. Courts should indulge every reasonable presumption against waiver"); *Sharrieff v. Cathel*, 574 F.3d 225 (3d Cir. N.J. 2009) ("to be express, a waiver of exhaustion must be clear, explicit, and unambiguous"). Thus, if American General is required to comply with defendants' request for production, this Court would have to preside over a mini-trial for each applicable application in order to ascertain the circumstances of the application and issuance of the policy in each case, and whether or not American General actually waived the requirement of insurable interest. All this would lead back to the beginning; that is, even if American General is found to have waived the requirement of insurable interest in one or more unrelated cases, that does not mean that American General waived the requirement of insurable interest *in this case*. The time and expense associated with producing and litigating the admissibility of such information therefore far outweighs its potential probative value.

\* \* \*

For all of the forgoing reasons, American General respectfully requests that the Court deny trust defendants' request for relief and order trust defendants to comply with requests for authorizations and non-party discovery over which the trust exercises direct control.

We thank the Court for its attention to this matter.

Respectfully,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP


*s/Robert P. Lesko*
Robert Lesko

RPL:kdp
cc: Ira Lipsius, Esq. (via ECF)
David BenHaim, Esq. (via ECF)
Daniel Grossman, Esq. (via ECF)

To:
November 28, 2011
Page 10

# Exhibit A

```
                                 106aameMS.txt
                                                                              1
        106aameMS
     1  UNITED STATES DISTRICT COURT
     1  SOUTHERN DISTRICT OF NEW YORK
     2  ------------------------------x
     2
     3  AMERICAN GENERAL LIFE INSURANCE
     3  COMPANY,
     4
     4                  Plaintiff,
     5
     5            v.                            08 Civ. 6843(KMK)(GAY)
     6
     6  DIANA SPIRA 2005 IRREVOCABLE
     7  LIFE INSURANCE TRUST, AARON
     7  AZRYLEWITZ, as Trustee, and
     8  SIMON SPIRA,
     8
     9                  Plaintiff.
     9
    10  ------------------------------x
    10
    11                                           White Plains, N.Y.
    11                                           June 10, 2010
    12
    12
    13  Before:
    13
    14              THE HONORABLE GEORGE A. YANTHIS,
    14
    15                                 Magistrate Judge
    15
    16                       APPEARANCES
    16
    17  WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
    17       Attorneys for Plaintiff
    18  ROBERT P. LESKO
    18
    19  SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH, LLP
    19       Attorneys for Defendants
    20  IRA S. LIPSIUS
    20
    21  PROSKAUER ROSE
    21       Attorneys for LEOPOLD FREUND and PARKWOOD REALTY, LLC
    22  MARK D. HARRIS
    22
    23
    23
    24
    25  Digital recording.
                        MARY M. STATEN, CSR, RPR, RMR
                              (914) 390-4027
                                                                              2
        106aameMS
     1            THE DEPUTY CLERK:  In the matter of American General
     2  against Spira.
     3            THE COURT:  Good morning, counsel.
     4            ALL COUNSEL:  Good morning, your Honor.
     5            THE COURT:  Yes.  Why don't you just give your
     6  appearance, who you are, who represent, starting with
     7  plaintiff.
     8            MR. LESKO:  Your Honor, Robert Lesko, from Wilson,
     9  Elser, Moskowitz, Edelman & Dicker, for the plaintiff, American
                                   Page 1
```

```
                                106aameMS.txt
         4    chance to look at.  It may never see the light of day in a
         5    trial, but why shouldn't it be provided for discovery?
         6              MR. LESKO:  Well, because it doesn't really fall
         7    within the broad discovery standard.  Because the broad
         8    discovery standard, Rule 26, requires that the information be
         9    relevant or might otherwise lead to admissible evidence.
        10              THE COURT:  Yes.
        11              MR. LESKO:  It's not relevant, because all it
        12    establishes is that maybe in another case, American General is
        13    precluded from relying upon misrepresentation.  It doesn't even
        14    establish that the information was immaterial in that case.  It
        15    has no bearing upon this case, because in this case, we
        16    required it.  It was provided on the application.
        17              Beyond that, your Honor, the company also obtained a
        18    third-party inspection report which verified the information on
        19    the application.  So why do you go through that if it's not
        20    relevant?  It's an expense to the company.
        21              So what I'm saying is, it's not relevant and it will
        22    not lead to the discovery of admissible evidence.  And it's
        23    also burdensome, you know, for the reasons I indicated, that
        24    you'd have to go through, you know, a diligent search of all
        25    the applications and the records.
                                MARY M. STATEN, CSR, RPR, RMR
                                       (914) 390-4027
                                                                              51
              106aameMS
         1              Now, not only is it burdensome to the company, your
         2    Honor, but it will be burdensome to this Court.  Because let's
         3    say the documents were produced and Mr. Lipsius parades around
         4    with an application that's blank.  Your Honor or Judge Karas
         5    would have to preside over a little mini trial or evidentiary
         6    hearing to determine whether or not that policy, for which that
         7    application was submitted, was ever issued.  Maybe American
         8    General declined it, or maybe American General got the
         9    information regarding financial underwriting otherwise.  So
        10    there would be all these -- say there's five policies or ten
        11    policies like that.
        12              THE COURT:  Okay.  Let me see what Mr. Lipsius is
        13    going to say about it.
        14              MR. LIPSIUS:  Look.  I want to give two events that
        15    happened in the last six weeks.
        16              On Friday afternoon, I received a check from American
        17    General in settlement of a case for $1.7 million as the result
        18    of the Court, a district court, ordering them to produce their
        19    applications.
        20              MR. LESKO:  I object to that.
        21              MR. LIPSIUS:  Okay.  I just want to give anecdotal
        22    events that took place.
        23              And let's talk about what happens here.
        24              They raised the issue, and I have gotten it in other
        25    cases from American General.  And first of all, as the Court
                                MARY M. STATEN, CSR, RPR, RMR
                                       (914) 390-4027
                                                                              52
              106aameMS
         1    knows, they raise the claim of burden.  They haven't shown any
         2    burden about number of hours.  And when we've taken hearings on
         3    the burden that I've gone through hearings with American
         4    General and with U.S. Life, which are both AIG companies --
         5              AIG has a life unit.  In certain states, they write
         6    under U.S. Life.  In other states, they write under American
         7    General.  But their underwriting is all out of the same office
         8    in Houston, I believe.  Houston, Missouri and Wisconsin.  But I
                                       Page 24
```

```
                              106aameMS.txt
     25
                      MARY M. STATEN, CSR, RPR, RMR
                              (914) 390-4027
 []
```

# Exhibit B

**Peck, Karen D.**

| | |
|---|---|
| **From:** | Lesko, Robert |
| **Sent:** | Thursday, November 10, 2011 6:00 PM |
| **To:** | 'Ira S. Lipsius'; Peck, Karen D. |
| **Cc:** | 'David Benhaim' |
| **Subject:** | RE: 4206.0002; Ellman |

Ira:

We will provide the recording in accordance with the order. Moreover, we have already produced substantial supplemental discovery in response to your requests. Therefore, your self-serving statements are without merit. Your clients, on the other hand, are in violation of their own discovery obligations as has been previously documented. And we would like an opportunity to discuss that with you further before bringing our concerns tot he court. So, you do have a choice "but to go to the court." In fact, you have an obligation to meet and confer in good faith. I suggest that before you go running to the court, you make a good faith effort to actually meet and confer, rather than sending terse and inaccurate emails like the one below. We would welcome such an overture from you, however, should you choose not to accept our invitation to engage in a good faith meeting and conference, we would also welcome the opportunity to present the issues to the court.

I look forward to hearing from you soon regarding your availability for a conference.

Regards,

Robert Lesko
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
200 Campus Drive
Florham Park, NJ 07932-0668
973-735-5779 (Direct)
973-624-0800 (Main)
973-624-0808 (Fax)
robert.lesko@wilsonelser.com

---

**From:** Ira S. Lipsius [mailto:iral@lipsiuslaw.com]
**Sent:** Thursday, November 10, 2011 5:11 PM
**To:** Peck, Karen D.; Lesko, Robert
**Subject:** 4206.0002; Ellman

Your failure to produce the Larry Ellman recording, in contempt of the court's order, and your failure to produce documents, including the failure to produce a single email, despite numerous discussions and letters has left us with no choice but to go to the court.

--
Ira S. Lipsius
Lipsius-Benhaim Law LLP
14 Penn Plaza
New York, NY 10122

212 981 8440 ext. 202
iral@lipsiuslaw.com

11/28/2011

## Peck, Karen D.

**From:** Lesko, Robert
**Sent:** Friday, November 11, 2011 12:41 PM
**To:** 'David Benhaim'; 'Ira S. Lipsius'; Peck, Karen D.; 'Daniel Louis Grossman, Esq.'
**Subject:** RE: 4206.0002; Ellman

David:

As we discussed, we have spent significant resources attempting to investigate the extremely broad requests that you all have made. In some cases, we are still working on those investigations. If you really want to resolve these issues, you'll meet and confer in person or by telephone. Emails and letters do not equate to a meeting and conference. Let me know when you are available next week to discuss. If you prefer to engage in premature motion practice, we can't stop you.

We look forward to receiving the authorizations. Maybe you can also include an explanation as to why we're still waiting. We'll also get back to you on other items outstanding from your clients.

Robert Lesko
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
200 Campus Drive
Florham Park, NJ 07932-0668
973-735-5779 (Direct)
973-624-0800 (Main)
973-624-0808 (Fax)
robert.lesko@wilsonelser.com

---

**From:** David Benhaim [mailto:dbenhaim@lipsiuslaw.com]
**Sent:** Friday, November 11, 2011 10:54 AM
**To:** Lesko, Robert; 'Ira S. Lipsius'; Peck, Karen D.; Daniel Louis Grossman, Esq.
**Subject:** RE: 4206.0002; Ellman

Rob:

Ira's statements are not without merit.

We met and conferred on July 18, 2011 and again on July 28, 2011 concerning discovery that remain outstanding from May 2010. During the conferences, the requests were narrowed, qualified or withdrawn. You advised that AIG will consider the requests and take them under advisement. On August 17, 2011, you advised that AIG will produce if we enter into a confidentiality agreement and Karen forwarded me one for our consideration. Later that day, we executed the agreement and AIG produced 87 more papers falling far short of the myriad of documents and categories of documents that remain outstanding.

On September 28, 2011, we wrote to you seeking the outstanding discovery outlining a list of 16 categories of documents that remain unanswered and requested that AIG advise us within seven days whether it will voluntarily produce the documents. On September 30, 2011, you advised that it will respond by the middle of October. On November 1, 2011, I wrote you.

> It has now been a month since my letter to you concerning long outstanding discovery and two weeks after the date we were told to expect a response. I do not want to be accused of hastily running to the Court but am at a loss as to what to do in order to get your client to voluntarily participate in discovery. Kindly advise whether your client intends on producing the documents listed in the letter.

11/28/2011

Exhibit C

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

200 Campus Drive, Florham Park, New Jersey 07932-0668   Tel: 973.624.0800   Fax: 973.624.0808
One Gateway Center, Suite 2600, Newark, New Jersey 07102

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • West Palm Beach • White Plains
Limited Liability Partnership of NY
Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

| | | | | |
|---|---|---|---|---|
| JAMES CRAWFORD ORR | JAMES S. REHBERGER | | KURT H. DZUGAY | KAREN D. PECK |
| WILLIAM J. RENA | JOSEPH T. HANLON | www.wilsonelser.com | GINA CALABRIA | JOHN W. ROESER |
| THOMAS F. QUINN | ROBERT LESKO | | JOHN W. WILLIAMS | STEPHANIE RUFFO |
| BARBARA HOPKINSON KELLY | RENEE J. SHERMAN | | SHAUN S. McGREGOR | JILLIAN ACKERMANN |
| CAROLYN F. O'CONNOR | ROBERT T. GUNNING | | KIM M. CONNOR | LOUIS PERAGGINE |
| KENNETH M. BROWN | GREGG S. KAHN | | PETER A. SWIFT | ANDREW F. BAIN |
| DANIEL F. FLORES | MAXWELL L. BILLEK | | ERIC T. EVANS | BRENDAN P. MCCARTHY |
| KURT W. KRAUSS | JOANNA HOREK | | GREGORY T. FOOTE | CHARLES KELLETT |
| WILLIAM P. KRAUSS | | | JULIE VON BEVERN | PAUL J. MILLER |
| MICHAEL J. NAUGHTON | OF COUNSEL | | BRUCE W. MCCOY, JR. | ANTHONY RAPA |
| JOSEPH A. GALLO | ROBERT C. NEFF, JR. | | DANIEL E. ZEMSKY | AMEE SAMPAT |
| ROBERT A. BERNS | JOHN P. O'TOOLE | | C. TY NGUYEN | ANTHONY J. DRAGONE |
| KELLY A. WATERS | SUNA LEE | | JESSICA BRENNAN | EMILY WEISSLITZ |
| BRIAN J. WHITEMAN | CHRISTOPHER W. McCLANAHAN | | KATHERINE POTTER | JOBIL P. CYRIAC |
| SUSAN KARLOVICH | LINDA K. SMITH | | MELISSA D. LANDAU | |
| MATTHEW S. MAHONEY | TANA BUCCA | | | |
| KEVIN C. DONOVAN | PAUL E. PARAY | | | |

KEITH G. VON GLAHN (1952-2007)

June 1, 2011

**Via Email and First Class Mail**

David BenHaim, Esq.
Schindel, Farman, Lipsius, Gardner & Rabinovich LLP
14 Penn Plaza, Suite 500
New York, New York 10122

      Re:    *American General Life Ins. Co. v. Ellman Savings Irrevocable Trust, et al.*
              Civil Action No. 3:08-cv-05364-MLC-TJB
              Our File No.: 07478.00537

Dear Mr. BenHaim:

      We write in response to your deposition notices of the following individuals: Sarah Wickes; Liza Glass; Mark Childs; Leo Grace; Bill Wysong; Karen Padruco; Pat Wood; Don Garrow; Jennifer Larson; Paul Kiepert; Sherry Walton; Dru Ruiz; Scott Busalcchi.

      As a preliminary matter, your thirteen depositions notices exceed the limit of ten depositions set forth by the Federal Rules of Civil Procedure. *See Fed. R. Civ. P.* 30(a)(2)(A)(i). We further ask that you strongly consider limiting your deposition requests in order to identify only those witnesses whose depositions that truly possess knowledge relevant to the issues presented in this action. Doing so will enable us to more quickly and efficiently arrange for the depositions of appropriate witnesses. Insofar as the witnesses that you have identified do not appear to have played any role in the subject transaction, we must insist that you proffer a basis upon which each person's testimony is relevant to this matter.

      Although we are still in the process of gathering information on the requested witnesses from our client, we do not believe that any of the witnesses live or work in New Jersey. We will object to producing any out-of-state witnesses in New Jersey, and any such depositions will take place in the jurisdiction where each witnesses lives and/or works.

1197169.1

To:
May 31, 2011
Page 2

Thank you for your attention to this matter.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Karen D. Peck

KDP:kdp
cc:   Ira Lipsius, Esq. (via email)
      Daniel Grossman, Esq. (via email)