

LIPSIUS –BENHAIM
LAW, LLP

82-02 Kew Gardens Road
Kew Gardens, NY 11415
212.981.8440
Facsimile 212.695.6602
www.lipsiuslaw.com

DAVID BENHAIM
Direct Line 212-981-8446
Email:  dbenhaim@lipsiuslaw.com

November 29, 2011

*VIA ECF*

Honorable Tonianne J. Bongiovanni, U.S.M.J.
United States District Court
For the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Room 2020
Trenton, NJ 08608

> **Re:     American General Life Insurance Co. v. Ellman Savings Irrevocable Trust**
> **Docket No. 08 CV 5364 (MLC) (TJB)**
> **Our File No. 4206.0002**

Dear Honorable Judge Bongiovanni:

   We write in response to plaintiff's letter dated November 28, 2011 concerning plaintiff's refusal to participate in good faith in discovery.  AIG's letter addresses only two of the 16 categories of outstanding discovery.  In July 2010, we met and conferred with counsel for AIG concerning dozens of outstanding discovery requests which were narrowed to 16.  Despite repeated pleas to counsel to produce, AIG waited four monthly only to now advise that it refuses to produce "other policies" and documents concerning its underwriting practices.  If AIG wanted to object to these two demands, it should have done so in July instead of dragging us along for four months under the ruse that the documents are in the process of being sought.

   AIG's refusal to produce the documents concerning its decision to require tax returns to be submitted with applications and its rescission of that requirement shortly thereafter, under the vague claim that producing such documents would be "burdensome" is wholly without merit.  At the heart of the Trust's defense and counterclaims are allegations that, in its greedy rush to write high premium policies, certain underwriters at AIG did not consider the insured's financial condition to be material to the issuance of the elderly-high value policy.  In other words, since the net worth and income of the insured did not affect the risk assumed by the insured; how long the insured was going to live; AIG ignored red flags and looked the other way when faced with conflicting information concerning the insured's financial condition.

   These allegations are already evident in a number of ways: first, the credit report conducted by AIG during underwriting showed the insured to be of poor credit, contained numerous late payments and written off credit accounts and included a credit warning.

LIPSIUS-BENHAIM LAW, LLP

Honorable Tonianne J. Bongiovanni, U.S.M.J.
November 29, 2011
Page 2

Moreover, the insured and his son repeatedly changed the financial information during underwriting.  When one underwriter at AIG raised these concerns with a superior, he was summarily told to ignore it.  The smoking gun came in an email exchange obtained from the general agent who was advised by an AIG employee that after an investigation, it was determined that certain policies procured by agent Chaim Rubin were investor originated life insurance policies.[1]  When asked if AIG planned to act upon those policies, the AIG employee informed the agent that it did not and AIG was simply taking its IOLI inventory.  This email exchange was featured in this Court's decision to deny AIG's motion to dismiss the counterclaims.  Incredibly, AIG refuses to produce any documents concerning this investigation, citing some unspecified "burden."

AIG has thus far refused to produce *any* emails at all.

Additionally, it was discovered during a deposition of AIG's vice president of underwriting that at the time the Ellman policy was issued, certain AIG underwriters sought to put an end to other underwriters turning a blind eye to false financials and instituted a requirement that for any elderly policies of high value, tax returns must be submitted together with the application.  AIG's vice president admitted that this new policy was rescinded within a few weeks because the volume of elderly high value policies being sought dropped significantly hurting sales.  Even if not instituted before the Ellman policy was issued, these decisions, taken within weeks of the underwriting of the Elman policy speaks volumes about the underwriting practices at AIG at the time the Ellman policy was issued.

Also, AIG has alleged a RICO conspiracy and in support cites three other policies which were procured under false pretenses.  Yet, AIG has refused to produce *any* documents concerning these policies with no explanation at all as to why it refuses to do so.

AIG also refuses to produce other elderly high value policies issued within three years of the Ellman policy despite the fact that it was ordered to do so in a number of recent cases.

Other courts in *American General v. Altman*, Index No.: 08cv0399 (D.N.J.) and *U.S. Life v. Deutsch*, Index No.: 111657/2007 (N.Y. Sup.) have ordered the production of the exact discovery that  we seek here.  This firm represented the insured in both cases.  The discovery revealed that the insurance companies, apparently recognizing that the financial condition of an insured does not increase its risk, regularly ignored its own guidelines and issued policies far in excess of the insured's net worth.

---

[1] In a number of lawsuits, insurers, including AIG, have alleged that one of the tell-tale signs of IOLI policies are instances of seemingly false financial information.

LIPSIUS-BENHAIM LAW, LLP

Honorable Tonianne J. Bongiovanni, U.S.M.J.
November 29, 2011
Page 3

AIG's cry that the discovery would be burdensome has proven time and again to be completely unfounded.

AIG was ordered to make a similar production in another case handled by this firm, *U.S. Life v. Grunhut*, Index No.: 600550/2007 (N.Y. Sup.).  In the production made by AIG, over 82% of the policies issued violated the underwriting guidelines purportedly in use at the time.  Fewer than 100 policies and 500 pages were produced.  In *American General v. Altman*, Index No.: 08-cv-0399 (D.N.J. 2008), on August 21, 2009, the court ordered plaintiff "to produce copies of all applications submitted to American General Life Insurance Company seeking life insurance coverage for a person over seventy-five (75) years old and seeking coverage in excess of $5 million, but not exceeding $10 million, for the time period of January 2004 through December 2006, as well as the resulting policies."  (ECF Document 55, Filed 08/21/09)

In *U.S. Life v. Deutsch*, Index No.: 111657/2007 (N.Y. Sup. 2007), AIG submitted an affidavit detailing how "burdensome" it would be for AIG  to comply with these "outrageous" demands.

This firm represented the defendant in that case and is privy to its outcome.  Justice Braun informed U.S. Life during oral argument that he was disposed to following Justice Edmead's decision in *Grunhut* and compel production of other policies and applications.  Justice Braun therefore recommended that U.S. Life reach an agreement with defendants and produce other policies.  U.S. Life did in fact produce such policies and, in stark contrast to U.S. Life's representation that there are "millions" of relevant policies requested, in fact *only thirty-three (33)* policies fit the parameters of the agreed-upon requests.

In *Deutsch* the information gathered from these applications played a key role in the expert opinion of former insurance commissioner William Hager's opinion to the court that AIG did not consider financial information of the insured material to the issuance of that elderly policy. This firm represented the insured in *Grunhut*, *Altman* and *Deutsch*.  In all three cases, the discovery was not burdensome to AIG but revealed that AIG, apparently recognizing that the financial condition of an insured does not increase its risk, regularly ignored its guidelines and issued policies far in excess of the insured's net worth.

In fact, in all of the litigations we have had against AIG, AIG protested the production of this information and  not once was it able to show any burden. In any event, having waited over a year to object to the request, and over four months since our meet and confer, AIG should be precluded from raising the argument at this late juncture.

LIPSIUS-BENHAIM LAW, LLP

Honorable Tonianne J. Bongiovanni, U.S.M.J.
November 29, 2011
Page 4

  We thank the Court for its attention to this matter and look forward to discussing these matters with the Court at tomorrow's conference.

      Very truly yours,

      LIPSIUS-BENHAIM LAW, LLP

      David BenHaim

DB:bl